**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| MICHAEL CARGILL and<br>CTC HGC, LLC,<br>*Plaintiffs*,<br><br>v.<br><br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; ATF DIRECTOR STEVEN DETTELBACH, in his official capacity; ATTORNEY GENERAL MERRICK GARLAND, in his official capacity; UNITED STATES DEPARTMENT OF JUSTICE; and UNITED STATES OF AMERICA,<br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. _____________ |

**COMPLAINT**

Plaintiffs Michael Cargill and CTC HGC, LLC seek relief from this Court against Defendants the Bureau of Alcohol, Tobacco, Firearms and Explosives (the "ATF"), ATF Director Steven Dettelbach, in his official capacity, Attorney General Merrick Garland, in his official capacity, the United States Department of Justice, and the United States of America.

**INTRODUCTION**

This lawsuit challenges a federal agency's unlawful enforcement of the Gun Control Act of 1968 (the "Act"), codified in 18 U.S.C. § 921 *et seq*.

The ATF administers and regulates federal firearms licenses ("FFLs"), which grant the holder the right to sell firearms. For decades, the relationship between the ATF and licensees was generally collaborative. The ATF would inspect licensees for compliance with the Act and educate licensees who made inadvertent mistakes with

the goal of improving compliance. This helped licensees assist law enforcement efforts, prevent the diversion of firearms from lawful commerce, ensure successful tracing of firearms, and protect the public. Revocation of an FFL was an exceedingly rare action by the ATF and reserved only for the worst actors. For example, in 2013, the ATF only sought revocation of FFLs in 81 out of over 10,500 inspections.[1]

This made sense, as the Act allows license revocations for "willful[]" violations. 18 U.S.C. § 923(e). But everything changed in the summer of 2021, when the Biden Administration announced a new policy to enforce the Act against licensees who inadvertently fail to comply.[2] As part of this effort, the Acting Assistant Director of the ATF George Lauder issued a memorandum instructing ATF Special Agents in Charge and Directors of Industry Operations to revoke FFLs for a single violation in many circumstances.[3] Since then, revocations have increased over 500%, as the ATF has effectively written the word "willful" out of the statute by instituting a policy of revoking FFLs for inadvertent paperwork errors.

This new definition of "willful" violates the plain language of the governing statute and puts all law-abiding licensees at risk of revocation for minor and inconsequential paperwork errors that do not pose a threat to public safety, nor result

---

[1] Bureau of Alcohol, Tobacco, Firearms and Explosives, *Fact Sheet: Federal Firearms License Revocation Process* (May 2014), attached as Exhibit A.
[2] The White House, *Fact Sheet: Biden-Harris Administration Announces Comprehensive Strategy to Prevent Gun Violence and Ensure Public Safety*, available at: https://www.whitehouse.gov/briefing-room/statements-releases/2021/06/23/fact-sheet-biden-harris-administration-announces-comprehensive-strategy-to-prevent-and-respond-to-gun-crime-and-ensure-public-safety/ (June 23, 2021).
[3] *See* George Lauder, *Implementation of the Administration's Comprehensive Strategy to Prevent and Respond to Gun Crime and Ensure Public Safety* (July 14, 2021), attached as Exhibit B.

in prohibited possessors obtaining firearms. Plaintiffs, who operate a gun store in Texas, seek a declaration that the ATF's new enforcement policy violates the Act and a permanent injunction preventing Defendants from ignoring the Act's requirement that violations be willful.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) because this action arises under the United States Constitution; 28 U.S.C. § 1346(a)(2), because this suit constitutes a civil action against an executive department of the United States; and 5 U.S.C. §§ 702 and 706 (providing for judicial review of agency action).

2. This Court has the authority to grant declaratory relief under 28 U.S.C § 2201 and preliminary and permanent injunctive relief under 28 U.S.C. § 2202.

3. Venue is proper within this judicial district pursuant to 5 U.S.C. § 703 and 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions asserted by Plaintiffs arose within this judicial district. Venue is proper within the Austin Division pursuant to 28 U.S.C. § 124(d).

