UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

**MICHAEL CARGILL and CTC HGC, LLC,**

Plaintiffs,

v.

**BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; ATF DIRECTOR STEVEN DETTELBACH, in his official capacity; ATTORNEY GENERAL MERRICK B. GARLAND, in his official capacity; UNITED STATES DEPARTMENT OF JUSTICE; and UNITED STATES OF AMERICA,**

Defendants.

Case No. 1:22-cv-01063-LY

## MOTION TO DISMISS

Defendants Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), ATF Director Steven Dettelbach, Attorney General Merrick Garland, United States Department of Justice ("DOJ"), and the United States of America, by and through undersigned counsel, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), move to dismiss the entirety of Plaintiff's Complaint, ECF No. 1 ("Compl."), for lack of subject matter jurisdiction and failure to state a claim. The reasons in support of this motion are set forth below.

## **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

BACKGROUND ...................................................................................................................2

I.      The Parties .................................................................................................................2

II.     Regulatory Scheme ....................................................................................................2

III.    Current ATF Policies and Guidance ..........................................................................3

IV.     Plaintiff's Inspection History .....................................................................................5

V.      Plaintiff's Complaint .................................................................................................6

LEGAL STANDARDS .........................................................................................................7

I.      Rule 12(b)(1) .............................................................................................................7

II.     Rule 12(b)(6) .............................................................................................................9

ARGUMENT .........................................................................................................................9

I.      Plaintiff has failed to carry his burden to establish that this Court has subject matter
        jurisdiction. ................................................................................................................9

        A.      Plaintiff has not challenged a final agency action. ..........................................10

        B.      Plaintiff lacks standing. ...................................................................................13

        C.      Plaintiff's claims are not ripe. .........................................................................16

II.     Plaintiff has failed to state a claim that entitles him to relief. .....................................18

CONCLUSION ......................................................................................................................21

# TABLE OF AUTHORITIES

**CASES**

*Abbott Labs. v. Gardner,*
    387 U.S. 136 (1967) ........................................................................................................8

*Al Otro Lado, Inc. v. Nielsen,*
    327 F. Supp. 3d 1284 (S.D. Cal. 2018) ......................................................................20

*Am. Airlines, Inc. v. Herman,*
    176 F.3d 283 (5th Cir. 1999) .........................................................................................8

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ........................................................................................................9

*Babbitt v. United Farm Workers Nat. Union,*
    442 U.S. 289 (1979) ......................................................................................................14

*Bark v. U.S. Forest Serv.,*
    37 F. Supp. 3d 41 (D.D.C. 2014) .........................................................................12, 20

*Bennett v. Spear,*
    520 U.S. 154 (1997) ...............................................................................................11, 13

*Cargill v. Garland,*
    No. 20-51016, 2023 WL 119435, (5th Cir. 2023) .....................................................12

*Choice Inc. of Tex. v. Greenstein,*
    691 F.3d 710 (5th Cir. 2012) ...........................................................................8, 16, 17

*Cuvillier v. Taylor,*
    503 F.3d 397 (5th Cir. 2007) .........................................................................................9

*Del Monte Fresh Produce N.A., Inc. v. United States,*
    706 F. Supp. 2d 116 (D.D.C. 2010) ...........................................................................20

*Denning v. Bond Pharm. Inc.,*
    50 F.4th 445 (5th Cir. 2022) .........................................................................................8

*Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.,*
    460 F.3d 13 (D.C. Cir. 2006) ......................................................................................10

*Heinze v. Tesco Corp.,*
    971 F.3d 475 (5th Cir. 2020) .........................................................................................9

*Home Depot USA, Inc. v. Jackson,*
    139 S. Ct. 1743 (2019) ...................................................................................................7

*Huskey v. Jones,*
  45 F.4th 827 (5th Cir. 2022) ..................................................................................... 4

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
  511 U.S. 375 (1994) ................................................................................................ 7

*La. Oil & Gas Interests, LLC v. Shell Trading U.S. Co.,*
  949 F.3d 915 (5th Cir. 2020) ................................................................................. 9

*Laufer v. Mann Hosp., LLC,*
  996 F.3d 269 (5th Cir. 2021) .............................................................................. 8, 9

*Louisiana v. U.S. Army Corp. of Eng'rs,*
  834 F.3d 574 (5th Cir. 2016) ............................................................................ 8, 13

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) ..................................................................................... 8, 13, 14

*Lujan v. Nat'l Wildlife Fed'n,*
  497 U.S. 871 (1990) ................................................................................................ 7

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans,*
  833 F.2d 583 (5th Cir. 1987) ............................................................................ 8, 17

*NextEra Energy Cap. Holdings, Inc. v. Lake,*
  48 F.4th 306 (5th Cir. 2022), *pet. for cert. filed*, No. 22-601 (U.S. Dec. 30, 2022) ....................... 16

*Norton v. S. Utah Wilderness All.,*
  542 U.S. 55 (2004) ......................................................................................... 10, 13

*Pearl River Union Free Sch. Dist. v. King,*
  214 F. Supp. 3d 241 (S.D.N.Y. 2016) .................................................................... 12

*Physician Hosps. of Am. v. Sebelius,*
  691 F.3d 649 (5th Cir. 2012) ................................................................................. 9

*Ramming v. United States,*
  281 F.3d 158 (5th Cir. 2001) ................................................................................. 8

*Renne v. Geary,*
  501 U.S. 312 (1991) .............................................................................................. 17

*Speech First, Inc. v. Fenves,*
  979 F.3d 319 (5th Cir. 2020) ............................................................................... 14

*Spokeo, Inc. v. Robins,*
  578 U.S. 330 (2016) ......................................................................................... 8, 13

