UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| **MICHAEL CARGILL and CTC HGC, LLC,**<br><br>Plaintiffs,<br><br>v.<br><br>**BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; ATF DIRECTOR STEVEN DETTELBACH, in his official capacity; ATTORNEY GENERAL MERRICK GARLAND, in his official capacity; UNITED STATES DEPARTMENT OF JUSTICE; and UNITED STATES OF AMERICA,**<br><br>Defendants. | Case No. 1:22-cv-01063-LY |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT .......................................................................................................................1

I.      Plaintiff fails to carry his burden to establish subject matter jurisdiction. ...................1

        A.      Plaintiff's effort to enjoin imagined future enforcement actions fails
                to challenge final agency action. ..............................................................1

        B.      Plaintiff lacks standing. ...........................................................................3

        C.      Plaintiff's claims are not ripe. ..................................................................6

II.     Plaintiff has failed to state a claim that entitles him to relief. ......................................7

        A.      Plaintiff's Complaint fails to allege well-pleaded facts to support his
                conclusory allegations. .............................................................................7

        B.      Plaintiff fails to plead facts supporting a Second Amendment violation. ......................9

CONCLUSION ...................................................................................................................11

## TABLE OF AUTHORITIES

**Cases**

*Appalachian Resources Dev. Corp. v. McCabe,*
 387 F.3d 461 (6th Cir. 2004) ....................................................................................... 4

*Article II Gun Shop, Inc. v. Ashcroft,*
 No. 03 C 4598, 2005 WL 701053 (N.D. Ill. Mar. 25, 2005) .............................. 4

*Arpaio v. Obama,*
 797 F.3d 11 (D.C. Cir. 2015) ................................................................................... 5, 6

*Arwady Hand Trucks Sales, Inc. v. Vander Werf,*
 507 F. Supp. 2d 754 (S.D. Tex. Aug. 7, 2007) ..................................................... 4

*Choice, Inc. v. Greenstein,*
 691 F.3d 710 (5th Cir. 2012) .................................................................................. 6, 7

*Contender Farms, L.L.P. v. U.S. Dep't of Ag.,*
 779 F.3d 258 (5th Cir. 2015) .................................................................................. 3, 4

*Craig v. Boren,*
 429 U.S. 190 (1976) ...................................................................................................... 6

*Danos v. Jones,*
 652 F.3d 577 (5th Cir. 2011) ...................................................................................... 10

*Dist. of Columbia v. Heller,*
 554 U.S. 570 (2008) ............................................................................................... 10-11

*Fairmont Cash Mgmt., LLC v. James,*
 858 F.3d 356 (5th Cir. 2017) ....................................................................................... 4

*Jaraba v. Blinken,*
 568 F. Supp. 3d 720 (W.D. Tex. Oct. 25, 2021) ....................................... 8, 9, 10

*Larson v. Domestic & Foreign Com. Corp.,*
 337 U.S. 682 (1949) ...................................................................................................... 10

*Lower E. Side People's Fed. Credit Union v. Trump,*
 289 F. Supp. 3d 568 (S.D.N.Y. 2018) ..................................................................... 4

*Lujan v. Defs. Of Wildlife,*
 504 U.S. 555 (1992) ........................................................................................................ 5

*Powers v. Ohio,*
 499 U.S. 400 (1991) ........................................................................................................ 6

*Renne v. Geary,*

501 U.S. 312 (1991) ............................................................................................ 6

*Robertson v. Allied Sols., LLC,*
    902 F.3d 690 (7th Cir. 2018) ...................................................................... 5

*Sierra Club v. EPA,*
    955 F.3d 56 (D.C. Cir. 2020) ................................................................. 2, 3

*White v. U.S. Corrections, LLC,*
    996 F.3d 302 (5th Cir. 2021) ...................................................................... 7

## Statutes

18 U.S.C. § 923 .......................................................................................... 6, 10

## Regulations

28 C.F.R. § 0.130 ........................................................................................... 10

## INTRODUCTION

For years, the Attorney General has tasked the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") with enforcing the requirements of the Gun Control Act of 1968 ("the Act") with respect to federal firearms licensees ("FFLs"). While different administrations have taken different approaches to that enforcement, ATF has always had the authority to revoke an FFL's license for a single willful violation of the Act. The Biden Administration and ATF have announced a policy whereby, absent exceptional circumstances, when an FFL *willfully* commits any of five serious violations of the Act, ATF will recommend license revocation.

