**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| MICHAEL CARGILL and | § | |
| CTC HGC, LLC, | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Civil Action No. 1:22-cv-01063 |
| | § | |
| BUREAU OF ALCOHOL, TOBACCO, | § | *Oral argument requested* |
| FIREARMS AND EXPLOSIVES; ATF | § | |
| DIRECTOR STEVEN DETTELBACH, | § | |
| in his official capacity; ATTORNEY | § | |
| GENERAL MERRICK GARLAND, | § | |
| in his official capacity; UNITED STATES | § | |
| DEPARTMENT OF JUSTICE; and | § | |
| UNITED STATES OF AMERICA, | § | |
| *Defendants.* | § | |

**PLAINTIFF'S SUR REPLY TO DEFENDANTS' REPLY BRIEF
IN SUPPORT OF MOTION TO DISMISS**

Plaintiff[1] files this sur reply in order to address two important points that were

unknown at the time they filed their response to the motion to dismiss. First, Plaintiff

explains below how Defendants have waived their claim of "no final agency action"

by way of the arguments Defendants make in their reply brief. Second, Plaintiff

addresses the differences between the old enforcement policy (ATF-O-5370.1D

(hereinafter "1D," attached as Exhibit B)) and the new enforcement policy (ATF-O-

5370.1E (hereinafter "1E," attached as Exhibit A)), which was published on the

---

[1]    In the Motion to Dismiss, Defendants refer to both plaintiffs in the singular
because Michael Cargill owns CTC HGC, LLC. For simplicity, this sur reply will do
the same.

internet by a third party shortly after Plaintiff filed his response.[2] A simple textual comparison of 1D and 1E confirms that Defendants have radically altered their enforcement of the Gun Control Act—exactly as Plaintiffs allege in the complaint—thereby giving rise to Plaintiff's injury in this case.

Plaintiff's Complaint alleges that Defendants upended decades of ATF's education/compliance enforcement practices when they announced a new "zero tolerance" enforcement policy for Federal Firearms License-holders in June 2021. ECF No. 1, hereafter the "Complaint," ¶ 34. That new enforcement policy was communicated to the ATF field offices in a July 2021 Memorandum. Complaint ¶ 34, Complaint Ex. B. The Memo stated the new enforcement policy would be formalized in a new Enforcement Order. Complaint ¶ 36. (That order is 1E, the contents of which are now available publicly on the internet.) The Complaint alleges that the new enforcement policy is to revoke FFLs for inadvertent errors, which effectively removes the "willful" requirement of the Gun Control Act. Complaint ¶¶ 40-41. And the Complaint alleges that the new policy is inconsistent with the Gun Control Act and

---

[2]      Undersigned counsel became aware of the publication of the documents after seeing a tweet from Gun Owners of America. *See* Gun Owners of America (@GunOwners), *Twitter* (Feb. 18, 2023, 11:57 AM), https://twitter.com/GunOwners/status/1627004441869049863?s=20. Further research led to a scribd.com webpage that appears to be managed by a journalist. The new Enforcement Order—ATF-O-5370.1E—is dated "01/28/2022," but it was posted on February 9, 2023. *See* Houston Keene, 2022 ATF O.5370.1E Federal Firearms Administrative Action Policy Procedures, *Scribd.com* (Feb. 9, 2023), https://www.scribd.com/document/624836022/2022-ATF-O-5370-1E-Federal-Firearms-Administrative-Action-Policy-Procedures?secret_password=bV1r17UtFbF52WMUpuoW.

violates Plaintiff's (and his customers') Second Amendment rights. Complaint ¶¶ 59-87.

Defendants claim that none of this is true, that Plaintiff has imagined an increased regulatory burden, that Plaintiff's allegations are not well-pleaded, and that the Enforcement Policy that ATF formalized in 1E should not even be considered by the Court. ECF No. 16, hereafter the "Reply," at 5, 8-9. In their view, the new Enforcement Policy—1E—did not warrant attachment (even in a redacted form) because they assert it is privileged and the Court should only review it *in camera* and—extraordinarily—*ex parte* if the Court requested to do so. Since Plaintiff filed his response, however, the new Enforcement Policy has been published on the internet by a third party. Plaintiffs therefore address the differences between 1D and 1E below. First, however, Plaintiffs address the important fact that Defendants have, through their reply, abandoned their claim that 1E does not constitute a final agency action.

## I.    In the reply, Defendants abandon their final agency action argument.

The changes from 1D to 1E show that, contrary to what Defendants claim in their Reply, Plaintiff's regulatory burden has significantly increased, giving him standing and showing final agency action. *See* Reply at 3 ("Most obviously, ATF has not increased Plaintiff's regulatory burden."). Plaintiff went from operating his store in a compliance/education enforcement regime to a zero tolerance policy. Further, 1E binds the agency—revocation is the "assumed action" for certain violations and exceptions will only be made in extraordinary circumstances. Exhibit A at 3.

Discretion is so limited that 1E even explains an appeals process for showing extraordinary circumstances. Exhibit A at 7, 9, 11. This makes it a final agency action. *See Texas v. United States*, 787 F.3d 733 (5th Cir. 2015) (substantive rules are those that have a "binding effect on agency discretion or severely restricts it"); *Texas v. EEOC*, 933 F.3d 433, 441 (5th Cir. 2019) (substantive rules are final agency action).

In their Reply, Defendants essentially concede that the documents cited in Plaintiff's complaint constitute final agency action. *See* Reply at 2 ("The question is not whether these documents constitute 'final agency action': it is whether the thing (imagined or real) that Plaintiff challenges is a final agency action."). It even avers that the Court "need not consider whether any of the government actions identified by Plaintiff are final agency action." *Id.* at 3.

But of course the Court must consider whether any of Defendants' actions constitute final agency action, *see* 5 U.S.C. § 704, and their actions do here. In determining finality, the Court takes a "pragmatic approach." *Texas v. EEOC*, 933 F.3d 433, 441 (5th Cir. 2019). It does not matter how an agency describes its own action, what matters is if the "agency intends to bind itself to a particular legal position." *Id.* (citing *Syncor Int'l Corp. v. Shalala*, 127 F.3d 90, 94 (D.C. Cir. 1997). One way to determine agency intent is to examine whether the agency action is "applied by the agency in a way that indicates it is binding." *Id.* That is the case here, where 1E describes a rigid "zero tolerance" policy. Exhibit A at 3.

Further, an action is final if it marks the consummation of the agency's decision making process and legal consequences flow from it. *Bennett v. Spear*, 520

U.S. 154, 178 (1997). 1E became effective January 28, 2022, and will remain in effect until it is up for recertification on January 28, 2027. Exhibit A at 1. It replaced 1D, which went into effect on October 2, 2019, and remained in effect until 1E superseded it. Exhibit B at 1; Exhibit A at 1. There is nothing interim or uncertain about it. 1E is now the enforcement policy that governs all FFL-holders and Plaintiff is injured by its unlawful application of the Gun Control Act. *See Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258, 264 (5th Cir. 2015).

## II.    A comparison of 1D and 1E confirms that Defendants have switched from an Education/Compliance regime to a Zero Tolerance regime.

The change from 1D to 1E represents the culmination of months of efforts that began by President Biden publishing on June 23, 2021, that "the Justice Department is announcing a new policy to underscore *zero tolerance* for willful violations of the law by federally licensed firearms dealers." Complaint ¶ 34 (citing The White House, Fact Sheet: Biden-Harris Administration Announces Comprehensive Strategy to Prevent     Gun     Violence     and     Ensure     Public     Safety,     available at:https://www.whitehouse.gov/briefing-room/statements-releases/2021/06/23/fact-sheet-biden-harris-administration-announces-comprehensive-strategy-to-prevent-and-respond-to-gun-crime-andensure-public-safety/     (June     23,     2021)).     That announcement led to the July 14, 2021, Memorandum which Plaintiff discussed in his complaint and response to the motion to dismiss. Complaint ¶ 34, Ex. B; Response at 4, 6. And that memo was further refined into the new 1E, which cements Defendants' new Zero Tolerance regime against federal firearms licensees.

**A.     1E describes a "zero tolerance" regime where revocation is the "assumed" course of action.**

1E contains a new section on page three that emphasizes the new "zero tolerance" approach and makes clear that "revocation is the assumed action, unless extraordinary circumstances exist," when one of five particular violations are cited: (1) transferring a firearm to a prohibited person, (2) failing to run a required background check, (3) failing to respond to an ATF trace request within 24 hours, (4) falsifying records, and (5) refusing ATF entry and inspection during hours of operation. Exhibit A at 7.

Per the express language of 1E, these violations *will* result in revocation absent "extraordinary circumstances." And yet, there are common ways that a licensee can violate them that are not willful. For instance, a simple mistake. Plaintiffs have alleged and intend to show through discovery that Defendants are now revoking federal firearms licenses over simple mistakes and paperwork errors. These do not meet the statutory requirement of "willful," and yet Defendants are revoking licenses anyway because the circumstances are, apparently, not "extraordinary."