## PARTIES

4. Plaintiff Michael Cargill ("Cargill" or "Plaintiff") owns and operates Central Texas Gun Works in Austin, Texas.

5. Plaintiff CTC HGC, LLC is a Texas limited liability company owned by Michael Cargill and holds a federal firearms license. Plaintiffs assert the claims herein on behalf of both themselves and their customers as explained below.

6. Defendant United States of America is a government entity.

7. Defendant Bureau of Alcohol, Tobacco, Firearms and Explosives is an agency of the United States and responsible for administrating and enforcing the Gun Control Act.

8. Defendant Steven Dettelbach is the Director of the ATF and is sued in his official capacity.

9. Defendant United States Department of Justice is an agency of the United States and is also responsible for administrating and enforcing the Gun Control Act.

10. Defendant Attorney General Merrick Garland is the head of the Department of Justice and is sued in his official capacity.

**FACTS**

***A. The Act's regulatory scheme.***

11. Congress passed the Act in 1968. 18 U.S.C. § 921 *et seq*.

12. The Act sets up a comprehensive scheme for regulating FFLs.

13. The Attorney General has delegated authority to enforce the Act to the ATF. 28 C.F.R. § 0.130.

14. If an applicant fulfills the statutory requirements for a license, it "shall be approved." 18 U.S.C. § 923(d).

15. The Act also gives the Attorney General the statutory authority to revoke licenses. 18 U.S.C. § 923(e).

16. The Act "imposes significant record-keeping obligations upon firearms dealers." *Fairmont Cash Mgmt., LLC v. James*, 858 F.3d 356, 362 (5th Cir. 2017).

17. The Act requires licensees to keep records of their sales through a firearms transaction record, commonly called a Form 4473. 18 U.S.C. § 923(g); 27 C.F.R. § 478.124. The Form 4473 requires almost 100 data inputs.

18. Licensees must also contact the national instant criminal background check system ("NICS") before completing a transfer. 18 U.S.C. § 922(t).

19. The ATF inspects licensees for compliance with the Act.

20. Generally, the ATF conducts these inspections less than once per year. *See* 18 U.S.C. § 923(g)(1)(B).

21. The Act only allows revocation when a licensee "willfully" violates a provision of the Act, or a rule prescribed by the Attorney General or fails to have secure gun storage or safety devices. 18 U.S.C. § 923(e).

22. The Act does not define "willfully," but the Fifth Circuit has held it requires that a licensee know of "his legal obligation and purposefully disregarded or was plainly indifferent to the record-keeping requirements." *Fairmont Cash Mgmt., LLC v. James*, 858 F.3d 356, 362 (5th Cir. 2017).

### *B. The DOJ and ATF's decades-long revocation policy focused on compliance, not punishment.*

23. Prior to 2021, the ATF had an enforcement policy that generally focused on compliance and education. *See, e.g.*, Exhibit A ("ATF industry operations investigators (IOI) conduct inspections of [licensees] to ensure compliance with the law and regulations and to educate licensees on the specific requirements of those laws and regulations.").

24. Specifically, the ATF would "assist with business practices designed to improve compliance with the [Act]." Exhibit A.

25. It would only revoke on "rare occasions" when it "encounters a licensee who fails to comply with the laws and regulations and demonstrates a lack of commitment to improving his or her business practices." Exhibit A.

26. Further, "revocation actions are seldom initiated until after a licensee has been educated on the requirements" of the Act, and revocations were only for the most serious violations such as failing to account for firearms, failure to verify and document purchaser eligibility, failure to maintain records requisite for successful firearms tracing, and failure to report multiple sales of handguns. Exhibit A.

27. In other words, the ATF did not seek revocation for a handful of accidental paperwork errors that may occur among the thousands of transactions a licensee processes.

28. Such an enforcement policy makes intuitive sense, and, more importantly, is in line with the statutory requirement that violations be "willful[]."