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) ................................................................................1, 14, 15, 16

*Texas v. EEOC*,
  933 F.3d 433 (5th Cir. 2019) ...................................................................................11

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) ...............................................................................................8

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
  578 U.S. 590 (2016) ...................................................................................................11

*Vill. of Bald Head Island v. U.S. Army Corp of Eng'rs*,
  714 F.3d 186 (4th Cir. 2013) ...................................................................................11

*Walker v. Beaumont Indep. Sch. Dist.*,
  938 F.3d 724 (5th Cir. 2019) .....................................................................................4

*White v. U.S. Corr., LLC*,
  996 F.3d 302 (5th Cir. 2021) .....................................................................................9

*Younger v. Harris*,
  401 U.S. 37 (1971) ...................................................................................................14

## STATUTES

5 U.S.C. § 551 ...........................................................................................................10, 13

5 U.S.C. § 704 .............................................................................................................7, 10

18 U.S.C. §§ 921 *et seq.* ..................................................................................................2

18 U.S.C. § 923 ...........................................................................................................3, 13

## RULES

Fed. R. Civ. P. 12 ..........................................................................................................8, 9

## REGULATIONS

28 C.F.R. § 0.130 .............................................................................................................3

## OTHER AUTHORITIES

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012) ............................12

## MEMORANDUM OF LAW

## INTRODUCTION

Plaintiff alleges that the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") will, based on recent policy guidance, enforce the Gun Control Act of 1968 ("the Act") in a manner that "rewrites" the terms of the statute itself and impose a "strict liability regime" for federal firearms licensees ("FFL"s), notwithstanding that the Act contemplates license revocations for willful violations.  But Plaintiff offers no factual support for his claims.  On the contrary, Plaintiff points to a series of policy documents that are entirely faithful to the Act, and then speculates that ATF will ignore both the Act and the terms of its own policies.  On that basis, he demands that this Court intervene and enjoin enforcement of the policy he has imagined against him.  This conjectural theory of standing and liability is groundless and should be rejected.

A host of overlapping grounds warrant dismissal.  First, the Complaint fails to challenge a final agency action—a jurisdictional prerequisite to judicial review.  ATF has not issued Plaintiff a final revocation order, nor a Notice of Revocation, and although the Complaint cites to several policy documents, Plaintiff does not appear to challenge the substance of these documents.  Instead, the Complaint vaguely challenges "the effect of ATF's new policy," suggesting that Plaintiff is actually challenging ATF's allegedly divergent enforcement of the Act *in practice*.  But such enforcement, whether faithful to or divergent from ATF's written policies, has not occurred.  Plaintiff's claims thus have no hook to a discrete, final agency action, and judicial review is neither feasible nor appropriate.

Plaintiff also lacks standing to sue.  As Plaintiff's license has not been revoked, he seeks pre-enforcement review of ATF's enforcement policies.  Pre-enforcement review may be warranted where threatened enforcement is sufficiently imminent, such as when a plaintiff intends to engage in conduct arguably affected with a constitutional interest but proscribed by a policy, and there is a credible threat of enforcement under that policy.  *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-59 (2014).

1

But here, Plaintiff does not allege he intends to willfully violate the provisions of the Gun Control Act, and he fails to allege a credible threat that his license might be revoked under the actual policies or their imagined application to him.

For related reasons, Plaintiff's claims are not ripe for judicial review. Plaintiff's conjectural claims are not suitable for judicial determination; further, should the Court decline review, Plaintiff would not endure any hardship.

Even reading the Complaint as a challenge to potentially reviewable agency actions—that is, a challenge to ATF's actual policy documents—Plaintiff fails to state a claim upon which relief can be granted. ATF's policies are entirely consistent with the Gun Control Act, and additionally, Plaintiff alleges no facts substantiating that ATF will somehow ignore these policies in practice by imposing a divergent regime of enforcement. The Complaint must be dismissed.

## BACKGROUND

### I.       The Parties

Plaintiff Michael Cargill alleges that he owns and operates Central Texas Gun Works in Austin, Texas. Compl. ¶ 4. Plaintiff CTC HGC, LLC is a Texas limited liability company owned by Michael Cargill that holds a federal firearms license. *Id.* ¶ 5.[1] Defendants are the United States and United States agencies, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and Department of Justice ("DOJ"). *Id.* ¶¶ 6, 7, 9. Defendant agencies are responsible for administering and enforcing the Gun Control Act. Defendant Steven Dettelbach is the Director of ATF and Defendant Merrick Garland is the Attorney General of the United States. *Id.* ¶¶ 8, 10.

### II.      Regulatory Scheme

The Gun Control Act of 1968, codified at 18 U.S.C. § 921 *et seq.* creates a comprehensive

---

[1] Because Michael Cargill owns CTC HGC, LLC, this Motion refers to a singular "Plaintiff."

scheme for regulating federal firearms licenses.  The Act gives the Attorney General the authority to approve and revoke such licenses.  Among other things, it provides that "[n]o person shall engage in the business of importing, manufacturing, or dealing in firearms . . . until he has filed an application with and received a license to do so from the Attorney General[,]" and that application "shall be in such form and contain only that information necessary to determine eligibility for licensing as the Attorney General shall by regulation prescribe[.]"  18 U.S.C. § 923(a).