This policy is lawful and completely within the bounds of authority conferred by the Act. Perhaps unsurprisingly, then, Plaintiff did not (and cannot) challenge the substance of the policy he purports to attack. Instead, Plaintiff's contentions are a mix of conjecture and distraction: conjecture that ATF will somehow enforce a *different* policy than the one it has announced, and distraction from the dispositive grounds warranting dismissal of Plaintiff's conjectural claims. The government cannot be made to defend a policy it did not adopt and has not enforced against Plaintiff. The fact Plaintiff has failed to allege a justiciable controversy only underscores that this case has no place in federal court. The Complaint must be dismissed.

## ARGUMENT

### I.      Plaintiff fails to carry his burden to establish subject matter jurisdiction.

Plaintiff's Opposition confirms the premise of Defendants' Motion to Dismiss: this action is nothing more than noise and speculation, and Plaintiff has not challenged any nonspeculative agency action nor suffered any injury. *See* Mot. to Dismiss, ECF No. 7. This action is not justiciable.

#### A.      Plaintiff's effort to enjoin imagined future enforcement actions fails to challenge final agency action.

Plaintiff's attempts at distraction are obvious from the jump. Plaintiff devotes pages to the assertion that there is final agency action here, *see* Pl's Opp., ECF No. 12, at 3-8; but whether these

1

actions are final or not, Plaintiff has no valid challenge to their legality.[1]   Plaintiff's claim is that ATF

has effectively written "willfulness" out of the Gun Control Act.  *Compare* Compl. ¶¶ 40-41, ECF No.

1 ("*Upon information and belief*, the new Enforcement Policy is to revoke FFLS for inadvertent

paperwork errors . . . . The *effect* of this new policy is to remove 'willfully' from the statute." (emphasis

added)) *with* Opp. at 4.  But the documents to which Plaintiff points—the White House Fact Sheet,

DOJ Announcement, ATF Memo, and ATF's Enforcement Order, ATF-O-53701.D[2], *see* Opp. at 4—

do no such thing.  The question is not whether these documents constitute "final agency action": it is

whether the thing (imagined or real) that Plaintiff challenges is a final agency action.  And the answer

to that question is no.  Rather than challenging the identified documents, Plaintiff challenges the

hypothetical divergent *application* of the otherwise lawful policies those documents reflect.  Jurisdiction

does not arise from such conjecture.

To take one example, the Opposition selectively quotes the ATF Memo for the proposition

that "a single violation of the five listed violations 'shall result in a revocation recommendation.'"[3]  *See*

*id.* at 4 (quoting ATF Memo).  This simply does not reflect the substance of the ATF Memo or any

of the written policy documents, which expressly provide, consistent with the Act, for a

recommendation of revocation only where an FFL has willfully committed one of five serious

---

[1] The Court need not reach this issue, but Defendants do not concede that these actions amount to final agency action.  *See Sierra Club v. EPA*, 955 F.3d 56, 63 (D.C. Cir. 2020) (final agency action determination focuses on how agency pronouncements actually affect regulated entities).

[2] Plaintiff's Opposition repeatedly cites ATF's Enforcement Order, ATF-O-5370.1D.  The Complaint cites this document only in passing and presents no claims tied to this document. Accordingly, the Government's brief did not address it.  This document, and Plaintiff's reliance on it, is addressed in Part II.A, *infra*.

[3] Plaintiff's Opposition even cites inconsistent characterizations of the alleged enforcement policy. *Compare* Opp. at 5 ("[T]he new policy is that ATF's finding of a single violation 'shall result in a revocation recommendation.'") *with id.* at 4 ("[A] single violation of the five listed violations 'shall result in a revocation recommendation.'") *with id.* at 12 ("Defendants' new Enforcement Policy . . . result[s] in an Enforcement Order that revokes licenses for inadvertent paperwork errors.").

violations of the statute.[4]  None of the policy documents provides for (or even suggests the possibility

of) revocation upon a single inadvertent paperwork error, as Plaintiff claims.

In sum, the Court need not consider whether any of the government actions identified by

Plaintiff are final agency action.  Their finality is immaterial because in substance Plaintiff does not

challenge them.  *See* Mot. to Dismiss at 11-12.  Instead, Plaintiff batters a straw man: Plaintiff rails

against imagined future agency enforcement action that somehow, Plaintiff speculates, will violate

both the Act and the policies to which he points.  All told, the Complaint fails to substantiate Plaintiff's

conjecture, either factually, legally, or temporally.  Plaintiff's attempt to rely on "final agency action"

is a trojan horse not to be indulged.  It is not tenable to permit a plaintiff to challenge a policy the

government has not adopted.  And should ATF undertake any enforcement action against Plaintiff

that runs afoul of the Act or the policies he identifies, Plaintiff has a right of judicial review in a United

States district court.  *See* Mot. to Dismiss at 3, 13, 17-18.