1E does not explain what constitutes "extraordinary circumstances." When one of these violations are cited,[3] the inspection must be reviewed by the Deputy Assistant Director of Field Operations (Industry Operations)—known in the industry and in 1E as "DAD (IO)." Exhibit A at 7. The DAD (IO) is located at ATF headquarters in Washington, D.C. If one of the relevant violations is cited and the inspection yields

---

[3] To emphasize, 1E requires "all inspections with instances of" the five relevant violations to go to DAD (IO), where revocation is the assumed outcome. It does not say that these must be *willful* violations. Every inspection where violations are found results in a "Report of Violations," and a Report of Violations "does not require a determination of willfulness." Exhibit A at 3. Thus, the plain language of 1E means that the DAD (IO) is reviewing inspections where non-willful violations are found with the assumed outcome being revocation.

a recommendation of anything less than revocation, the inspector must "thoroughly explain[]" the extraordinary circumstances. Exhibit A at 9. The DAD (IO) must then approve. *Id.* at 9, 11. 1E repeatedly notes that a single infraction does not constitute extraordinary circumstances. *Id.* at 7, 9, 11. It also deleted a portion of 1D that read, "A single, or even a few, inadvertent errors in failing to complete forms may not amount to 'willful' failures, even when the FFL knew of the legal requirement to complete the forms." 1D at 6.

**B.   1E turns the word "willful" into a meaningless talisman.**

Defendants' claim that nothing has changed hinges on the fact that 1E still references "willful" violations of the Gun Control Act, as required by the statute. However, the operation of 1E in practice reveals that "willful" remains as nothing more than a meaningless talisman in what is now a *de facto* "zero tolerance" world.

**1.   1D used a commonsense definition of "willful."**

Prior to the enactment of 1E, Defendants employed a relatively commonsense definition of "willful." In 1D, the revocation section begins by explaining that ATF "must prove that the license *knew its legal obligations under the GCA*." 1D at 6 (emphasis added). It further notes that repeated violations are not "per se . . . willful." *Id.* It was only once "errors continue or even increase after repeated warnings and explanations of the severity of the failures" that "one may infer as a matter of law that the licensee simply does not care about the legal requirements." *Id.* 1D also recognized that there may be instances where revocation may be appropriate when a violation was obviously willful:

> such as an intentional straw sale or knowingly transferring to a prohibited person, refusing ATF right of entry and inspections during hours of operation at the licensed premises, discontinuing use of GCA required records,

knowingly entering false information or intentionally making false statements involving required records under the GCA.

Enforcement Policy at 6.

1D also three ways to establish willfulness: (1) "a history of similar, repeat violations" with proof that the inspector discussed them and documentation of ATF's "other efforts . . . to inform the FFL about its legal responsibilities"; (2) using "inspection reports to establish willfulness even if the inspection found no violations," such as acknowledging federal firearms regulations; and (3) "statements or admissions communicated by the FFL or its employee(s), as well as actions by the FFL or its employee(s) during an inspection that hindered or obstructed the inspection, or other evidence, can also establish willfulness." In other words, 1D required ATF to show a licensee had some sort of active mental state of intentionally violating or recklessly disregarding its obligations under the GCA.

### C.   1E completely changes what constitutes a "willful" violation, effectively writing it out of the statute.

1E eliminates 1D's safeguards by completely revamping how the ATF will find "willful" violations. Both policies note that "willfulness means a purposeful disregard of, a plain indifference to, or reckless disregard of a known legal obligation." 1D at 2; 1E at 2. The substance of 1E, however, no longer gives sufficient meaning to the willfulness requirement.

To start, it deletes the requirement that ATF prove the licensee knew its legal obligations under the GCA. Second, it lists violations that "inherently demonstrate willfulness" where initial violations will result in a revocation. 1E at 6. As discussed above, the listed violations: (1) transferring a firearm to a prohibited person, (2) failing to run a required background check, (3) failing to respond to an ATF trace

request within 24 hours, (4) falsifying records, and (5) refusing ATF entry and inspection during hours of operation. Exhibit A at 7.

The problem with a policy that treats these violations as "inherently" demonstrating willfulness is that *most of these violations do no such thing*. A licensee can accidentally (or even negligently) transfer a firearm to a prohibited person, can accidentally (or negligently) fail to run a background check, can accidentally (or negligently) make a false statement on a form, can accidentally (or negligently) fail to respond to a tracing request, and can accidentally (or negligently) allow a straw sale of a firearm to occur. It is easy to imagine such situations given the regulatory burden of a licensee that transfers a substantial amount of firearms. For instance, a licensee could mistype a name in the NICS system, could misread a date on a background check, could miss an email, fax, or call requesting a trace, and could not realize a customer was executing a straw purchase. None of those constitute the high bar of a "willful" violation. Plaintiff alleges—and will prove through discovery—that Defendants are now revoking licenses over mistakes and paperwork violations that do not satisfy the statutory requirement of "willfulness."

1E also makes changes to how the ATF can establish willfulness by changing one of the previous criteria and adding three more. Instead of saying that willfulness can be demonstrated by "Statements of admissions communicated by the FFL or its employee(s) during an inspection that hindered or obstructed the inspection," the new policy says that willfulness can be demonstrated by statements or admissions "that demonstrate knowledge of regulations and concurrence with the IOI's findings." Thus, willfulness is no longer a matter of hindering an investigation. It is now a matter of simply "demonsrat[ing] knowledge" of the relevant regulations and

agreeing with the IOI's findings. It is hard to understand how simple knowledge of a regulation is evidence of willfully violating it.

But 1E goes much further by adding three additional states of willfulness that are nowhere to be found in 1D. These are:

* Showing that "[p]ublications and information [have been] provided to the FFL which explain the FFL's legal responsibilities[,]"
* "Demonstrat[ing] that the FFL has complied with the specific regulation on other occasions[,]" and,
* "Demonstrat[ing] that the FFL has substantial experience as an FFL."

*Compare* 1D at 6 to 1E at 6.

Thus, under the new policy, simple knowledge of the law, or experience as an FFL-holder, are *de facto* evidence of willfulness. The change to the third criterion eschewed purposeful actions by the licensee—hindering or obstructing the inspection—and replaced it with "knowledge of regulations." But knowledge of regulations does not by itself equate to willful violations. *Fairmont Cash Mgmt., LLC v. James*, 858 F.3d 356, 362 (5th Cir. 2017) (A willful violation is when a licensee "knew of his legal obligation *and purposely disregarded or was plainly indifferent to the record-keeping requirements.*" (emphasis added)).

Further, the new criteria do not inherently show a purposeful disregard, reckless disregard, or plain indifference of the GCA obligations. The fourth criterion—publications and information provided to the licensee—puts licensees on notice to comply with every aspect of the GCA without regard to his or her mental state. Such a standard eviscerates the willful requirement. The fifth criterion—past compliance—does the same. Under this criterion, a licensee could correctly run a background check on a purchaser, but accidentally misread a background check date on a different purchaser and the ATF would find the violation to be willful. The sixth

criterion—experience as a licensee— also does the same. Even decades of experience does not prevent a licensee from making inadvertent, honest mistakes when running background checks, filling out Form 4473s, failing to catch straw purchases, or accidentally transferring a gun to a prohibited person.

In practice, 1E's talismanic invocation of the "willfulness" requirement does not negate that the effect of the policy is to make it meaningless. The Court should deny Defendants' Motion to Dismiss and allow Plaintiff to develop his case.

## III.   The Complaint gives adequate notice to defendants of Plaintiff's claims and their grounds.

Defendants allege that "Plaintiff's factual allegations are not well-pleaded. Reply at 7. But Federal Rule of Civil Procedure 8(a)(2) merely requires a "short and plain" statement that shows Plaintiff is entitled to relief. The purpose is to "give defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 698-99 (2009); *Sims v. City of Madisonville*, 894 F.3d 632, 643 (5th Cir. 2018). Plaintiff easily clears that bar, but Defendants continue to argue that Plaintiff's allegations are insufficient. Reply at 7-11.

In addition to the well-documented enforcement changes and congressional inquiries noted in the Response, during Defendant Dettelbach's confirmation hearing, he responded to a question about a hypothetical "willful violation" by explaining that "'willful' implies something more than an inadvertent error. . . . In general, in the law, the term 'willful' implies a high level of intent." *Nomination Hearing: Hearing Before the Committee on the Judiciary*, 117th Cong. (May 25, 2022) (statement of Hon. Steven M. Dettelbach) (available at 2:12:54-2:13:10: https://www.judiciary.senate.gov/meetings/05/25/2022/nominations). This statement

is remarkable for a couple reasons. First, it shows that Defendants are aware of what this lawsuit is about and have been for some time. Second, it acknowledges that the Gun Control Act's use of "willful" constitutes a very high bar for revocation. Defendants, nevertheless, continue to argue that Plaintiff's allegations do not meet the pleading requirements of Rule 8.

Such an argument cannot withstand scrutiny. Unless Defendants make a habit of ignoring congressional inquiries and industry press, they are fully on notice of the claims in this lawsuit and their factual grounds. Plaintiff has pleaded that their new enforcement regime violates the Gun Control Act by revoking FFLs for inadvertent paperwork errors. He also pleaded that the new Enforcement Policy violates the Second Amendment by upending the Nation's historical tradition of firearm regulation. He is entitled to prove up his case.

## CONCLUSION

Defendants cannot show that the Court does not have jurisdiction nor that Plaintiff has inadequately pleaded his allegations in the Complaint. Their Motion should be denied.

Respectfully submitted,

*/s/Matthew Miller*
ROBERT HENNEKE
Texas Bar No. 24046058
rhenneke@texaspolicy.com
CHANCE WELDON
Texas Bar No. 24076767
cweldon@texaspolicy.com
MATTHEW MILLER
Texas Bar No. 24046444
mmiller@texaspolicy.com
NATE CURTISI
Arizona Bar No. 033342
ncurtisi@texaspolicy.com

12

TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701
Telephone:   (512) 472-2700
Facsimile:   (512) 472-2728

*/s/ Nicholas R. Barry*
Nicholas R. Barry*
TN Bar. No. 031963
nicholas.barry@AFLegal.org
AMERICA FIRST LEGAL
300 Independence Ave., SE
Washington, DC 20003
Telephone:   (202) 964-3721
***Admitted pro hac vice**

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on February 24, 2023, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court for the Western District of Texas by using the CM/ECF system, which will serve a copy of same on all counsel of record.