29. The ATF's own prior enforcement orders reflected this willfulness requirement: "The term willfulness means a purposeful disregard of, a plain indifference to, or reckless disregard of a known legal obligation." ATF O 5370.1D (10/02/2019).

30. ATF statistics also reflect this collaborative approach. In 2020, for example, ATF only successfully sought revocation 40 times out of 5,823 inspections. ATF, *Firearms Compliance Inspections*, available at: https://www.atf.gov /firearms/compliance-inspections.

31. This is, despite the fact that, in 2020, only 56% percent of inspections resulted in "no violation" reports. The rest (2,546) contained some sort of violation. *Id.*

32. The far more common response to violations of the Act were a "Report of violations" (1,289 instances), a "Warning letter" (804), or a "Warning conference" (306). *Id.*

33. In 2021, licensees did even better, as the ATF sought revocation in only 27 out 6,639 inspections. ATF, *Fact Sheet: Facts and Figures for Fiscal Year 2021*, available at: https://www.atf.gov/resource-center/fact-sheet/fact-sheet-facts-and-figures-fiscal-year-2021.

### *C. Defendants change their enforcement policy to a* **de facto** *strict liability regime.*

34. After the Biden Administration announced its comprehensive strategy to overhaul gun laws in June 2021,[4] the ATF issued a memorandum to all Special Agents in Charge and Directors of Industry Operations that alerted them that single violations should now result in revocation proceedings. Exhibit B.

35. The Department of Justice was explicit in announcing it would be changing its enforcement regime: "But for those dealers who willfully break the law and put public safety at risk by violating certain ATF requirements, ATF will seek to

---

[4] The White House, *Fact Sheet: Biden-Harris Administration Announces Comprehensive Strategy to Prevent Gun Violence and Ensure Public Safety*, available at: https://www.whitehouse.gov/briefing-room/statements-releases/2021/06/23/fact-sheet-biden-harris-administration-announces-comprehensive-strategy-to-prevent-and-respond-to-gun-crime-and-ensure-public-safety/ (June 23, 2021).

revoke their licenses pursuant to its *zero-tolerance* approach, absent exceptional circumstances."[5]

36. Further, the memorandum alerted Special Agents in Charge and Directors of Industry Operations that there will be a new enforcement order—a new ATF O 5370.1D—that will "set forth revised procedures for processing FFL inspections that result in findings of violations listed above[6] or other violations that merit revocations." Exhibit B.

37. If any of the listed violations are found during the inspection, the ATF will seek revocation "absent extraordinary circumstances." Exhibit B.

38. This new Enforcement Policy has resulted in a staggering increase in revocation recommendations.

39. Since announcing this new policy, the ATF has initiated at least 273 revocation proceedings, and likely many more.

40. Upon information and belief, the new Enforcement Policy is to revoke FFLs for inadvertent paperwork errors that do not result in prohibited possessors obtaining firearms.

41. The effect of this new policy is to remove "willfully" from the statute. This results in a strict liability regime, where accidental typos and other minor paperwork errors could cost business owners their livelihoods.

---

[5] Department of Justice, *Justice Department: Violent Crime Reduction Efforts*, available at: https://www.justice.gov/file/1468221/download, attached as Exhibit C.

[6] The five violations listed are: (1) the transfer of a firearm to a prohibited person; (2) failing to conduct a required background check; (3) falsification of records, such as a firearms transaction form; (4) failing to respond to an ATF tracing request; and (5) refusing to permit ATF to conduct an inspection in violation of the law.

### *D. Plaintiffs reasonably fear that Defendants will revoke their FFL under the new policy.*

42. Plaintiffs are licensees that operate a gun shop called Central Texas Gun Works in Austin, Texas. Affidavit of Michael Cargill, attached as Exhibit D.