Under the Act, the "Attorney General may, after notice and opportunity for hearing, revoke any license issued under this section if the holder of such license has willfully violated any provision of this chapter or any rule or regulation prescribed by the Attorney General under this chapter[.]"  *Id.* § 923(e) (referenced herein as the "willfulness requirement").  Consistent with the Act's due process provisions, revocations must be accompanied by "a written notice from the Attorney General stating specifically the grounds . . . upon which the license was revoked."  *Id.* § 923(f)(1).  If a license is revoked, the license holder may request "a hearing to review his . . . revocation," as well as a stay of the effective date of the revocation.  *Id.* § 923(f)(2).  "If after a hearing," the Attorney General "decides not to reverse his decision to . . . revoke a license, the Attorney General shall give notice of his decision to the aggrieved party."  *Id.* § 923(f)(3).  Then, within a sixty-day period, the license holder may "file a petition with the United States district court for the district in which he resides or has his principal place of business for a de novo judicial review of such . . . revocation."  *Id.*

The Attorney General has delegated the authority to enforce the Act to ATF.  *See* 28 C.F.R. § 0.130(a).  Thus, ATF inspects federal firearms licensees ("FFLs") for compliance with the Act's requirements, although it typically may not do so "more than once during any 12-month period," 18 U.S.C. § 923(g)(1)(B)(ii)(I), and, when authorized, ATF revokes licenses.

## III.   Current ATF Policies and Guidance

On June 23, 2021, President Biden and Attorney General Garland announced the

Administration's Comprehensive Strategy to Prevent and Respond to Gun Crime and Ensure Public

Safety. Among other things, the Strategy states that it will "[e]stablish[] zero tolerance for rogue gun

dealers that willfully violate the law." *See* Ex. A, The White House, *Fact Sheet: Biden-Harris*

*Administration Announces Comprehensive Strategy to Prevent and Respond to Gun Violence and Ensure Public*

*Safety*, at 2 ("White House Fact Sheet").[2] Indeed, the Fact Sheet reiterates the Act's willfulness

requirement three times. *See, e.g., id.* ("Today, the Justice Department is announcing a new policy to

underscore zero tolerance for willful violations of the law by federally licensed firearms dealers that

put public safety at risk."). Thus, entirely consistent with the Act, "[a]bsent extraordinary

circumstances," ATF will seek

> to revoke the licenses of dealers the first time that they violate federal law by willfully 1) transferring a firearm to a prohibited person, 2) failing to run a required background check, 3) falsifying records, such as a firearms transaction form, 4) failing to respond to an ATF tracing request, or 5) refusing to permit ATF to conduct an inspection in violation of the law.

*Id.* at 3.

Following the publication of the White House Fact Sheet, the Justice Department announced

that it would be making Violent Crime Reduction Efforts. *See* Department of Justice: Violent Crime

Reduction Efforts, Ex. C to Compl., ECF No. 1-3 (herein "DOJ Announcement"). The DOJ

Announcement echoed the White House Fact Sheet: for firearms "dealers who willfully break the law

and put public safety at risk by violating certain ATF requirements, ATF will seek to revoke their

licenses pursuant to its zero-tolerance approach, absent exceptional circumstances." *Id.* at 4.

Consistent with good-governance principles, the DOJ Announcement also repeatedly reiterates its

intent to partner with licensees, who "are often our first line of defense against gun crime and a source

---

[2] Because the Complaint references and cites the White House Fact Sheet, Compl. ¶ 34 n.4, the Court may take judicial notice of the document. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (federal court may consider documents attached to motion to dismiss and referred to in complaint and central to plaintiff's claims); *see also Huskey v. Jones*, 45 F.4th 827, 831 n.3 (5th Cir. 2022) (district courts may take judicial notice of government website).

of critical enforcement information." *Id.*; *see also id.* ("[T]he Department will implement the following actions to enhance outreach and coordination with licensed firearms dealers, who can help keep firearms out of the wrong hands[.]"); *id.* ("The Department will issue a new policy explaining how responsible conduct by federally licensed firearms dealers may play a role in its related enforcement decisions—rewarding self-reporting of noncompliance and other proactive behavior that helps prevent tragedy.").

On July 14, 2021, ATF issued a memorandum to all special agents in charge and all directors of industry operations addressing the implementation of the Biden Administration's Strategy. *See* ATF Memorandum on the Implementation of the Administration's Comprehensive Strategy to Prevent and Respond to Gun Crime and Ensure Public Safety (herein "ATF Memo"), Ex. B to Compl., ECF No. 1-2. The ATF Memo likewise reiterates the willfulness requirement:

> Absent extraordinary circumstances, an inspection that results in a finding that an FFL has *willfully committed* any of the following violations shall result in a revocation recommendation:
> a.  The transfer of a firearm to a prohibited person;
> b.  Failing to conduct a required background check;
> c.  Falsification of records, such as a firearms transaction form;
> d.  Failing to respond to an ATF tracing request;
> e.  Refusing to permit ATF to conduct an inspection in violation of the law.

*Id.* at 2 (emphasis added).

## IV.    Plaintiff's Inspection History

Plaintiff and Plaintiff's business, Central Texas Gun Works, operate a gun shop located in Austin, Texas, that sells firearms and offers classes and firearm training. Compl. ¶¶ 42-43. ATF last inspected Central Texas Gun Works in August 2018. *Id.* ¶ 45. Following that inspection, the Complaint alleges that ATF cited Central Texas Gun Works for four types of violations in a total of 35 transactions. *Id.* ¶ 47. According to Plaintiff's declaration, these four types of violations included: (1) failing to ensure that the information called for on the ATF Form 4473 was accurately and completely furnished; (2) failing to obtain a complete or accurately executed ATF Form 4473 from

the non-licensee completing the form, prior to making an over-the-counter transfer of a firearm; (3) failing to attach supporting documentation in Question 18c; and (4) failing to accurately or completely record on the ATF Form 4473 the date on which the licensee contacted NICS. Declaration of Michael Cargill, ("Pl.'s Decl."), Ex. D to Compl., ECF No. 1-4, ¶ 8. Plaintiff avers that "[n]one of these violations were willful, and none resulted in a prohibited possessor obtaining a firearm." *Id.* ¶ 9.