**B.      Plaintiff lacks standing.**

Plaintiff's Opposition fares no better when viewed through the lens of Article III standing.

First, Plaintiff contends he has standing because he is directly regulated by the Enforcement Order.

*See* Opp. at 8.  To be sure, a plaintiff who is the object of a regulation *who is injured by that regulation* may

have standing to challenge it, but this argument sidesteps Defendants' key point—Plaintiff has not

been injured.  *See id.* at 8 (quoting *Contender Farms, L.L.P. v. U.S. Dep't of Ag.*, 779 F.3d 258, 264 (5th

---

[4] *See* Ex. A to Mot. to Dismiss., ECF No. 7-1, White House Fact Sheet, at 3 ("Absent extraordinary circumstances," ATF will seek to "revoke the licenses of dealers the first time that they violate federal law by willfully 1) transferring a firearm to a prohibited person, 2) failing to run a required background check, 3) falsifying records, such as a firearms transaction form, 4) failing to respond to an ATF tracing request, or 5) refusing to permit ATF to conduct an inspection in violation of the law."); Ex. C to Compl., ECF No. 1, DOJ Announcement, at 5 ("But for those dealers who willfully break the law and put public safety at risk by violating certain ATF requirements, ATF will seek to revoke their licenses[.]"); Ex. B to Compl., ATF Memo, at 2 ("Absent extraordinary circumstances, an inspection that results in a finding that an FFL has willfully committed any of the following violations shall result in a revocation recommendation: [listing five violations].").

Cir. 2015)); *see also Lower E. Side People's Fed. Credit Union v. Trump*, 289 F. Supp. 3d 568, 579 (S.D.N.Y. 2018) ("The mere fact that Plaintiff is regulated by [an agency] does not confer standing to bring this suit. Plaintiff must instead allege a concrete and particularized injury caused by [the agency's] actions[.]"). Thus, the mere assertion that Plaintiff is regulated by ATF and the framework at issue here, without allegation of injury in fact, is insufficient to establish standing.

Next, Plaintiff contends that he has suffered an injury in fact because "increased regulatory burden typically satisfies the injury in fact requirement." Opp. at 8 (quoting *Contender Farms*, 779 F.3d at 266). There are a few issues with this claim. Most obviously, ATF has not increased Plaintiff's regulatory burden. Plaintiff has always been required to comply with the Gun Control Act. Partial compliance has never been sufficient, and courts have made clear that under the Act, any single willful violation has always been sufficient to support a recommendation of revocation. *See Fairmont Cash Mgmt., LLC v. James*, 858 F.3d 356, 362 (5th Cir. 2017) ("A single willful violation authorizes the ATF to revoke the violator's FFL, regardless how severe[.]"); *Arwady Hand Trucks Sales, Inc. v. Vander Werf*, 507 F. Supp. 2d 754, 761 (S.D. Tex. Aug. 7, 2007) ("As specified by statute, an application for a federal firearms license will not be approved if the applicant has willfully violated any provision of the chapter."); *Article II Gun Shop, Inc. v. Ashcroft*, No. 03 C 4598, 2005 WL 701053, at *3 (N.D. Ill. Mar. 25, 2005) ("A single violation is a sufficient basis for revoking a license." (citing *Appalachian Resources Dev. Corp. v. McCabe*, 387 F.3d 461, 464 (6th Cir. 2004)). Further, the Act has always imposed significant paperwork obligations on FFLs, and that burden has not changed. *See Fairmont*, 858 F.3d at 363 ("[T]hat Cash Cow's violations were paperwork violations does not make them any less serious or less willful. The Gun Control Act imposes significant record-keeping obligations upon firearms dealers as part of Congress's carefully crafted plan to ensure that firearms do not end up in the wrong hands."); *Arwady Hand Trucks Sales*, 507 F. Supp. 2d at 762 n.11 ("The severity of record-keeping discrepancies plays no role in evaluating willfulness. A single willful violation by a licensee of the GCA

4

is sufficient to authorize the ATF to revoke a license or deny an application." (citations omitted)).