*/s/ Matthew Miller*
MATTHEW MILLER

# EXHIBIT   A

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

**Order**

ATF O 5370.1E

SUBJECT:   FEDERAL FIREARMS ADMINISTRATIVE
ACTION POLICY AND PROCEDURES

DATE:   01/28/2022
OPI RECERTIFICATION
DATE: 01/28/2027

OPI: 700000

TO:   All Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Industry Operations Offices

1.   PURPOSE. This order provides fair and consistent guidelines for administrative remedies for violations disclosed relative to inspections of Federal firearm licensees (FFLs).

2.   CANCELLATION. This order cancels ATF O 5370.1D, Federal Firearms Administrative Action Policy and Procedures, dated 10/02/2019.

3.   AUTHORITIES.

    a.   Title 28 U.S.C. § 599A.

    b.   Title 28, CFR, Sections 0.130 and 0.131.

4.   DISCUSSION. This order identifies the minimum guidelines for administrative action but does not address every potential scenario or violation. Each Field Division's Director of Industry Operations (DIO) should take the appropriate actions to ensure FFL compliance and the protection of the public through proper application of this order. While it is desirable to have definitive guidelines in this area, every inspection is unique and requires individual analysis.

    a.   Administrative action is defined as a warning letter, warning conference, imposition of civil fine, and/or suspension of a federal firearms license, including a recommendation of denial of an original or renewal application, and alternate action to revocation. The issuance of ATF F 5030.5, Report of Violations, is not an administrative action but rather a documentation of Gun Control Act violations disclosed during an inspection.

    b.   This policy is for internal guidance only and is law enforcement sensitive. It is not intended—and should not be construed—to create any right or benefit, substantive or procedural, enforceable at law by a party against the United States and its agencies, officers, or employees.

5.   BACKGROUND. This order sets forth the general policy guidelines for administrative action recommendations for FFLs.

    a.   This is a national policy for determining administrative actions to promote consistent and equitable resolutions of violations of the Gun Control Act of 1968 (GCA), 18 U.S.C. Chapter 44. The field should pursue all administrative actions in relation to the cited violations and their circumstances. The nature of the violations, their impact on public safety, and ATF's ability to reduce violent crime are significant considerations in determining the appropriate administrative action. ATF may also consider aggravating and mitigating factors. This order will allow for the most efficient use of ATF resources while maintaining the goal of compliance throughout the industry.

b. ATF inspects FFLs to ensure compliance with Federal firearms laws, educate them on their responsibilities and verify they are complying with the provisions of the GCA and its implementing regulations. Compliance with the GCA by the firearms industry is an essential part of combatting crime gun violence and enhancing public safety as outlined in ATF's Strategic Plan.

c. Pursuant to 18 U.S.C. § 923(e), ATF may revoke a federal firearms license for willful violations of the GCA and its implementing regulations, including all of the violations discussed in this order and any other violation of the GCA. The term willful means a purposeful disregard of, or a plain indifference to, or reckless disregard of a known legal obligation. ATF may also revoke or suspend a license or impose a civil fine for certain violations of the Brady Handgun Violence Protection Act and the Child Safety Lock Act of 2005. See 18 U.S.C. §§ 922(t)(5) and 924(p).

6. REFERENCES.

a. ATF O 1100.168C, Delegation Order—Delegation of Authorities within the Bureau of Alcohol, Tobacco, Firearms and Explosives, dated 11/5/18.

b. ATF O 3200.1B, Monitored Case Program, dated 10/20/21.

c. ATF O 5000.19A, Industry Operations Manual, dated 4/4/18.

d. Title 27 CFR Part 478.

e. Title 18 U.S.C. § 922.

f. Title 18 U.S.C. § 923.

g. Title 18 U.S.C. § 924.

7. POLICY.

a. Unified Administrative Action Policy and Procedures.

(1) This order establishes a unified plan of action for resolution of violations through administrative action. The plan groups types of violations into categories for which specific administrative actions are recommended.

(2) This national policy will assist Special Agents in Charge (SACs), DIOs, Area Supervisors (AS), and Industry Operations Investigators (IOIs) in making appropriate recommendations.

(3) Each inspection has unique and sometimes complex circumstances. Therefore, even in cases where violations appear willful, the field should consider the following questions when recommending administrative action:

(a) Is the FFL willing/able to achieve and maintain voluntary compliance?

(b) Will the continued operation of the FFL pose a threat to public safety or contribute to violent crime and/or other criminal activities?

(c) Is the FFL taking responsibility for violations and willing to work with ATF to correct them?

(d) Is the FFL's failure to properly complete and maintain records directly impacting the traceability of firearms?

ATF O 5370.1E
01/28/2022

    (e)    Do the violations have a nexus to a person subject to the Federal firearms disabilities contained in either 18 U.S.C. §§ 922(g) or 922(n) (hereinafter "prohibited person")?

(4)    ATF has zero tolerance for willful violations that greatly affect public safety and ATF's ability to trace firearms recovered in violent crimes. Therefore, revocation is the assumed action, unless extraordinary circumstances exist, when violations are cited that include:

    (a)    Transfer of a firearm to a prohibited person knowing or having reasonable cause to believe that the transferee is a prohibited person.

    (b)    Failure to: 1) contact the National Instant Criminal Background Check System (NICS) (or equivalent State Point of Contact (POC)) for a background check prior to transfer of a firearm; 2) obtain a qualifying alternative permit in lieu of a background check; or 3) wait 3 business days after contacting NICS or the appropriate POC where the system has not notified the FFL that the transfer may proceed. This includes:

        (1)    Return of consignment firearms,

        (2)    Pawn redemption of firearms,

        (3)    Acceptance of an invalid alternate permit or nonqualifying alternative permit in lieu of NICS,

        (4)    Transfer of a firearm more than 30 days after an initial NICS check without conducting a new NICS check,

        (5)    Transfer of a firearm prior to receiving a final NICS or applicable State POC response where three days have not elapsed since the FFL contacted the system,

    (c)    Failure to respond to a firearm trace request within 24 hours after receipt of request.

    (d)    Falsification of records required under the GCA or making a false or fictitious written statement in the FFL's required records or in applying for a firearms license. Withholding or misrepresenting material information in applying for a license.

    (e)    Refusing ATF right of entry and inspection during hours of operation at the licensed premises.

b.    <u>Report of Violations</u>. The field will issue a Report of Violations to the FFL for all violations identified during the inspection. This action does not require a determination of willfulness.

c.    <u>Warning Letter</u>. The field may issue a warning letter (WL) when violations of 27 CFR Part 478 merit a formal documented action on the part of ATF beyond the Report of Violations. The AS may decide that a WL is not necessary based on the nature and number of violations, improvement in compliance with firearms laws and regulations, FFL's compliance history, time elapsed since previous inspection and other relevant factors. Sending a WL to an FFL does not require a determination of willfulness. Violations that generally merit a WL as the minimum administrative action include, but are not limited to, the following:

ATF O 5370.1E
01/28/2022

(1) Failure to timely and/or correctly maintain records of receipt, manufacture, importation, or other acquisition on 5 percent or more of the FFL's total acquisitions during the inspection period, with a minimum of 10 instances.

(2) Failure to timely and/or correctly maintain records of sales or other dispositions on 5 percent or more of the FFL's total dispositions during the inspection period, with a minimum of 10 instances.

(3) Failure by the FFL to obtain complete and accurate information for any item(s) on Forms 4473, question 21, or failure to ensure the buyer signs and dates the Form 4473 (to include failing to have the buyer recertify their answers if the transfer takes place on a different date than the original signature) on 5 percent or more of the Forms 4473 examined, except when any purchaser is prohibited.

(4) Failure to record valid and complete transferee identification on 10 percent or more of the Forms 4473 examined.

(5) Failure to record any transferee identification on 10 percent or more of the Forms 4473 examined.

(6) Failure to file ATF F 3310.4, Report of Multiple Sale or Other Disposition of Pistols and Revolvers or ATF F 3310.12, Report of Multiple Sale or Other Disposition of Certain Rifles, (Southwest Border states only) when legally required and with a minimum of five instances.

(7) Missing firearms after inventory reconciliation (e.g., no records of disposition, required or otherwise).

(8) Failure to retain required GCA records for transferred firearms for period of time specified by regulation.

(9) Transfer of a rifle/shotgun to a resident of another State that violates State law.

(10) Failure to obtain a completed Form 4473 and failure to conduct a NICS check or obtain alternative permit for:

   (a) The transfer of a firearm to a law enforcement officer for personal use, if the transferee is not prohibited; or

   (b) The transfer of a firearm out of business inventory to an FFL responsible person (other than a sole proprietor) if the transferee is not prohibited.

(11) FFL fails to notify ATF about a change of control.

(12) FFL is engaged in an activity not authorized by the Federal firearms license (e.g., engaging in manufacturing firearms without a manufacturer's license).

(13) Failure to timely report upon discovery of the theft or loss of a firearm to either ATF or local law enforcement.

(14) Failure to record NICS or Point of Contact background check information on 10 percent or more of Forms 4473 examined, with a minimum of 10 instances.

(15) ATF has previously cited the FFL in a Report of Violations within the previous 5 years and the current inspection reveals repeated similar violation(s) with no significant improvement.

d.   Warning Conference.  A warning conference (WC) lets a DIO or AS assess the FFL's potential to achieve compliance and determine any potential risks to public safety and firearm traceability. It does not require a determination of willfulness.