43. In addition to selling firearms, Plaintiffs also offer classes and firearm training. *Id.*

44. The classes and training include opportunities to obtain Texas License to Carry a Handgun classes and time in a firing range. *Id.*

45. The ATF last inspected Central Texas Gun Works in August of 2018. *Id.*

46. During the period covered by the 2018 inspection, Central Texas Gun Works processed approximately 6,500 firearm transactions. *Id.*

47. After that inspection, the ATF cited Central Texas Gun Works for four different types of violations, in a total of 35 transactions, for an error rate of about 0.5%. *Id.*

48. None of the violations resulted in a prohibited possessor obtaining a firearm. *Id.*

49. The ATF issued a report of violations and did not recommend revocation. *Id.*

50. Instead, as was common practice before the policy change, the report instructed Plaintiffs to take simple corrective actions. For instance, Plaintiffs were instructed to "ensure that when executing an ATF form 4473, all of the information called for [on the form] is accurately and completely provided[.]" *Id.*

51. Plaintiffs seek to abide by the Act and have instituted remedial measures in order to comply with the law, including purchasing a software system that more accurately tracks transactions and required background checks. *Id.*

52. Nevertheless, the new standard applied by the ATF would be virtually impossible to meet when accounting for the volume of transactions that Plaintiffs complete.

53. Specifically, as applied to the last inspection, all four of the types of violations listed in the inspection report would fall under the ATF's new policy regarding falsification of records and would result in a revocation recommendation, despite the fact that none of the violations were actually willful.

54. The ATF would recommend revocation despite the fact that there is no evidence Plaintiffs intended to falsify the records or were indifferent to their duty to fill out the forms accurately.

55. Further, none of these paperwork errors resulted in a transfer of a firearm to a prohibited possessor. *Id.*

56. It is unreasonable and inconsistent with the statute to require a licensee to be perfect when seeking to comply with the Act. This is especially true given that Plaintiff's business has expanded to more than 8,000 transactions a year since his last inspection. *Id.*

57. Plaintiffs are still subject to revocation on the basis of the 2018 inspection report, and rightly fear such based on Defendants' new enforcement policies.

58. Plaintiffs are aware of at least one FFL licensee who received a recommendation of revocation based on an inspection that occurred over 15 months prior to the recommendation.

**COUNT I**

**AGENCY ACTION VIOLATES THE GUN CONTROL ACT**

59. Plaintiffs reallege and incorporate by reference the preceding paragraphs.

60. An agency conclusion regarding the applicability of federal law is final agency action if it marks the end of the decision-making process and all that is left is enforcement.

61. Defendants' intent to apply the Enforcement Policy has been confirmed by their subsequent actions against licensees in administrative hearings.

62. Congress's intent is best determined by the words the Act.

63. Every word of the statute must be given effect.

64. The Act requires violations to be "willful[]" in order to result in revocation of an FFL.

65. The Enforcement Policy is inconsistent with the Act because it sweeps in inadvertent violations and does not require violations to be intentional, reckless, or that licensees were indifferent to the Act's requirements.

66. As a result, Plaintiffs are subject to a regulation that is contrary to law and are entitled to a declaratory judgment and permanent injunction barring Defendants from applying the Enforcement Policy to them and all those similarly situated.

**COUNT II**

**AGENCY ACTION VIOLATES PLAINTIFFS' SECOND AMENDMENT RIGHTS**

67. Plaintiffs have a right to buy and sell firearms.

68. As a vendor, Plaintiffs are also able to bring claims on behalf of their customers. *Craig v. Boren*, 429 U.S. 190, 195 (1976).

69. The right to "possess firearms for protection implies a corresponding right to acquire and maintain proficiency in their use; the core right wouldn't mean much without the training and practice that make it effective." *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011).

70. If Plaintiffs' FFL is revoked under this unlawful enforcement policy, it will not only infringe on Plaintiffs' rights, but also burden the Second Amendment rights of their customers.

71. The downstream effects of Defendants' Enforcement Policy is to severely limit the availability of lawful gun ownership.

72. Plaintiffs are in the best position to defend the Second Amendment rights of themselves and their customers because they are directly regulated by Defendants.