The Complaint also alleges that, following the 2018 inspection, ATF issued a report of violations but did not recommend revocation. Compl. ¶ 49; Pl.'s Decl. ¶ 10. Instead, ATF instructed Plaintiff to "ensure that all information on the ATF 4473 was filled out accurately and supporting documentation is attached when necessary." Pl.'s Decl. ¶ 10. Since his 2018 inspection, Plaintiff has "instituted remedial measures in order to comply with the law, including purchasing a software system that better tracks transactions and required background checks." *Id.* ¶ 12.

## V.    Plaintiff's Complaint

On October 19, 2022, Plaintiff filed the present action. *See* Compl. In sum, Plaintiff challenges ATF's "unlawful enforcement of the Gun Control Act" by inaccurately contending that in summer of 2021, the "Biden Administration announced a new policy to enforce the Act against licensees who inadvertently fail to comply [with the Act's requirements]." *Id.* at 1-2 (mis-citing White House Fact Sheet). Plaintiff further alleges—but provides no factual allegations to support—that since the ATF Memo was issued, "revocations have increased over 500%[.]" *Id.* at 2; *see also id.* ¶ 39 ("Since announcing this new policy, the ATF has initiated at least 273 revocation proceedings, and likely many more."). From this singular fact, and notwithstanding binding policies to the contrary, Plaintiff contends that "the ATF has effectively written the word 'willful' out of the statute by instituting a policy of revoking FFLs for inadvertent paperwork errors," *id.* at 2-3, thereby imposing a "strict liability regime, where accidental typos and other minor paperwork errors could cost business owners their livelihoods[,]" *id.* ¶ 41. Plaintiff cites no evidence that any FFL, much less Plaintiff, has had a

license revoked (or even threatened) for inadvertent violations of the Act and its implementing regulations.

With respect to his own business, Plaintiff contends that, notwithstanding the four years that have passed since the 2018 inspection report, he is "still subject to revocation" based on that report, and "fear[s] such based on Defendants' new enforcement policies." *Id.* ¶ 57. In support of this claim, the Complaint alleges, without factual elaboration of the circumstances, that "Plaintiffs are aware of at least one FFL licensee who received a recommendation of revocation based on an inspection that occurred over 15 months prior to the recommendation." *Id.* ¶ 58.

The Complaint asserts three claims: (1) that the agency action violates the Gun Control Act; (2) the agency action violates Plaintiff's Second Amendment rights; and (3) that Plaintiff is entitled to equitable relief for an ongoing violation of federal law. *See* Compl. ¶¶ 59-87. As for relief, Plaintiff seeks declaratory judgment and an injunction. *See id.* at 14-15.

## LEGAL STANDARDS

### I.    Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)); *see also Home Depot USA, Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019) (same). "Article III, § 2, of the Constitution delineates the character of the controversies over which federal judicial authority may extend." *Jackson*, 139 S. Ct. at 1746 (cleaned up). "And lower federal-court jurisdiction is further limited to those subjects encompassed within a statutory grant of jurisdiction." *Id.* (citation omitted). "Accordingly, the district courts may not exercise jurisdiction absent a statutory basis." *Id.* (citation omitted). The Administrative Procedure Act ("APA") provides for judicial review of "final agency actions for which there is no other adequate remedy in a court[.]" 5 U.S.C. § 704; *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990) ("When . . . review is sought not pursuant to a specific authorization in the substantive statute, but only under the general review provisions of the

APA, the agency action in question must be final agency action." (citation omitted)).  The Fifth Circuit considers final agency action a "jurisdictional prerequisite of judicial review."  *Louisiana v. U.S. Army Corp. of Eng'rs*, 834 F.3d 574, 584 (5th Cir. 2016) (citing *Am. Airlines, Inc. v. Herman*, 176 F.3d 283, 287 (5th Cir. 1999)).

Additionally, "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (citation omitted).  "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing."  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citation omitted).  "To establish standing, '[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'"  *Denning v. Bond Pharm. Inc.*, 50 F.4th 445, 450 (5th Cir. 2022) (quoting *Spokeo*, 578 U.S. at 338).  To establish standing, a plaintiff "must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted).

The case or controversy requirement also serves as a basis for the ripeness doctrine.  *See Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012).  "The ripeness doctrine's 'basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'"  *Id.* (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)).  "[W]hen the case is abstract or hypothetical," the ripeness doctrine favors dismissal.  *Id.* (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987)).

"The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction."  *Laufer v. Mann Hosp., LLC*, 996 F.3d 269, 271 (5th Cir. 2021) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).  "At the pleading stage, [that] 'burden is to allege a plausible

set of facts establishing jurisdiction.'" *Id.* (quoting *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012)).

## II.     Rule 12(b)(6)

"To survive a motion to dismiss under Rule 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *La. Oil & Gas Interests, LLC v. Shell Trading U.S. Co.*, 949 F.3d 915, 918 (5th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678).   "To survive a Rule 12(b)(6) motion to dismiss, a complaint does not need detailed factual allegations, but must prove the plaintiff's grounds for entitlement to relief—including factual allegations in the complaint that when assumed to be true raise a right to relief above the speculative level." *White v. U.S. Corr., LLC*, 996 F.3d 302, 307 (5th Cir. 2021) (quoting *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007)).

On a Rule 12(b)(6) motion, the district court "accept[s] all well-pled facts as true, construing all reasonable inferences in the complaint in the light most favorable to the plaintiff." *White*, 996 F.3d at 306-07 (citing *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020)).   But courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* at 307 (quoting *Heinze*, 971 F.3d at 479)).