Additionally, neither Plaintiff's Complaint nor Opposition alleges facts plausibly supporting that his compliance costs have increased. "The party invoking federal jurisdiction bears the burden of establishing" the three elements of standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). The elements of standing are "not mere pleading requirements but rather an indispensable part of the plaintiff's case," and accordingly, "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof[.]." *Id.* "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice[.]" *Id.* Still, "in order to survive dismissal for lack of standing, the plaintiffs' complaint must contain sufficient factual allegations of an injury resulting from the defendants' conduct, accepted as true, to state a claim for relief that is plausible on its face." *Robertson v. Allied Sols., LLC*, 902 F.3d 690, 695 (7th Cir. 2018) (citation omitted). "[T]hreadbare recitals of the elements of standing, supported by mere conclusory statements, do not suffice." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (cleaned up and citation omitted). Courts "do not assume the truth of legal conclusions, nor . . . accept inferences that are unsupported by the facts set out in the complaint." *Id.* (citation omitted).

Plaintiff's Complaint fails to allege an injury in fact for all the reasons previously set forth in Defendants' Motion to Dismiss. *See* Mot. to Dismiss at 13-16. Plaintiff's Opposition attempts to save the Complaint by contending that "Defendants' revised Enforcement Order has resulted in increased compliance costs for Plaintiff" and "Plaintiff also has a personal stake in the outcome, as how he operates his business depends on Defendants' Enforcement Policy." Opp. at 9. But these are nothing more than conclusory statements, provided without additional supporting facts, and they fall particularly short because, as explained previously, Plaintiff's business is already subject to regulation and his regulatory burden has not increased.

Plaintiff's remining arguments are inapposite. Plaintiff's argument that injury is "imminent"

because ATF regularly inspects FFLs fails because Plaintiff has not alleged that inspection alone, absent purportedly unlawful revocation, violates the Act or is otherwise unlawful.  *See id.*  And Plaintiff's assumption that a regular inspection is equivalent to license revocation proves too much given the multiple steps between inspection and revocation.  *Compare id. with* 18 U.S.C. § 923(e)&(f). Finally, because Plaintiff has not alleged Article III injury, no injury can be traced to ATF's actions nor redressed by court order, and Plaintiff cannot bring claims on behalf of his customers.  *See Powers v.* Ohio, 499 U.S. 400, 411 (1991) (litigants may only bring actions on behalf of third parties where litigant himself has suffered an injury in fact (citing Craig *v. Boren*, 429 U.S. 190 (1976)).  If anything, Plaintiff's invocation of imagined "imminent" inspections, which Plaintiff theorizes could lead to revocation proceedings, underscores the baselessness of Plaintiff's speculation about how ATF will enforce its lawful policies against Plaintiff at some time in the future.  *See supra*, Section I.A.  For all these reasons, Plaintiff has failed to allege injury in fact and his Complaint should be dismissed.

## C.      Plaintiff's claims are not ripe.

Plaintiff hardly attempts to rebut Defendants' ripeness arguments, affirming that this case is not justiciable.  Plaintiff all but ignores the first prong of the ripeness test: whether the issues are fit for judicial decision.  This prong considers whether the "remaining questions are purely legal ones," and in general, "a case is not ripe if further factual development is required." *Choice, Inc. v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012).  Plaintiff contends his claims are ripe because it is only a matter of time before his shop is inspected and "Plaintiff is still liable for previous inspections."  Opp. at 10. This assertion only reinforces how speculative this action is, and, in any event, does not address whether the legal issues are suitable for judicial decision.  And, as it is unclear what policy Plaintiff is challenging, or that such policy even exists, a "factual record of an actual or imminent application" of an alleged policy that is "sufficient to present the constitutional issues in clean-cut and concrete form" is severely lacking.  *Renne v. Geary*, 501 U.S. 312, 321-22 (1991) (citation omitted).

Plaintiff's allegations of hardship fare no better. Plaintiff cites his "added compliance burden and fear of having an FFL wrongfully revoked," Opp. at 10, but as explained above, Plaintiff's compliance burden has not increased. *See supra*, Section I.B. Additionally, "[t]he Supreme Court has found hardship to inhere in legal harms, such as the harmful creation of legal rights or obligations; practical harms on the interests advanced by the party seeking relief; and the harm of being forced to modify one's behavior in order to avoid future adverse consequences." *Choice*, 691 F.3d at 715 (cleaned up). Fear is not included in this list. And the Fifth Circuit has rejected the argument that this prong is satisfied when an entity must "operate in a heightened state of vigilance in which it is required to undertake all steps possible to try to predict which laws [an agency] will enforce and how it will interpret them, and try to come into compliance with those expectation in order to avoid closure." *Id.* at 715-16 (citation omitted). And, as in *Choice*, Plaintiff "has not identified a single concrete example of how [he] has been forced to modify [his] behavior." *Id.* at 716. Thus, Plaintiff's claims are not ripe.