ATF O 5370.1E
01/28/2022

(1) A WC is generally appropriate when the FFL has previously been the subject of a WL or WC, and the current inspection indicates similar repeat violations. It may also be appropriate to hold a WC for an FFL without a history of previous violations or a WL in certain circumstances. The DIO may decide that a WL or no administrative action is appropriate based on the nature and number of violations, improvement in compliance with firearms laws and regulations, compliance history, time elapsed since any previous administrative action, and other relevant factors.

(2) If the violations involve a corporation, ATF must invite a corporate responsible person to the WC.

(3) During the WC, ATF should provide the FFL with specific instructions to achieve GCA compliance and emphasize the mutual goal of ATF and the industry to safeguard the public.

(4) Examples of violations that generally merit a WC as the minimum administrative action, include but are not limited to the following:

   (a) Transfer of a firearm other than a rifle or shotgun (including a frame or receiver) to an out-of-state resident.

   (b) Failure to mark imported or manufactured firearms appropriately.

   (c) Failure to report theft or loss to both ATF and local law enforcement.

   (d) Conducting business at locations not authorized as an extension of the licensed business premises.

   (e) Failure to obtain a completed Form 4473 and failure to conduct a NICS check or obtain alternative permit for:

      (i) The transfer of a firearm to a law enforcement officer for personal use, if the transferee is not prohibited, and is a repeat violation; or

      (ii) The transfer of a firearm out of business inventory to an FFL responsible person (other than a sole proprietor), if the transferee is not prohibited, and is a repeat violation.

   (f) FFL has previously been the subject of a WL or WC within the previous 5 years and the current inspection reveals repeated similar violation(s) with no significant improvement.

(5) If the FFL does not respond to the WC notification letter and there is evidence the violations are willful, the DIO should proceed with revoking (or denying a renewal application for) the Federal firearms license.

(6) Additionally, the DIO may decide after meeting with the FFL, or after offering an opportunity for compliance, to proceed with revocation (denial) if the DIO believes the public interest is best served by revoking or denying renewal of the Federal firearms license. In any situation in which the DIO seeks revocation or denial of renewal, notification of the proposed course of action must be made through Field Management Staff, FISB (fmsisb@atf.gov).

(7) In instances in which it is determined that the violations were not willful and/or the FFL is likely to come into compliance, the WC shall be the final administrative action.

ATF O 5370.1E
01/28/2022

(8)    The WC may include ATF Counsel and will discuss means to achieve compliance. The AS or DIO may request the FFL submit written proposals designed to achieve GCA compliance.

e.    Revocation Under 18 U.S.C. § 923(e).

(1)    ATF must establish willfulness to proceed with revocation under 18 U.S.C. § 923(e).

(2)    ATF does not have to establish a history of prior violations to demonstrate willfulness. Accordingly, ATF will revoke a federal firearms license, absent extraordinary circumstances on initial violations, if those violations inherently demonstrate willfulness, such as transferring a firearm to a prohibited person; failing to run a background check prior to transferring a firearm to a non-licensee; falsifying records, or making false statements; failing to respond to an ATF tracing request; refusing to permit ATF to conduct an inspection; or allowing a straw sale of a firearm to occur. ATF may also revoke for any other willful first-time violation as it deems appropriate.

(3)    ATF should also consider revocation when an FFL has willful violation(s) of the GCA and when factors are present that have a direct impact on public safety such as:

(a)    A large number of crime gun traces as compared to dispositions,

(b)    Short time to crime traces,

(c)    Traces from violent crimes, or,

(d)    International traces.

(4)    ATF can establish the knowledge element of willfulness in several ways:

(a)    Establish the FFL has a history of similar, repeat violations, and documentation that an IOI discussed them with the FFL. The FFL's compliance history can include other efforts by ATF (including qualification inspections) to inform the FFL about its legal responsibilities.

(b)    Use inspection reports to establish willfulness even if the inspection found no violations (i.e., acknowledgment of Federal firearms regulations).

(c)    Statements or admissions communicated by the FFL or its employee(s), as well as actions by the FFL or its employee(s) during an inspection that demonstrate knowledge of regulations and concurrence with the IOI's findings.

(d)    Publications and information provided to the FFL which explain the FFL's legal responsibilities.

(e)    Demonstrate that the FFL has complied with the specific regulation on other occasions.

(f)    Demonstrate that the FFL has substantial experience as an FFL.

(5)    ATF Field Counsel must evaluate the facts and circumstances surrounding an FFL's alleged violation(s). During Counsel's review, a copy of the Industry Operations Monitored Case Briefing Paper will be submitted to FISB. It can

be later removed from the Monitored Case Program (MCP) if the Field Division decides not to pursue MCP actions or if Counsel determines that the case does not satisfy the elements of the violations. (See 10.d.(3) for Regional Associate Chief Counsel (ACC) concurrence).

(6)     Revocation is an appropriate licensing action under section 923(e) and is appropriate in response to the discovery of the following willful violations which directly impact the public.

The below five items (a)-(e) merit revocation of the license if committed willfully unless extraordinary circumstances exist. In extraordinary circumstances, an alternative recommendation may be made. All inspections with instances of (a)-(e) violations below, must come to DAD (IO) for approval through the MCP. NOTE: The fact that there is only a single violation of subsections (a)-(e) below does not, in and of itself, constitute extraordinary circumstances and will not be an acceptable reason for an alternate recommendation.

(a)     Transfer of a firearm to a prohibited person while knowing or having reasonable cause to believe that the transferee is a prohibited person.

(b)     Failure to conduct a NICS check or obtain alternative permit or fail to retrieve a NICS (or equivalent State POC background check system) response prior to the transfer of a firearm. This includes:

    (1)     Return of consignment firearms,

    (2)     Pawn redemption of firearms,

    (3)     Acceptance of an invalid alternate permit or nonqualifying alternative permit in lieu of NICS,

    (4)     Transfer of a firearm after an initial NICS check 30-day expiration, without conducting a new NICS check,

    (5)     Transfer of a firearm prior to receiving a final NICS response or applicable State POC background response where three days have not elapsed since the FFL contacted the system,

(c)     Failure to respond to a firearm trace request within 24 hours after receipt of the request. (Contact National Tracing Center to obtain necessary information to fully evaluate potential failure of FFL to respond to a trace request).

(d)     Falsification of records required under the GCA or making a false or fictitious written statement in the FFL's required records or in applying for a firearms license. Withholding or misrepresenting material information in applying for a license.

(e)     Refuse ATF right of entry and inspection during hours of operation at the licensed premises.

Revocation is also an appropriate licensing action in response to the discovery of the below willful violations:

(f)     Allow an employee who is a prohibited person to have actual or constructive possession of a firearm while knowing or having reasonable cause to believe that the employee is a prohibited person.

ATF O 5370.1E
01/28/2022

(g)    The FFL transfers a firearm knowing or having reasonable cause to believe that the transferee of record is not the actual buyer (i.e. a straw purchase).

(h)    Failure by the FFL to create a required GCA record, or discontinued use of required GCA records.

(i)    Failure to execute an ATF Form 4473.

(j)    Failure to account for acquired firearms which records indicate were in inventory within the previous 5 years after reconciliation for which disposition could not be accounted for in required GCA records (e.g. acquisition and disposition record, Form 4473) and is a repeat violation of increased frequency.

(k)    Discovery of a firearm with an obliterated serial number in FFL's inventory.

(l)    Transfer of a firearm to an underage person.

(m)    The FFL has been the subject of a WC in lieu of Revocation within the previous 5 years and the current inspection reveals repeated similar violations(s) with no significant improvement.

(n)    Any other GCA violation not specifically addressed in this order where revocation may be appropriate.

f.    <u>Fines/Suspensions/Revocation under 18 U.S.C. §§ 922(t) or 922(z).</u>

(1)    ATF may revoke, suspend, and/or impose a civil fine for certain knowing violations of the Brady Handgun Violence Prevention Act and the Child Safety Lock Act of 2005. See 18 U.S.C. §§ 922(t), 922(z) and 924(p). In each situation, the proposed sanction (revocation, suspension, and/or fine) must be specifically spelled out in the Notice to Revoke or Suspend License and/or Impose a Civil Fine. The FFL has the same rights to review as in other GCA administrative hearings.

(2)    ATF can revoke, suspend, and/or fine an FFL pursuant to 18 U.S.C. § 922(t)(5). This allows for revocation, suspension for not more than 6 months, and/or a civil fine for the transfer of a firearm and failure to conduct a NICS check required by 18 U.S.C. § 922(t)(1), where NICS was operating, and the person would have been denied had a NICS check been conducted. The transfer of the firearm and the failure to conduct the NICS check must be done knowingly.

(3)    ATF can revoke, or suspend, and/or fine an FFL pursuant to 18 U.S.C. § 924(p) for failure to comply with 18 U.S.C. § 922(z)(1) (providing a secure gun storage or safety device with each transfer of a handgun). With certain exceptions, § 924(p) allows for the revocation, suspension for not more than 6 months, and/or a civil fine for the knowing transfer of a handgun to a non-licensee without a secure gun storage or safety device.

(4)    A Notice to Revoke or Suspend License and/or Impose a Civil Fine will be issued when violations of 18 U.S.C. 922(t)(1), 922(z) and/or 924(p) are cited. Except in situations approved by the DAD (IO), all three options on the form will be selected and the maximum fine and suspension will be proposed. All settlements prior to or after a hearing, must be approved by the DAD (IO) and Deputy Chief Counsel prior to finalizing any agreement.