73. There is a hindrance to individual gun owners' ability to protect their own interests because they rely on licensees to purchase firearms.

74. Reducing the availability of lawful gun ownership burdens citizens' right to individual self-defense. *See N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2133 (2022).

75. The Enforcement Policy will make it harder for citizens to obtain firearms, train with them, and maintain them for the purpose of self-defense.

76. Such a burden is not justified by a handful of paperwork errors, nor is it consistent with the Nation's historical tradition of firearm regulation.

**COUNT III**

**EQUITABLE RELIEF FOR AN ONGOING VIOLATION OF FEDERAL LAW**

77. Plaintiffs incorporate the allegations in the foregoing paragraphs as if set forth fully herein.

78. This Court has authority under Article III of the Constitution to issue an injunction against federal officials acting in their official capacities when that injunction will prevent an ongoing violation of federal law or an ongoing violation of constitutional rights.

79. Defendants Dettelbach and Garland are federal officials with authority to interpret and enforce the Act. They also oversee and direct other federal officials in the interpretation and application of the Act.

80. Acting in their official capacities, Defendants Dettelbach and Garland instituted a new Enforcement Policy that contradicts the Act.

81. Defendants Dettelbach and Garland, or their agents, have since enforced this policy against many licensees.

82. Upon information and belief, Defendants Dettelbach and Garland will take this same unlawful position in the future.

83. This *de facto* strict liability policy violates the gun control act and the Second Amendment.

84. By adopting the Enforcement Policy, Defendants Dettelbach and Garland burden the Second Amendment rights of Plaintiffs and their customers.

85. An actual and substantial controversy exists between Plaintiffs and Defendants as to their legal rights and duties with respect to whether the ATF Enforcement Policy violates Federal Statute and the United States Constitution.

86. The case is presently justiciable because the Enforcement Policy applies to Plaintiffs as they are subject to possible revocation, which constitutes irreparable harm.

87. Declaratory relief is therefore appropriate to resolve this controversy.

**PRAYER FOR RELIEF**

Pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, it is appropriate and proper that a declaratory judgment be issued by this Court, declaring that Defendants' Enforcement Policy is contrary to federal law.

Furthermore, pursuant to 28 U.S.C. § 2202 and Fed. R. Civ. P. 65, it is appropriate and hereby requested that the Court issue a permanent injunction prohibiting Defendants from enforcing the new policy.

WHEREFORE, Plaintiffs pray for judgment against Defendants and that the Court:

(1) Declare that Defendants' Enforcement Policy violates the Gun Control Act, the Administrative Procedures Act, and the U.S. Constitution;

(2) Hold unlawful and set aside Defendants' Enforcement Policy;

(3) Issue a permanent injunction against the Defendants, as well as all agents, administrators, employees, or other persons acting on behalf of the Defendants, from enforcing the Enforcement Policy;

(4) Award Plaintiffs their costs and expenses incurred in bringing this action, including, but not limited to, reasonable attorney fees pursuant to 28 U.S.C. § 2412; and

(5) Grant such other and further relief as the Court deems equitable, just, and proper.

Respectfully submitted,

*/s/Matthew Miller*
MATTHEW MILLER
Texas Bar No. 24046444
mmiller@texaspolicy.com
ROBERT HENNEKE
Texas Bar No. 24046058
rhenneke@texaspolicy.com
CHANCE WELDON
Texas Bar No. 24076767
cweldon@texaspolicy.com
NATE CURTISI*
Arizona Bar No. 033342
ncurtisi@texaspolicy.com
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701
Telephone: (512) 472-2700
Facsimile: (512) 472-2728
**Application for admission forthcoming*

*/s/Nicholas R. Barry*
Nicholas R. Barry*
TN Bar. No. 031963
nicholas.barry@AFLegal.org
AMERICA FIRST LEGAL

300 Independence Ave., SE
Washington, DC 20003
Telephone: (202) 964-3721
*Pro hac vice motion forthcoming*

*Attorneys for Plaintiffs*