## ARGUMENT

## I.     Plaintiff has failed to carry his burden to establish that this Court has subject matter jurisdiction.

Plaintiff's Complaint, at base, amounts to nothing more than bare speculation about what may happen under ATF's new policy based on a misreading of that policy.  Speculation provides no proper foundation for legal claims, and therefore, unsurprisingly, Plaintiff's Complaint fails four times over. ATF has not issued policy guidance providing for revocation based on inadvertent violations, nor

does Plaintiff allege that the ATF has issued Plaintiff, or anyone else, an order of revocation based on an inadvertent violation; therefore, Plaintiff has not challenged a final agency action suitable for judicial review.  In turn, because ATF has taken no final action determining Plaintiff's rights or obligations, nor even threatened to, Plaintiff has not suffered Article III injury.  And because Plaintiff's claims remain purely hypothetical, they are not ripe.  Without factual support that ATF has issued guidance in violation of the Gun Control Act or has adopted a practice that diverges from written agency policy, Plaintiff's claims fail on the merits.  This Motion addresses each argument in turn.

### A.   Plaintiff has not challenged a final agency action.

Perhaps the most obvious flaw in Plaintiff's claims is the lack of final agency action that could give rise to a viable claim.  Plaintiff does not appear to contest that ATF's official guidance and policies adhere to the Gun Control Act's willfulness requirement.  His complaint, instead, is that regardless of what the written guidance says, in practice, ATF will enforce a more stringent version of the policy that will sweep up licensees' "inadvertent" or nonwillful actions.  But apart from an alleged uptick in enforcement, Plaintiff has no factual basis to speculate as to such a pattern of enforcement, and hypothetical future enforcement is not agency action for which Plaintiff can sue.

Plaintiff brings his claims under the APA, which permits judicial review of "final agency action for which there is no other adequate remedy in a court."  5 U.S.C. § 704.  Courts consider two elements to determine whether there is a final agency action: (1) whether the act in question qualifies as an agency "action" under the APA, and (2) whether that action is final.  *See Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 18 (D.C. Cir. 2006).

With respect to the first element, the Supreme Court has stated that judicial review under the APA is limited to the set of "circumscribed, discrete agency actions" delineated in 5 U.S.C. § 551(13), *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004), which defines "[a]ction" as "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 551(13).

"The term 'action' as used in the APA is a term of art that does not include all conduct such as, for example, constructing a building, operating a program, or performing a contract." *Vill. of Bald Head Island v. U.S. Army Corp of Eng'rs*, 714 F.3d 186, 193 (4th Cir. 2013). "Rather, the APA's definition of agency action focuses on an agency's *determination* of rights and obligations, . . . whether by rule, order, license, sanction, relief, or similar action." *Id.* With respect to the second element, the agency action must (1) "mark[] the consummation of the agency's decisionmaking process," and (2) determine "rights or obligations" or produce "legal consequences." *Texas v. EEOC*, 933 F.3d 433, 441 (5th Cir. 2019) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)); *see also U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016).

Plaintiff has not clearly identified, or challenged, any discrete agency action. ATF has not issued Plaintiff a revocation order. Plaintiff does not allege that the 2018 inspection report recommended revocation. And that report was not "agency action" because it made no determination of Plaintiff's rights or obligations, nor did it sanction Plaintiff; instead, it merely advised him "to ensure that all information on the ATF 4473 was filled out accurately and supporting documentation is attached when necessary." Pl.'s Decl. ¶ 10. Further, although the Complaint cites to the White House Fact Sheet and attaches the DOJ Announcement and ATF Memo as exhibits, *see, e.g.*, Exs. B and C to Compl., Plaintiff does not challenge the substance of the policy set forth in these documents.

Instead, Plaintiff challenges a hypothetical "Enforcement Policy" of Plaintiff's own creation. At bottom, Plaintiff speculates that ATF will enforce the Gun Control Act *by ignoring both the Act and its official policies*. Apart from an alleged uptick in enforcement actions, Plaintiff cites to zero evidence for this alleged divergence. Plaintiff suggests ATF has increased its enforcement actions based on "inadvertent paperwork errors." *See, e.g.,* Compl. at 2; ¶¶ 38-41. But the one does not follow from the other, and Plaintiff offers no facts to substantiate the existence of his fabricated "Enforcement Policy." Tellingly, Plaintiff avoids citing to the actual text of the policy documents wherever possible,

and he cites no policy document language that calls for a recommendation of revocation for inadvertent violations.  When Plaintiff does cite to the text of the policy documents, he conveniently omits key references to the willfulness requirement that provide critical context.  *Compare* Compl. ¶ 37 (quoting ATF Memo but omitting its reference to "willfully committed" violations) *with* ATF Memo at 2; *see also Cargill v. Garland*, No. 20-51016, 2023 WL 119435, (5th Cir. 2023) (en banc) (""[C]ontext is a primary determinant of meaning.'" (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012))).

That Plaintiff does not challenge official ATF policy is readily apparent from the policy documents themselves.  As noted, these documents repeatedly echo the Gun Control Act's requirement that a license may only be revoked for willful violations.  *See, e.g.,* ATF Memo at 2; White House Fact Sheet at 2.  Nowhere do the documents suggest that ATF is implementing a new policy to revoke licenses based on "inadvertent paperwork errors" or create a "strict liability regime."  Compl. at 2; ¶ 41.  Thus, Plaintiff's Complaint relies upon the policy documents as evidence that ATF's enforcement policy has changed, but it does not challenge the policy set forth in those documents themselves.