## II.    Plaintiff has failed to state a claim that entitles him to relief.

### A.    Plaintiff's Complaint fails to allege well-pleaded facts to support his conclusory allegations.

For all the reasons stated in Defendants' Motion to Dismiss, Plaintiff's factual allegations are not well-pleaded and Plaintiff has failed to state a claim entitling him to relief. In the context of a Rule 12(b)(6) motion, a court "accept[s] all well-pled facts as true, construing all reasonable inferences in the complaint in the light most favorable to the plaintiff," but it does "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *White v. U.S. Corrections, LLC*, 996 F.3d 302, 306-07 (5th Cir. 2021) (citations omitted).

As set forth in Defendant's Motion to Dismiss, the plain language of the policy documents preserves the willfulness requirement. *See* Mot. at 18-19. The Court, therefore, absolutely need not accept Plaintiff's conclusory allegations that the new "Enforcement Policy" "revokes licenses for inadvertent paperwork errors," Opp. at 12, when the policy documents *Plaintiff attached to the Complaint*

*itself repeatedly reiterate the willfulness requirement. See* DOJ Announcement and ATF Memo.  The other policy document cited in the Complaint, subject to judicial notice, likewise, reiterates the willfulness requirement.  *See* White House Fact Sheet.  Thus, the conclusions and factual inferences Plaintiff draws, *i.e.*, that ATF will enforce something other than the willfulness requirement in practice, are completely ungrounded in fact and do not entitle him to relief.

In opposition, Plaintiff now pivots to focus on ATF's Enforcement Order, ATF-O-5370.1D, an internal guidance document setting forth ATF enforcement policies.  The Complaint cites this document only in passing and presents no claims tied to this document.  *See* Compl. ¶ 36.  Plaintiff's pivot to ATF-O-5370.1D is thus an improper attempt to add new claims through argumentation, and his arguments should be rejected on that basis alone.  *See Jaraba v. Blinken*, 568 F. Supp. 3d 720, 727 (W.D. Tex. Oct. 25, 2021) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." (citations omitted)).

But in any event, ATF-O-5370.1D is no more helpful to Plaintiff than the other documents: Plaintiff speculates that this document, in wild divergence from its companion policies, adopts a "new 'zero-tolerance' policy that puts gun shops out of business over inadvertent, non-willful violations of the Gun Control Act[.]"  Opp. at 12-13.  This is repeated, groundless speculation from Plaintiff's Complaint, now arbitrarily attached to ATF-O-5370.1D.  Plaintiff has provided no factual allegations to support that this document says anything of the sort, and it simply is not plausible that ATF issued an internal guidance document that departs entirely from the administration and agency's publicly issued policy documents.  Defendants do not attach it as an exhibit because ATF-O-5370.1D is a nonpublic sensitive document protected by the law enforcement privilege.  *See, e.g., Everytown for Gun Safety Support Fund, et al. v. ATF, et. al.*, No. 1:21-cv-00376 (S.D.N.Y.), ECF No. 26, Decl. of Megan A. Bennett, ¶¶ 5-6 (asserting law enforcement privilege over predecessor version of this document to safeguard "the integrity of ongoing and future ATF inspections and investigations" and "the future

effectiveness of investigatory techniques.").   For these reasons, the Court can grant Defendants'

Motion without considering ATF-O-5370.1D's contents.   However, should the Court wish to review

the document, the Government will provide it upon request for review *in camera* and *ex parte*.

The *only* factual allegation Plaintiff cites to support that any of the policy documents (including

ATF-O-5370.1D) provide for revocation for non-willful violations is a general increase in the number

of revocations.  *See* Opp. at 12.  Even assuming this allegation is true, a general increase in revocation

recommendations is perfectly consistent with ATF's written policy documents: absent extraordinary

circumstances, ATF will recommend revocation for willful violations of the five serious, enumerated

Gun Control Act violations, even if previously, it may not have.   Thus, in the absence of other

supporting facts, this allegation does not permit the Court to plausibly infer that the agency has secretly

adopted a divergent policy of revoking for non-willful violations.   Accordingly, Plaintiff's Complaint

lacks factual foundation, and he cannot state a claim that entitles him to relief.