(5)     Notification of Civil Fine imposed must be made to Federal Firearms Licensing Center and Financial Management Division via memo.

(6)     ATF Field Counsel must evaluate the facts and circumstances surrounding an FFL's alleged violation(s). During Counsel's review, a copy of the Industry Operations Monitored Case Risk Assessment Briefing Paper will be submitted to FISB. It can be later removed from the MCP if the Field Division decides not to pursue revocation, denial, suspension, and/or fine, or if Counsel determines the case does not satisfy the elements of the violations. (See paragraph 10.d.(3) for ACC concurrence.)

g.     Denials under 18 U.S.C. § 923(d).

(1)     An application for a Federal firearms license may only be denied if the applicant does not meet one or more of the licensing criteria set forth in 18 U.S.C. § 923(d). Generally, ATF will deny an application for renewal of a Federal firearms license based on willful violations of the GCA and the same criteria and procedures outlined for revocation under section 923(e) in section 7 above.

(2)     ATF will deny applications in which an applicant: failed to provide material information required on the application or the applicant is less than 21 years old, a prohibited person, made a material false statement on the application, or is a prior willful violator of the GCA. These situations may include "application denial," "hidden ownerships," or "straw applications," which usually involve situations where past willful violators or prohibited persons are responsible parties but are not listed on the application. In certain situations, a referral to ATF Criminal Enforcement may be appropriate.

(3)     ATF Field Counsel must evaluate the facts and circumstances surrounding an applicant's alleged violation(s). During Counsel's review, a copy of the Industry Operations Monitored Case Risk Assessment Briefing Paper will be submitted to FISB. It can be later removed from the MCP if the Field Division decides not to pursue denial. (See 10.d.(3) for Regional ACC concurrence.)

h.     Alternate Actions.

(1)     For inspections that merit consideration of revocation for violations outlined in paragraph 7.e.(6)(a)-(e), extraordinary circumstances must exist before the DIO proposes an alternate recommendation, and those extraordinary circumstances must be thoroughly explained in the DIO's recommendation. NOTE: One instance of a violation outlined in paragraph 7.e.(6)(a)-(e) above does not constitute extraordinary circumstances and will not be an acceptable reason for an alternate recommendation.

(2)     Appropriate alternate recommendations to revocation include an AS led Warning Conference or a DIO led Warning Conference. Who conducts the warning conference will depend on the totality of the circumstances surrounding the inspection results. A warning letter is rarely an acceptable alternate recommendation to revocation.

(3)     For inspections that merit consideration of revocation in which the DIO proposes an alternate recommendation, the inspection is required to be submitted to the MCP for DAD (IO) approval. (ATF O 3200.1B, Monitored Case Program.)

i.     Other Administrative Resolutions.

(1)     Pursuant to 27 CFR 478.72-74, the DIO may afford the FFL/applicant the opportunity to submit facts and arguments for review and consideration and

ATF O 5370.1E
01/28/2022

make offers of settlement or offers of a final resolution involving an agreed upon revocation before or after the issuance of a Notice to Revoke/Deny. Such submissions of settlements/offers are required to occur outside of an administrative hearing and require DAD, (IO) approval. An example of settlement could include a request for a temporary closure period when the FFL institutes remedial measures.

(2)     Following the issuance of the Notice to Revoke/Deny a DIO may consider alternatives to issuing a Final Notice of Denial of Application, Revocation, Suspension, and/or Fine of a Federal firearms license with the concurrence of the DAD (IO). The DIO should consult and work closely with Field Counsel on the negotiation of terms and conditions to which ATF may appropriately agree to settle or resolve. The DAD (IO) must approve the final written settlement document and if the revocation is based on the violations outlined in paragraph 7.e.(6)(a)-(e), get approval from the Director prior to the field proceeding. Settlements, barring extraordinary new circumstances being presented, are not appropriate for cases that involve transferring to a prohibited person, failing to run a background check, falsifying records, or making false statements, failing to respond to an ATF tracing request, and/or refusing to permit ATF to conduct and inspection.

8.     GENERAL GUIDANCE. The Division management team may consider the appropriate administrative actions. The DIO will seek advice of Field Counsel and the ACC (East/Central/West), when seeking Administrative Actions for DAD (IO) approval and the Assistant Director, Field Operations (FO) when considering the appropriate administrative action.

a.     This order does not mandate doing any administrative action in a sequential or consecutive order. For example, a WC may be held or revocation sought after the first inspection if violations impact public safety or obstruct firearms traceability. Conversely, a WL may be issued even if the prior inspection resulted in a WC.

b.     The DIO or AS will conduct WCs.

c.     The DIO will ensure the timely initiation of administrative action. For inspections that are alternates to revocation for items specified in paragraph 7.e.(6)(a)-(e) above, the actions need to occur within 30 days of the notice from the DAD (IO) that the Director has been briefed and concurs with the action. The post-conference letter for cases requiring a WC should be issued no later than 90 days after final DIO review unless there are mitigating circumstances. The AS should issue a WL within 15 days of his or her review.

d.     The area office should submit cases involving potential denials/revocations to the DIO within 30 days of the inspection submission date. The DIO has 120 days, inclusive of Counsel review, upon receipt of the inspection to issue the Notice to Revoke/Deny. Field Counsel will have a maximum of 60 days to review and prepare the Notice in final form for submission to the DIO for review and issuance. The DAD (IO) will be notified by the DIO via FISB if these periods are not met.

e.     Criminal violations and violations that pose a danger to the public should be grounds for revocation, and the field must immediately notify ATF criminal enforcement. This may include situations where firearms are subject to seizure and forfeiture. This order does not prevent division management from pursuing simultaneous regulatory and criminal actions with the concurrence of the U.S. Attorney's Office. There may be instances where the Government resolves the case through a revocation and a criminal plea. If ATF pursues revocation, it will follow procedures, including those required by ATF O 3200.1B, Monitored Case Program.

ATF O 5370.1E
01/28/2022

f.     If the DIO issues a Notice to Revoke/Deny and the FFL requests a hearing and then withdraws the request, or if the FFL does not request a hearing, the DIO will issue a Final Notice of Revocation.

9.   HEADQUARTERS POLICY REVIEW AND ALTERNATE RECOMMENDATIONS.

a.     ATF must handle inspections and investigations with recommendations for administrative actions that meet the criteria of the MCP (e.g., revocations, denials, imposition of civil fine, suspension and/or alternate to revocation/denial etc.) per ATF O 3200.1B, Monitored Case Program.

b.     Alternate recommendations to revocation (see section 7.h) require concurrence of the DAD (IO) before proceeding. Alternate recommendations to revocation for items specified in 7.e.(6)(a)-(e) above, will be briefed to the ATF Director, or their designee, by the DAD (IO) on a monthly basis.  NOTE: One instance of a violation of 7.e.(6)(a)-(e) above does not constitute extraordinary circumstances and will not be an acceptable reason for an alternate recommendation.

10.   FIELD RESPONSIBILITIES.  Responsibilities for field personnel and management are as follows:

a.     Industry Operations Investigator.  The IOI:

(1)     Will conduct the inspection per established ATF guidelines, including use of the approved case management system.  If an IOI uncovers violations, the IOI will obtain and preserve all available evidence and document the violations to show if the violations were willful, including copies of Forms 4473 and Acquisition and Disposition records since only documented violations will be cited in the Notice. The IOI will then make the appropriate recommendation based on the guidelines contained herein and forward the inspection to the AS.

(2)     Must communicate with and notify the AS of violations, findings, and other circumstances impacting public safety upon discovery.

b.     Area Supervisor.  The AS:

(1)     Will review all firearms inspection reports and associated exhibits maintained within the approved case management system to ensure the IOI's recommendation meets established guidelines and evidentiary requirements, they adequately performed all relevant inspection work steps, and they correctly entered all necessary data.

(2)     Must communicate with the DIO and notify the DIO of violations, findings, and other circumstances impacting public safety upon discovery.

(3)     Independently evaluate the IOIs recommendation and insert their recommendation in the approved case management system.  If they disagree with the IOI recommendation, the AS will document the reason(s) within the recommendation section of the case management system.  The AS must submit cases meriting WC, revocation, denial, fine, or suspension to the DIO within 30 days of the IOI submission date.

c.     Director of Industry Operations.  The DIO shall:

(1)     Review all inspections that recommend a WC and/or alternate thereof.  The DIO shall complete a recommendation in the approved case management system and return to the AS within 15 calendar days.

(2)     Review all inspections resulting in a recommendation of denial, revocation, suspension, fine, or alternate to revocation and complete a recommendation in

Page 11

the approved case management system. Additionally, the DIO must provide justification through the Industry Operations Monitored Case Risk Assessment Briefing Paper and submit to FISB.

(3)     Request legal advice from Field Counsel in all potential alternate recommendations to revocation. Request Field Counsel and ACC legal advice for all denials, revocations, suspensions, and fines.

(4)     Advise the SAC of any administrative actions that deal with potential denials, revocations, suspensions, fines, alternates to revocations, and other administrative resolutions.

(5)     Following a hearing requested pursuant to either 27 C.F.R. §§ 478.72 or 478.74, the DIO must conclude whether the Government has met its burden of proof by a preponderance of the evidence that the elements required to issue a Final Notice of Denial of Application, Revocation, Suspension and/or Fine of Firearms License, ATF Form 5300.13. If the DIO believes such elements have not been proven, including the willfulness required to sustain a denial under 18 U.S.C. § 923(d)(1)(C) or revocation under 18 U.S.C. § 923(e), the DIO must fully brief the DAD (IO) as to the basis for this determination.

d.     Counsel.