Because he cannot challenge ATF's actual policies, Plaintiff is left challenging a speculative version of ATF's actual practice that is untethered from fact.  "[T]his is not a case where a policy of some kind was plainly adopted and illuminated, albeit imperfectly."  *Pearl River Union Free Sch. Dist. v. King*, 214 F. Supp. 3d 241, 260 (S.D.N.Y. 2016).  Instead, Plaintiff "appear[s] to have attached a 'policy' label to [his] own amorphous description of the [defendant government agency's] practices.  But a final agency action requires more."  *Bark v. U.S. Forest Serv.*, 37 F. Supp. 3d 41, 50 (D.D.C. 2014) (rejecting challenge to Forest Service's "policy" when Plaintiff "point[ed] to no written rules, orders, or even guidance documents of the Forest Service that set forth the supposed policies challenged").  A speculative shadow policy, unsupported by any plausibly alleged facts, is a far cry from a challenge

to "circumscribed, discrete agency action[]," *Norton*, 542 U.S. at 62, such as an agency "rule, order, license, sanction, [or] relief," that is suitable for judicial review.  5 U.S.C. § 551(13).

Nor is there any finality accompanying Plaintiff's imagined "Enforcement Policy."  Plaintiff's only factual support for such a policy—an alleged increase in the initiation of revocation proceedings—neither alters Plaintiff's legal "rights or obligations" nor gives rise to "direct and appreciable legal consequences."  *Louisiana*, 834 F.3d at 582 (quoting *Bennett*, 520 U.S. at 178).  As was the case before the policy documents were issued, Plaintiff's license may be revoked only for willful violations of the Gun Control Act, and it may not be revoked until ATF finds a willful violation and initiates and carries out revocation proceedings against him.  Even then, an order of revocation is subject to judicial review by an Article III district judge.  *See* 18 U.S.C. § 923(f)(3) (licensee subject to revocation may "file a petition with the United States district court . . . for a de novo judicial review of such . . . revocation.").  ATF has not so much as indicated it has found a willful violation—thus, there has been no alteration of Plaintiff's legal rights or obligations.  Indeed, even if Plaintiff's imagined Enforcement Policy existed, notwithstanding ATF's official policies to the contrary, it would not be final because it has been applied to no one, much less to Plaintiff.  This is all the more proof that the alleged policy exists only as conjecture, and therefore cannot be final agency action.

### B.      Plaintiff lacks standing.

Plaintiff's claims are equally flawed when viewed through the lens of standing.  Typically, to establish Article III standing, a plaintiff "must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 560 (internal citations omitted).  To determine whether a plaintiff's injury is concrete, courts consider whether the injury "actually exist[s]," and whether it is "real, and not abstract."  *Spokeo*, 578 U.S. at 340 (citation omitted).  Such injury must be "actual or imminent, not conjectural or hypothetical," or at least, "certainly impending."  *Lujan*, 504 U.S. at 560, 564 n.2

(citations omitted).  "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes."  *Id.* at 564 n.2 (citation omitted).

The Complaint does not allege that Plaintiff has already suffered an injury-in-fact, or that any such injury is certainly impending.  ATF has not revoked Plaintiff's license, nor has ATF threatened to initiate revocation proceedings.  Plaintiff effectively seeks pre-enforcement review of ATF's hypothetical application of its policies to him.  Such review may be warranted "under circumstances that render the threatened enforcement sufficiently imminent."  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-59 (2014) ("*SBA List*").  A would-be pre-enforcement plaintiff must allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder."  *Id.* at 159 (quoting *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979)); *see also Babbitt*, 442 U.S. at 298 ("A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement."); *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020).  But "persons having no fears of [enforcement] except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs."  *Babbitt*, 442 U.S. at 298 (quoting *Younger v. Harris*, 401 U.S. 37, 42 (1971)).

Plaintiff's fears of enforcement are both imaginary and speculative.  Plaintiff has not plausibly alleged that he intends to engage in conduct that is proscribed by any actual ATF enforcement policy, or that there is a credible threat that ATF would revoke his license under its policies, real or imagined.

Plaintiff believes his license could be revoked because, even though he "seek[s] to abide by the Act and ha[s] instituted remedial measures in order to comply with the law," the "new standard applied by the ATF would be virtually impossible to meet when accounting for the volume of transactions that Plaintiff[] complete[s]."  Compl. ¶¶ 51-52; *see also id.* ¶ 56.  But the policy documents

14

Plaintiff cites contemplate license revocation only for willful violations, in keeping with the Act's requirements.  Plaintiff does not claim that he intends to commit such serious, willful violations, nor that he would have any right to.

In any event, Plaintiff must allege facts to support that the "threat of future enforcement of the [policy] is substantial."  *SBA List*, 573 U.S. at 164.  Frequently, courts look to a "history of past enforcement," because "past enforcement against the same conduct is good evidence that the threat of enforcement is not chimerical."  *Id.* (citation omitted).  Courts also evaluate factors such as who may initiate an enforcement action and the frequency of enforcement.  *Id.*

Plaintiff has not alleged facts to support that there is a substantial threat that ATF will revoke his license.  Plaintiff has not alleged that he intends to commit willful violations of the Gun Control Act that would run afoul of ATF's policies.  Nor does he allege that ATF has indicated it seeks to revoke his license, or that ATF has revoked the licenses of other similarly situated FFLs.  Plaintiff strains to allege a fear of enforcement arising from his 2018 inspection.  *See* Compl. ¶ 57.  He cites a single anecdote in support: allegedly, ATF recommended revocation for an unnamed licensee for unspecified violations based on an inspection that occurred 15-months prior.  *Id.* ¶ 58.  Plaintiff has not explained how he is similarly situated to the unnamed licensee such that his fear of revocation is reasonable, and further, fifteen months and five years are not comparable time periods.