### B.  Plaintiff fails to plead facts supporting a Second Amendment violation.

Plaintiff contends that Defendants have not addressed his equitable claims.  *See* Opp. at 13.

This is another distraction.   Defendants have not and do not contend that plaintiffs cannot bring

claims under the Constitution.   Defendants argue merely that Plaintiff's second and third claims fail

because they rely on the same faulty premise as Plaintiff's APA claim: that ATF's policy writes the

willfulness requirement out of the Gun Control Act.   *See* Mot. to Dismiss at 18, n.4.   Additionally,

although Plaintiff unnecessarily invokes the *Larson* exception, that exception has no application here.

Counts two and three of the Complaint are premised on the same factual conjecture as

Plaintiff's APA claim: that if, pursuant to its alleged policy, ATF revoked Plaintiff's license for a non-

willful violation, ATF would violate Plaintiff's Second Amendment rights.  Compl. ¶ 70 ("If Plaintiffs'

FFL is revoked under this unlawful enforcement policy. . ."); *see also id.* ¶ 75 ("The Enforcement Policy

will make it harder for citizens to obtain firearms, train with them, and maintain them for purposes of

self-defense."); *id.* ¶ 76 ("Such a burden is not justified by a handful of paperwork errors[.]"); *id.* ¶ 80 ("Defendants Dettelbach and Garland instituted a new Enforcement Policy that contradicts the Act."). But, as previously explained, Plaintiff has not alleged that ATF revoked his license for a non-willful violation of the Act, has not plausibly alleged that ATF adopted a policy of revoking license for non-willful violations, and, importantly, has not plausibly alleged that ATF will, or even might, revoke his license at all, much less for non-willful violations of the Act.

Relatedly, Plaintiff has *only* alleged that ATF's policy is unlawful because it reads the willfulness requirement out of the Act. *See generally* Compl. Plaintiff has not alleged any other basis for the Court to find ATF's policy or actions unconstitutional. For instance, Plaintiff has not alleged that ATF inspections violate the Constitution, the Act itself violates the Constitution, or ATF lacks authority to revoke licenses for willful violations. Therefore, Plaintiff's constitutional and equitable claims rise and fall with the same factual allegations as his APA claim, and the factual deficiencies underlying his APA claim also prevent him from stating a claim to relief on his second and third claims.

Additionally, although Plaintiff need not invoke the *Larson* exception to bring a constitutional challenge, this doctrine has no application here. The *Larson* exception permits plaintiffs to bring *ultra vires* claims for equitable relief where a federal officer acts without any authority or without any colorable basis for the exercise of authority. *See Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689 (1949); *Danos v. Jones*, 652 F.3d 577, 583 (5th Cir. 2011). Here, there is no doubt that DOJ, ATF, and Defendants Garland and Dettelbach were acting pursuant to statutory authority. *See* 18 U.S.C. § 923(a)&(e);28 C.F.R. § 0.130(a). Thus, this argument is just another is an inapplicable distraction.

Finally, ATF's actual policy of recommending revocation, in the absence of extraordinary circumstances, where an FFL has willfully committed one or more of five serious and enumerated violations of the Gun Control Act is consistent with the nation's tradition of firearm regulation. *See Dist. of Columbia v. Heller*, 554 U.S. 570, 626 & n.26 (2008) ("[N]othing in our opinion should be taken

to cast doubt on . . . laws imposing conditions and qualifications on the commercial sale of arms,"

identifying such conditions and qualifications as "presumptively lawful regulatory measures").

## CONCLUSION

For the reasons set forth above, Plaintiffs' Complaint should be dismissed.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

/s/ Taylor N. Pitz
Taylor N. Pitz (CA Bar No. 332080)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Phone: (202) 305-5200
Email: taylor.n.pitz@usdoj.gov

*Counsel for Defendants*

11

CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of February 2023, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system which will send notification of such filing to the

following:

Nate Curtisi
Texas Public Policy Foundation
901 Congress Avenue
Austin, TX 78701

Matthew Robert Miller
Texas Public Policy Foundation
901 Congress Avenue
Austin, TX 78701

Chance D. Weldon
Texas Public Policy Foundation
901 Congress Avenue
Austin, TX 78701

Robert E. Henneke
Texas Public Policy Foundation
901 Congress Avenue
Austin, TX 78701

/s/ Taylor N. Pitz
Taylor N. Pitz