(1)     At the request of the DIO, Field Counsel will review all inspection reports and exhibits in the approved case management system and provide legal advice in all administrative actions.

(2)     The DIO and counsel should use discretion in determining which violations to allege and only allege willful violations in the Notice to Revoke under 18 U.S.C. § 923(e). As noted above, ATF may also revoke or suspend a license or impose a civil fine for certain violations of 18 U.S.C. §§ 922(t)(5) and 924(p). In certain instances, it may not be in the interest of the Government to cite isolated willful violations where there are adequate willful violations to sustain a revocation.

(3)     The ACC for the applicable Field Division will review and approve all proposed Notices and administrative resolutions for legal soundness, and compliance with this policy prior to final submission to MCP and implementation of these actions.

e.     Special Agent in Charge. The SAC has ultimate division responsibility to ensure that this national policy is properly enforced. To this end, they may establish additional controls in their division.

11.     AVAILABILITY. The forms outlined in this order are available at ATFConnect>Forms and Policy>Forms. The manual outlined in this order is available at ATFConnect>Directorates>Field Operations>Industry Operations>IOI Manual.

12.     RECORDS RETENTION REQUIREMENTS. Documents outlined in this order must be retained in accordance with ATF O 1340.5A, Records Management Program and ATF O 1340.7A, ATF Records Control Schedule.

13.     QUESTIONS. If you have any questions regarding this order, please contact Field Management Staff, 202-648-8400.

GEORGE LAUDER   Digitally signed by GEORGE LAUDER
Date: 2022.01.28 17:22:07 -05'00'
Assistant Director
(Office of Field Operations)

Page 12

# EXHIBIT  B

U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

**Order**

ATF O 5370.1D

SUBJECT:   FEDERAL FIREARMS ADMINISTRATIVE
ACTION POLICY AND PROCEDURES

DATE: 10/02/2019
OPI RECERTIFICATION
DATE: 10/02/2024

OPI: 700000

TO:   All ATF Industry Operations Offices

1.   PURPOSE. This order provides fair and consistent guidelines for administrative remedies for violations disclosed relative to inspections of Federal firearm licensees (FFLs).

2.   CANCELLATION. This order cancels ATF O 5370.1C, Federal Firearms Administrative Action Policy and Procedures, dated February 21, 2017.

3.   AUTHORITIES.

     a.   Title 28 U.S.C. § 599A.

     b.   Title 28, CFR, Sections 0.130 and 0.131.

4.   DISCUSSION. This order identifies the minimum guidelines for administrative action but does not address every potential scenario or violation. Each field division's Director, Industry Operations (DIO) should take the appropriate actions to ensure licensee compliance, protecting the public through proper application of this order. While it is desirable to have definitive guidelines in this area, every inspection is unique.

     a.   Administrative action is defined as a warning letter, warning conference, revocation, imposition of civil fine, and/or suspension of a Federal firearms license, including a recommendation of denial of an original or renewal application, and alternate action to revocation. The issuance of ATF F 5030.5, Report of Violations, is not an administrative action but rather a documentation of inspection findings.

     b.   This policy is for internal guidance only and is law enforcement sensitive. It is not intended—and should not be construed—to create any right or benefit, substantive or procedural, enforceable at law by a party against the United States and its agencies, officers, or employees.

5.   BACKGROUND. This order sets forth the general policy guidelines for administrative action recommendations for FFLs.

     a.   This is a national policy for determining administrative actions to promote consistent and equitable resolutions of violations of the Gun Control Act (GCA). The field should pursue all administrative actions in relation to the cited violations and their circumstances. The nature of the violations and their impact on public safety and the Bureau of Alcohol, Tobacco, Firearms and Explosives' (ATF) ability to reduce violent crime are significant considerations for the appropriate administrative action. ATF may also consider mitigating factors. This order will allow for the most efficient use of ATF resources while maintaining the goal of compliance throughout the industry.

ATF O 5370.1D
10/02/2019

    b.    ATF inspects licensees to ensure compliance with Federal firearms laws by educating licensees on their responsibilities, verifying they are complying with the provisions of the GCA and its implementing regulations, and analyzing operations to detect possible diversion of firearms from legal commerce through regulatory inspections. Compliance with the GCA by the firearms industry is an essential part of addressing nationwide crime control and public safety efforts as outlined in ATF's Strategic Plan.

    c.    Pursuant to 18 U.S.C. 923(e), ATF may only revoke a Federal firearms license for willful violations of the GCA and its implementing regulations. The term willfulness means a purposeful disregard of, a plain indifference to, or reckless disregard of a known legal obligation. ATF may also revoke or suspend a license, or impose a civil fine for certain violations of the Brady Handgun Violence Act and the Child Safety Lock Act of 2005. ATF may revoke for any willful violation of the GCA including all of the violations discussed in this order and any other violation of the GCA.

6.    REFERENCES.

    a.    ATF O 1100.168C, Delegation Order—Delegation of Authorities within the Bureau of Alcohol, Tobacco, Firearms and Explosives, dated 11/5/18.

    b.    ATF O 3200.1A, Monitored Case Program, dated 3/19/15.

    c.    ATF O 5000.19A, Industry Operations Manual, dated 4/4/18.

    d.    Title 27 CFR Part 478.

    e.    Title 18 U.S.C. 922.

    f.    Title 18 U.S.C. 923.

    g.    Title 18 U.S.C 924.

7.    POLICY.

    a.    Unified Administrative Action Policy and Procedures.

        (1)    This order establishes a unified plan of action for resolution of violations through administrative action. The plan groups types of violations into categories for which specific administrative actions are recommended.

        (2)    This national policy will assist Special Agents in Charge (SACs), DIOs, field counsel, Area Supervisors (ASs), and Industry Operations Investigators (IOIs) in making appropriate recommendations.

        (3)    Each inspection has unique and sometimes complex circumstances. Therefore, even in cases where violations appear willful, the field should consider the following questions when recommending administrative action:

            (a)    Is the FFL willing/able to achieve and maintain voluntary compliance?

            (b)    Will the continued operation of the FFL pose a threat to public safety or contribute to violent crime and other criminal activities?

            (c)    Is the FFL taking responsibility for violations and willing to work with ATF to correct them?

            (d)    Is the FFL's failure to properly complete and maintain records directly impacting the traceability of firearms.

ATF O 5370.1D
10/02/2019

      (e)    Do violations have a nexus to persons prohibited from possessing firearms?

b.    <u>Report of Violations</u>.  The field will issue an ATF F 5030.5, Report of Violations, to the FFL for all violations identified during the inspection.  This action does not require a determination of willfulness.

c.    <u>Warning Letter</u>.  The field may issue a warning letter (WL) when violations of 27 CFR, Part 478; require a formal documented action on the part of ATF beyond the Report of Violations.  The AS may decide that a WL is not necessary based on the nature and number of violations, improvement in business operations, record keeping, etc., since the previous inspection, FFL's compliance history, time elapsed since previous inspection and other relevant factors may be considered.  Sending a WL to a FFL does not require a determination of willfulness.  Violations that generally merit a WL as the minimum administrative action include—but are not limited to—the following:

(1)    Failure to timely and/or correctly maintain records of receipt, manufacture, importation or other acquisition on 5 percent or more of the licensee's total acquisitions during the inspection period, with a minimum of 10 instances.

(2)    Failure to timely and/or correctly maintain records of sales or other dispositions on 5 percent or more of the licensee's total dispositions during the inspection period, with a minimum of 10 instances.

(3)    Failure by the licensee to obtain complete and accurate information for any item(s) on Forms 4473, questions 11 and 12, or failure to ensure the buyer signs and dates the Form 4473 (to include failing to have the buyer recertify their answers if the transfer takes place on a different date than the original signature) on 5 percent or more of the Forms 4473 examined except when any purchaser is prohibited - refer to subparagraph 7.e.(5)(a).

(4)    Failure to record valid and complete transferee identification on 10 percent or more of the Forms 4473 examined.

(5)    Failure to record any transferee identification on 10 percent or more of the Forms 4473 examined.

(6)    Failure to file ATF F 3310.4, Report of Multiple Sale or Other Disposition of Pistols and Revolvers or ATF F 3310.12, Report of Multiple Sale or Other Disposition of Certain Rifles, (Southwest Border states only) when legally required and with a minimum of five instances.

(7)    Missing firearms after inventory reconciliation (e.g., no records of disposition, required or otherwise).

(8)    Failure to retain required GCA records for transferred firearms for period of time specified by regulation.

(9)    Transfer of a rifle/shotgun to a resident of another State that violates State law.

(10)    Failure to execute a Form 4473 for:

      (a)    The return of a firearm that was consigned to the licensee;

      (b)    The transfer of a firearm to a law enforcement officer for personal use; or

      (c)    The transfer of a firearm out of the business inventory to an FFL

responsible person (other than a sole-proprietor), if the transferee is not prohibited.

(11)   Failure to conduct a National Instant Criminal Background Check System (NICS) check or obtain alternative permit for:

(a)   The return of a firearm that was consigned to the licensee;

(b)   The transfer of a firearm to a law enforcement officer for personal use; or

(c)   The transfer of a firearm out of business inventory to an FFL responsible person (other than a sole-proprietor), if the transferee is not prohibited.

(12)   Failure to retrieve a NICS (or equivalent State background check system) e-check response prior to the transfer of a firearm, and the transferee is not prohibited.

(13)   FFL transfers a firearm prior to receiving a final NICS response (or applicable State background check system) and 3 business days (or the state waiting period) have not elapsed, and the person is not prohibited.