Additionally, ATF's history of past enforcement does not support that Plaintiff faces a substantial risk of revocation.  Plaintiff alleges that ATF inspected his business in 2018 and cited him for four different types of violations.  *See* Compl. ¶¶ 45, 47.  He does not allege that those citations were for willful violations or that they resulted in the initiation of revocation proceedings.  In fact, he specifically notes that "ATF issued a report of violations and did not recommend revocation," and instead, merely recommended corrective actions.  *Id.* ¶¶ 49-50.  Plaintiff only makes the conclusory allegation that "all four of the types of violations listed in the inspection report would fall under the

ATF's new policy regarding falsification of records and would result in a revocation recommendation." *Id.* ¶ 53. But as explained previously, per the policy documents, only willful violations—such as the willful falsification of records—can support a revocation recommendation. Accordingly, Plaintiff's history of past enforcement does not illustrate that he is at any risk of future license revocation.

Plaintiff simply fails to connect the dots to support his conjectural theory of pre-enforcement standing. He hypothesizes that ATF will ignore its stated policies and enforce an entirely different "strict liability" policy framework that will sweep up inadvertent errors. Plaintiff falls well short of plausibly alleging that this is likely to occur. Were ATF to bring an enforcement action against Plaintiff, Plaintiff would be able to challenge the basis of such an action. And, in the fanciful event that such an action swept up inadvertent errors or otherwise diverged from the Act or ATF's policies, Plaintiff could demonstrate as much to ATF and then to a court. But he has no basis to demand that this Court do so now.

### C.    Plaintiff's claims are not ripe.

The ripeness doctrine also demonstrates that Plaintiff's claims are not justiciable.[3] Article III provides that "federal courts have the power to decide only actual cases or controversies," and to that end, the "ripeness doctrine's basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Choice Inc.*, 691 F.3d at 714-15 (citation omitted); *see also NextEra Energy Cap. Holdings, Inc. v. Lake*, 48 F.4th 306, 315-16 (5th Cir. 2022), *pet. for cert. filed*, No. 22-601 (U.S. Dec. 30, 2022). In determining whether a case is ripe, the

---

[3] Ripeness considerations alone may be insufficient for the Court to decline jurisdiction, but here, Plaintiff lacks subject matter jurisdiction for lack of final agency action and lack of standing, and ripeness concerns only underscore that Plaintiff has not brought a justiciable case or controversy. *See SBA List*, 573 U.S. at 167 (explaining ripeness concerns may be in tension with the principle that "a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging." (citation omitted)).

"key considerations" are: (1) "the fitness of the issues for judicial decision," and (2) "the hardship to the parties of withholding court consideration." *Choice Inc.*, 691 F.3d at 715 (quoting *New Orleans Pub. Serv., Inc.*, 833 F.2d at 586).

These considerations fit neatly with Defendants' final agency action arguments. First, because there is no final agency action for the Court to review, there is no clean, purely legal question presented. "A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." *Id.* (quoting *New Orleans Pub. Serv., Inc.*, 833 F.2d at 587). As explained previously, the Complaint does not challenge a revocation order or a written policy. Because Plaintiff's allegations are conjectural as to how ATF may enforce the Act in practice, a "factual record of an actual or imminent application" of an alleged policy that is "sufficient to present the constitutional issues in clean-cut and concrete form" is lacking. *Renne v. Geary*, 501 U.S. 312, 321-22 (1991) (citation omitted). Plaintiff's claims are thus not fit for judicial determination.

Second, "even where an issue presents purely legal questions, the plaintiff must show some hardship in order to establish ripeness." *Choice Inc.*, 691 F.3d at 715 (citation omitted). But Plaintiff will suffer no hardship if the Court declines to decide this matter now. Plaintiff does not allege that the operation of his business has been affected. And he has not alleged that ATF has imposed any "new, affirmative obligation[s]" that present him with the "critical dilemma" of choosing "between complying with a law thought to be invalid or continuing to act in a manner believed to be lawful but which could result in future adverse consequences if the law in question were later upheld." *Id.* at 716. Instead, Plaintiff is merely "required to comply with existing and applicable . . . federal statutes or regulations regardless of" any shift in ATF's enforcement policy. *Id.* Plaintiff already "seek[s] to abide by the Act and ha[s] instituted remedial measures in order to comply with the law," and therefore, he need not modify his behavior. *See* Compl. ¶ 51. In any case, in the event ATF recommends revocation of Plaintiff's license in the future, as explained previously, he is entitled to de novo review of that

determination in district court.

In sum, ripeness considerations merely underscore that this controversy is not justiciable.

## II.     Plaintiff has failed to state a claim that entitles him to relief.

Alternatively, even assuming the ATF Memo, or the ATF Memo in conjunction with the White House Fact Sheet and DOJ Announcement, constitutes reviewable final agency action, Plaintiff's claims fail on the merits because ATF's enforcement policy is perfectly in step with the requirements of the Gun Control Act.  And to the extent that Plaintiff contends that ATF's pattern or practice of enforcement diverges from its written policies, Plaintiff has failed to allege facts that plausibly support that any such policy exists.

Plaintiff's core allegation is that ATF is acting contrary to law and violating his and others' Second Amendment rights by effectively eliminating the Gun Control Act's willfulness requirement.[4] *See* Compl. ¶¶ 64-65 ("The Act requires violations to be 'willful[]' in order to result in revocation of an FFL.  The Enforcement Policy is inconsistent with the Act because it sweeps in inadvertent violations and does not require violations to be intentional, reckless, or that licensees were indifferent to the Act's requirements.  As a result, Plaintiffs are subject to a regulation that is contrary to law[.]").  But the policy documents Plaintiff references and cites throughout the Complaint repeatedly emphasize that only willful violations may serve as a basis for a revocation recommendation.