(14)   FFL fails to notify ATF about a change of control.

(15)   FFL is engaged in an activity not authorized by the Federal firearms license (e.g., engaging in manufacturing firearms without a manufacturer's license).

(16)   Failure to initiate a new NICS check when a transaction is not completed within the 30-day period from the date NICS was initially contacted provided that the person is not prohibited.

(17)   Failure to timely report upon discovery of the theft or loss of a firearm to either ATF or local law enforcement.

(18)   Failure to record NICS or Point of Contact background check information on 10 percent or more of Forms 4473 examined, with a minimum of 10 instances.

(19)   ATF has previously cited the FFL in a Report of Violations within the previous 5 years and the current inspection reveals repeated similar violation(s) with no significant improvement.

d.   Warning Conference.  A warning conference (WC) lets a DIO or AS assess the FFL's potential to achieve compliance and determine any potential risks to public safety and firearm traceability.  It does not require a determination of willfulness.

(1)   It is generally appropriate when the FFL has previously been the subject of a WL or WC, and the current inspection indicates similar repeat violations, though it may be appropriate to hold a WC for an FFL without a history of previous violations or a WL in certain circumstances.  The DIO may decide that a WL or no administrative action is appropriate based on the nature and number of violations, improvement with business operations since the previous inspection, compliance history, time elapsed since any previous administrative action, and other relevant factors.

(2)   If the violations involve a corporation, ATF must invite a corporate responsible person to the WC.  (Ensure a copy of the WC notification letter is sent to the FFL's corporate office.)

(3)     During the WC, ATF should provide the FFL with specific instructions to achieve GCA compliance, and emphasize the mutual goal of ATF and the industry to safeguard the public.

(4)     Examples of violations that generally merit a WC as the minimum administrative action, include but are not limited to the following:

    (a)     Transfer of a firearm (including lower receiver) other than a rifle or shotgun to an out-of-state resident.

    (b)     Failure to mark imported or manufactured firearms appropriately.

    (c)     Failure to execute a Form 4473, exception use WL for:

        (1)     The return of a firearm that was consigned to the licensee;

        (2)     The transfer of a firearm to a law enforcement officer for personal use; or

        (3)     The transfer of a firearm out of business inventory to an FFL responsible person (other than a sole-proprietor), if the transferee is not prohibited. – see paragraph 7.c.(10).

    (d)     Failure to conduct a NICS check or obtain an alternate permit, exception use WL for:

        (1)     The return of a firearm that was consigned to the licensee;

        (2)     The transfer of a firearm to a law enforcement officer for personal use; or

        (3)     The transfer of a firearm out of business inventory to an FFL responsible person (other than a sole-proprietor), if the transferee is not prohibited. – see paragraph 7.c.(11).

    (e)     Failure to report theft or loss to both ATF and local law enforcement.

    (f)     Conducting business at locations not authorized as an extension of the licensed business premises.

    (g)     FFL has previously been the subject of a WL or WC within the previous 5 years and the current inspection reveals repeated similar violation(s) with no significant improvement.

(5)     If the FFL does not respond to the WC notification letter and there is evidence that the violations are willful, the DIO may revoke (or deny a renewal application for) the Federal firearms license.

(6)     Additionally, the DIO may decide after meeting with the FFL, or after offering opportunity for compliance, to proceed with revocation (renewals/denials) if the DIO believes the public interest is best served by revoking or denying renewal of the Federal firearms license, the DIO will proceed accordingly.  In any situation in which the DIO seeks revocation or denial of renewal, notification of the proposed course of action must be made through Field Management Staff, Frontline Investigative Support Branch (FISB) (fmsisb@atf.gov).

ATF O 5370.1D
10/02/2019

(7)    In instances in which it is determined that the violations were not willful and/or the FFL is likely to come into compliance, the WC shall be the final administrative action.

(8)    The WC may include ATF Counsel and will discuss means to achieve compliance, the AS or DIO may request written proposals designed to achieve GCA compliance.

e.    <u>Revocation Under 18 U.S.C. 923(e)</u>.

(1)    It is necessary to establish willfulness— the field division must prove that the licensee knew its legal obligations under the GCA and either purposefully disregarded or demonstrated a plain indifference or a reckless disregard to them—to proceed with revocation under 18 U.S.C. 923(e). Not every repeat violation is per se a willful violation. A single, or even a few, inadvertent errors in failing to complete forms may not amount to "willful" failures, even when the FFL knew of the legal requirement to complete the forms. However, if such errors continue or even increase after repeated warnings and explanations of the severity of the failures, one may infer as a matter of law that the licensee simply does not care about the legal requirements. The failures then show the FFL's plain indifference and therefore become willful.

(2)    ATF does not have to establish a history of prior violations to demonstrate willfulness. Accordingly, ATF may revoke a Federal firearms license under appropriate circumstances based on an initial set of violations, if it meets the elements of willfulness, such as an intentional straw sale or knowingly transferring to a prohibited person, refusing ATF right of entry and inspections during hours of operation at the licensed premises, discontinuing use of GCA required records, knowingly entering false information or intentionally making false statements involving required records under the GCA.

(3)    ATF can establish the knowledge element of willfulness in several ways:

    (a)    Establish the FFL has a history of similar, repeat violations, and the inspection report documents that an IOI discussed them with the FFL. The FFL's compliance history can include other efforts by ATF (including qualification inspections) to inform the FFL about its legal responsibilities.

    (b)    Use inspection reports to establish willfulness even if the inspection found no violations (i.e., acknowledgment of Federal firearms regulations).

    (c)    Statements or admissions communicated by the FFL or its employee(s), as well as actions by the FFL or its employee(s) during an inspection that hindered or obstructed the inspection, or other evidence, can also establish willfulness.

(4)    ATF field counsel must evaluate the facts and circumstances surrounding an FFL's alleged violation(s) to determine willfulness. Simultaneously, a copy of the Industry Operations Monitored Case Briefing Paper will be submitted to FISB. It can be later removed if the field division decides not to pursue Monitored Case Program (MCP) actions. (See 10.e.(3) for Regional Associate Chief Counsel (ACC) concurrence)

(5)    Revocation is an appropriate licensing action under section 923(e) and is strongly recommended in response to the discovery of the following willful violations which

ATF O 5370.1D
10/02/2019

directly impact the public:

(a)  Transfer of a firearm to a prohibited person while knowing or having reasonable cause to believe that the transferee is a prohibited person.

(b)  Allow an employee who is a prohibited person to have actual or constructive possession of a firearm while knowing or having reasonable cause to believe that the employee is a prohibited person.

(c)  Actively engage in a straw purchase transaction (i.e., the licensee knows or has reasonable cause to believe that the transferee of record is not the actual buyer.)

(d)  Falsify records required under the GCA or making a false or fictitious written statement in the FFL's required records or in applying for a firearms license.

(e)  Withhold or misrepresent material information in applying for a license after being provided education and opportunity to correct the misrepresented information.

(f)  Failure to conduct a NICS check or obtain alternative permit or fail to retrieve a NICS (or equivalent State Point of Contact background check system) response prior to the transfer of a firearm and the purchaser is prohibited.

(g)  Transfer of a firearm prior to receiving a final NICS response (or applicable State POC background check) and 3 days have not elapsed since the FFL contacted the system and the purchaser is prohibited.

(h)  Failure to create or discontinue use of required GCA records.

(i)  Failure to account for acquired firearms which records indicate were in inventory within the previous 5 years after reconciliation for which disposition could not be accounted for in required GCA records (e.g. acquisition and disposition record, Form 4473) and is a repeat violation of increased frequency.

(j)  Refused ATF right of entry and inspection during hours of operation at the licensed premise.

(k)  Failure to respond to a firearm trace request within 24 hours and is a repeat violation.

(l)  Discovery of a firearm with an obliterated serial number in FFL's inventory.

(m)  Transfer of a firearm to an underage person.

(n)  The FFL has been the subject of a WC in lieu of Revocation within the previous 5 years and the current inspection reveals repeated similar violations(s) with no significant improvement.

(o)  Any other GCA violation not specifically addressed in this order where revocation may be appropriate.

f.   Fines/Suspensions/Revocation/ under 18 U.S.C. 922(t) or 922(z).

(1)   ATF may revoke, suspend, and/or impose a civil fine for violations of the Brady Handgun Violence Prevention Act and the Child Safety Lock Act of 2005. See 18 U.S.C. §§ 922(t), 922(z) and 924(p). In both situations, the proposed sanction (revocation, suspension, and/or fine) must be specifically spelled out in the Notice to Revoke or Suspend License and/or Impose a Civil Fine. The FFL has the same rights to appeal as in other GCA administrative hearings

(2)   ATF can revoke, suspend, and/or fine an FFL pursuant to 18 U.S.C. § 922(t)(5). This allows for revocation, suspension for not more than 6 months, and/or a civil fine for the transfer of a firearm and failure to conduct a NICS check required by 18 U.S.C. § 922(t)(1), where NICS was available and the person would have been denied had a NICS check been conducted. The transfer of the firearm and the failure to conduct the NICS check must be done knowingly.

(3)   ATF can revoke, suspend, and/or fine an FFL pursuant to 18 U.S.C. § 924(p) for failure to comply with 18 U.S.C. § 922(z)(1) and provide a secure gun storage or a safety device with each transfer of a handgun. With certain exceptions, this allows for the revocation, suspension for not more than 6 months, and/or a civil fine for the transfer of a handgun to a non-licensee unless the transferee is provided with a secure gun storage or safety device.