For instance, the White House Fact Sheet repeatedly emphasizes that the zero-tolerance policy applies only for willful violations, and only certain willful violations.  The header of the applicable section states that it is "[e]stablishing zero tolerance for rogue gun dealers that willfully violate the law."  White House Fact Sheet at 2.  It continues, clarifying that "[t]oday, the Justice Department is

---

[4] Defendants flag that the Complaint does not allege that the Gun Control Act itself is unlawful or violates the Second Amendment.  Instead, Plaintiff's Second Amendment claim is conditioned upon the risk that his "FFL is revoked under [ ATF's] unlawful enforcement policy."  Compl. ¶ 70.  Thus, this Rule 12(b)(6) Motion addresses only whether that enforcement policy is in fact unlawful.

announcing a new policy to underscore zero tolerance for willful violations of the law by federally licensed firearms dealers that put public safety at risk." *Id.* at 2-3. And it specifies that "ATF will seek to revoke the licenses of dealers the first time that they violate federal law by willfully" committing one of five violations. *Id.* at 3.

The DOJ Announcement does not diverge from this language. It reiterates that ATF will seek to revoke licenses pursuant to the zero-tolerance approach only "for those dealers who willfully break the law and put public safety at risk by violating certain ATF requirements." DOJ Announcement at 5. Further, the Announcement highlights that DOJ prefers to partner with licensed firearms dealers, rather than punish them. *See id.* ("Licensed firearms dealers are often our first line of defense against gun crime and a source of critical enforcement information."); *id.* ("The Department will issue a new policy explaining how responsible conduct by federally licensed firearms dealers may play a role in its related enforcement decisions—rewarding self-reporting of noncompliance and other proactive behavior that helps to prevent tragedy."). Such language would be entirely inconsistent with a policy of revoking FFLs for inadvertent paperwork errors.

Finally, the ATF Memo also echoes the willfulness requirement. It writes that "[a]bsent extraordinary circumstances, an inspection that results in a finding that an FFL has willfully committed any of the [five listed] violations shall result in a revocation recommendation." ATF Memo at 2. Additionally, the serious nature of the five violations themselves supports that the policy is not to revoke FFLs for inadvertent violations of law. For example, the five revocable violations include transferring a firearm to a prohibited person, failing to conduct a required background check, falsifying records, failing to respond to an ATF tracing request, and failing to permit ATF to conduct a lawful inspection. *See id.* Although a showing of willfulness is separately required, the gravity of these violations underscores that ATF's policy is not to revoke licenses based on inadvertent mistakes or paperwork errors.

And even separate from the text of the policy documents, Plaintiff has not alleged facts to support that ATF has adopted a pattern or practice of recommending revocations based on violations that are not willful.  Courts frequently decline to permit plaintiffs to assert pattern or practice claims under the APA, as such claims conflict with principles of APA review.  *See Del Monte Fresh Produce N.A., Inc. v. United States*, 706 F. Supp. 2d 116, 119-20 (D.D.C. 2010) (pattern or practice claim in tension with requirement that final agency action be discrete).  Where courts do permit such claims, they first "assess whether [a] Complaint shows an unwritten policy," by considering a "Complaint's pattern allegations."  *Al Otro Lado, Inc. v. Nielsen*, 327 F. Supp. 3d 1284, 1320 (S.D. Cal. 2018).  But Plaintiff fails to allege facts to support the existence of any pattern indicating the existence of an unwritten policy.  Instead, Plaintiff merely "appear[s] to have attached a 'policy' label to [his] own amorphous description of [ATF's] practices."  *Bark*, 37 F. Supp. 3d at 50.   Plaintiff does not allege that his license has been revoked, or that ATF has initiated revocation proceedings against him for an inadvertent violation.  Nor does he even attempt to allege facts to support that ATF has a pattern of initiating revocation proceedings against other licensees for inadvertent violations.  Instead, Plaintiff merely offers sweeping speculation that ATF's unwritten policy is what he says it is by citing a general increase in the number of revocation proceedings.  Plaintiff cites no evidence to verify the accuracy of these statistics, and more importantly, he alleges no facts linking the increase to revocation based on inadvertent violations.  Indeed, the Complaint does not include even a single anecdote whereby ATF allegedly revoked a license for an inadvertent violation.  Therefore, Plaintiff's pattern or practice allegations are not well-pled, and do not plausibly state that Plaintiff has a claim that entitles him to relief.

Thus, the Complaint has failed to state a claim because it has not alleged facts that plausibly

support that ATF's current policy is contrary to law as set forth in the Gun Control Act.

## CONCLUSION

For the reasons set forth above, Plaintiffs' complaint should be dismissed.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

*/s/ Taylor Pitz*
Taylor Pitz (CA Bar No. 332080)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Phone: (202) 305-5200
Email: taylor.n.pitz@usdoj.gov

*Counsel for Defendant*

CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of January, 2023, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system which will send notification of such filing to the

following:

Nate Curtisi
Texas Public Policy Foundation
901 Congress Avenue
Austin, TX 78701

Matthew Robert Miller
Texas Public Policy Foundation
901 Congress Avenue
Austin, TX 78701

Chance D. Weldon
Texas Public Policy Foundation
901 Congress Avenue
Austin, TX 78701

Robert E. Henneke
Texas Public Policy Foundation
901 Congress Avenue
Austin, TX 78701

/s/ Taylor N. Pitz
Taylor N. Pitz