(4)   Notification of Civil Fine imposed must be made to Federal Firearms Licensing Center (FFLC) and Financial Management Division (FMD) via memo.

(5)   ATF field counsel must evaluate the facts and circumstances surrounding an FFL's alleged violation(s) to determine willfulness. Simultaneously, a copy of the Industry Operations Monitored Case Briefing Paper will be submitted to FISB. It can be later removed if the field division decides not to pursue revocation, civil fine, and/or suspension. (See 10.e.(3) for Regional ACC concurrence)

g.   Denials.

(1)   An application for a Federal firearms license may only be denied if the applicant does not meet one or more of the licensing criteria set forth in 18 U.S.C. § 923(d). Generally, ATF will deny an application for renewal of a Federal firearms license based on willful violations of the GCA and the same criteria and procedures outlined for revocation under section 923(e) in section 6 above.

(2)   ATF will deny applications in which an applicant: failed to provide material information required on the application or the applicant is less than 21 years old, a prohibited person, made a material false statement on the application, or is a prior willful violator of the GCA. These situations may include "application denial," "hidden ownerships," or "straw applications," which usually involve situations where past willful violators or prohibited persons are responsible parties but are not listed on the application. ATF may also base a revocation on hidden ownership. In certain situations, a referral to ATF Criminal Enforcement may be appropriate.

(3)   ATF field counsel must evaluate the facts and circumstances surrounding an FFL's alleged violation(s) to determine willfulness. Simultaneously, a copy of the Industry Operations Monitored Case Briefing Paper will be submitted to FISB. It can be later removed if the field division decides not to pursue denial. (See 10.e.(3) for Regional ACC concurrence)

ATF O 5370.1D
10/02/2019

h.   Alternate Actions.

    (1)   For inspections that merit consideration of revocation in which the DIO proposes an alternate recommendation, the inspection is required to be submitted to the MCP for DAD (IO) review. (ATF O 3200.1A, Monitored Case Program)

    (2)   ATF field counsel must evaluate the facts and circumstances surrounding an FFL's alleged violation(s) to determine willfulness. Simultaneously, a copy of the Industry Operations Monitored Case Briefing Paper will be submitted to FISB.

i.   Other Administrative Resolutions.

    (1)   Pursuant to 27 CFR 478.72-74, the DIO may afford the FFL/applicant the opportunity to submit facts and arguments for review, consideration and make offers of settlement before or after the issuance of a Notice of Revocation/Denial requiring DAD, Industry Operations (IO) approval. Examples include a request for a temporary closure period or a requested date of revocation after an agreed upon liquidation period. In appropriate situations, wherein the division believes the case may be resolved without conducting a hearing, the DIO may also offer the FFL an opportunity to meet with him/her to discuss potential resolutions of the matter after the issuance of a Notice of Revocation or Denial.

    (2)   Following the issuance of the Notice to Revoke/Deny a DIO may consider alternatives to issuing a Final Notice of Denial of Application, Revocation, Suspension, and/or Fine of a Federal firearms license with the concurrence of the DAD (IO). The DIO should consult and work closely with field counsel on the negotiation of terms and conditions to which ATF may appropriately agree to settle or resolve.

8.   GENERAL GUIDANCE. The division management team may consider the appropriate administrative actions. The DIO will seek advice of field counsel and the ACC (East/Central/West), when seeking Administrative Actions (Revocation/Denial/Suspension/Imposition of Civil Fine) for DAD (IO) approval and the AD, Field Operations (FO) when considering the appropriate administrative action.

a.   This order does not mandate doing any administrative action in a sequential or consecutive order. For example, a WC may be held or revocation sought after the first inspection if violations impact public safety or obstruct firearms traceability. Conversely, a WL may be issued even if the prior inspection resulted in a WC.

b.   The DIO or AS will conduct WCs.

c.   The DIO will ensure the timely initiation of administrative action occurs within 30 days of the IOI report submission date. They should finalize and issue the post-conference letter for cases requiring a WC, no later than 90 days after final DIO review unless there are mitigating circumstances. The AS should issue a WL within 15 days of his or her review.

d.   The area office should submit cases involving potential denials/revocations to the DIO within 30 days of the inspection submission date. The DIO has 120 days, inclusive of Counsel review, upon receipt of the inspection to issue the Notice. Field counsel will have a maximum of 60 days to review and prepare the Notice in final form for submission to the DIO for review and issuance. The DAD (IO) will be notified by the DIO via FISB if these periods are not met.

e.   Inspections may be suspended from MCP with DAD (IO) approval if the field division decides not to pursue administrative actions meeting the MCP criteria. Suspension

Page 9

ATF O 5370.1D
10/02/2019

requests are submitted via Post Inspection Information.

f.   Criminal violations and violations that pose a danger to the public should be grounds for
     revocation, and the field must immediately notify ATF criminal enforcement. This may
     include situations where firearms are subject to seizure and forfeiture. This order does not
     prevent division management from pursuing simultaneous regulatory and criminal actions
     with the concurrence of the U.S. Attorney's Office. There may be instances where the
     Government resolves the case through a revocation and a criminal plea. If ATF pursues
     revocation, it will follow procedures, including those required by ATF O 3200.1A,
     Monitored Case Program.

9.   HEADQUARTERS POLICY REVIEW AND ALTERNATE RECOMMENDATIONS.

     a.   ATF must handle inspections and investigations with recommendations for administrative
          actions that meet the criteria of the MCP (e.g. revocations, denials, imposition of civil fine,
          suspension and/or alternate to revocation/denial etc.) per ATF O 3200.1A, Monitored
          Case Program.

     b.   Alternate recommendations to revocation (see section 7.h) require concurrence of the
          DAD (IO) before proceeding.  Refer to AS Manual for additional guidance.

10.  FIELD RESPONSIBILITIES.  Responsibilities for field personnel and management are as follows:

     a.   Industry Operations Investigator.  The IOI:

          (1)   Will conduct the inspection per established ATF guidelines, including use of the
                approved case management system.  If they uncover violations, the IOI will
                obtain and preserve all available evidence and document the violations to show
                if the violations were willful, including copies of Forms 4473 and Acquisition and
                Disposition records since only documented violations will be cited in the Notice.
                The IOI will then make the appropriate recommendation based on the guidelines
                contained herein and forward the inspection to the AS.

          (2)   Must communicate with and notify the AS of violations, findings, and other
                circumstances impacting public safety upon discovery.

     b.   Area Supervisor.  The AS:

          (1)   Will review all firearms inspection reports and associated exhibits maintained
                within the approved case management system to ensure the IOI's
                recommendation meets established guidelines and evidentiary requirements,
                they adequately performed all relevant inspection work steps, and they
                correctly entered all necessary data.

          (2)   Must communicate with the DIO and notify them of violations, findings, and other
                circumstances impacting public safety upon discovery.

          (3)   Independently evaluate the IOIs recommendation and insert their
                recommendation in the approved case management system.  If they disagree
                with the IOI recommendation, the AS will document the reason(s) within the
                recommendation section of the case management system.  The AS must submit
                cases meriting WC, revocation, denial, fine, or suspension to the DIO within 30
                days of the IOI submission date.

     c.   Director of Industry Operations.  The DIO shall:

          (1)   Review all inspections that recommend a WC and or alternate thereof.  The DIO

Page 10

ATF O 5370.1D
10/02/2019

shall complete a recommendation in the approved case management system and
return to the AS within 15 calendar days.

    (2)    Review all inspections resulting in a recommendation of denial, revocation,
suspension, fine, or alternate to revocation and complete a recommendation in
the approved case management system. Additionally, the DIO must provide
justification through the Industry Operations Monitored Case Briefing Paper and
submit to FISB.

    (3)    Request legal advice from field counsel in all potential alternate
recommendations to revocation. Request field counsel and ACC legal
advice for all denials, revocations, suspensions, and fines concerning
willfulness determinations and litigation hazards.

    (4)    Advise the SAC of any administrative actions that deal with potential
revocation, denial, alternate to revocation, suspension, or fine
recommendations, and other administrative resolutions.

  d.    <u>Counsel</u>.

    (1)    At the request of the DIO, field counsel will review all inspection reports and
exhibits in the approved case management system and provide legal advice on
willfulness determinations and significant litigation hazards in all administrative
actions. If counsel believes there is insufficient evidence to proceed with the
proposed administrative action or believes there are substantial litigation hazards,
they will provide written analysis.

    (2)    The DIO and counsel should use discretion in determining which violations to
allege and only allege willful violations in the Notice. In certain instances, it may
not be in the interest of the Government to cite isolated violations wherein there
are adequate willful violations to sustain a revocation.

    (3)    The ACC for the applicable field division will review and approve all proposed
Notices and administrative resolutions for legal soundness, and compliance
with this policy prior to final submission to MCP and implementation of these
actions.

  e.    <u>Special Agent in Charge</u>. The SAC has ultimate division responsibility to ensure that this
national policy is properly enforced. To this end, they may establish additional controls
in their division.

11.    <u>AVAILABILITY</u>. The forms outlined in this order are available at
ATFConnect>Documents/Content>Forms. The manual outlined in this order is available at
ATFConnect>Organization>Field Operations>Industry Operations>IOI Manual.

12.    <u>RECORDS RETENTION REQUIREMENTS</u>. Documents outlined in this order must be
retained in accordance with AF O 1340.5A, Records Management Program and ATF O
1340.7A, ATF Records Control Schedule.

13.    <u>QUESTIONS</u>. If you have any questions regarding this order, please contact Field
Management Staff, 202-648-8400.

Assistant Director
(Office of Field Operations)

Page 11