## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **MICHAEL CARGILL and CTC HGC, LLC,** <br> *Plaintiffs* <br><br> **v.** <br><br> **BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, ATF DIRECTOR STEVEN DETTELBACH, in his official capacity; ATTORNEY GENERAL MERRICK B. GARLAND, in his official capacity; UNITED STATES DEPARTMENT OF JUSTICE; and UNITED STATES OF AMERICA,** <br> *Defendants* | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | **No. 1:22-CV-1063-DAE** |

### REPORT AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE DAVID A. EZRA
      SENIOR UNITED STATES DISTRICT JUDGE

Before the Court is Defendants' Motion to Dismiss, Dkt. 7; and all related briefing. After reviewing these filings and the relevant case law, the undersigned recommends that the District Court deny Defendants' motion.

## I.        BACKGROUND

This case addresses pre-enforcement of certain policies related to the Gun Control Act of 1968, codified in 18 U.S.C. § 921 *et seq.* Plaintiff Michael Cargill owns and operates Central Texas Gun Works in Austin, Texas. Dkt. 1, at ¶ 4. Plaintiff CTC HGC, LLC is a Texas limited liability company owned by Michael Cargill that holds a federal firearms license. *Id.* at ¶ 5.1.

1

The ATF administers and regulates federal firearms licenses *Id.* at ¶ 5.1. Plaintiffs assert that a 2021 executive branch policy of enforcing the Gun Control Act, along with official guidance on how to implement that policy, effectively negates the "willful" requirement for the revocation of a gun license by the ATF. Plaintiffs claim the agency action violates the plain language of the Gun Control Act as well as Cargill's rights under the Second Amendment to the U.S. Constitution. They request equitable relief for these ongoing violations of federal law.

Plaintiffs sue Defendants the United States and United States agencies, Bureau of Alcohol, Tobacco, Firearms and Explosives and Department of Justice. *Id.* at ¶¶ 6, 7, 9. Defendant agencies are responsible for administering and enforcing the Gun Control Act. Defendant Steven Dettelbach is the Director of the ATF and Defendant Merrick Garland is the Attorney General of the United States. *Id.* at ¶¶ 8, 10. Defendants move to dismiss for lack of subject matter and failure to state a claim arguing that Plaintiffs: (1) have failed to exhaust administrative prerequisites to administrative review; (2) lack standing to sue; (3) have brought claims that are not ripe; and (4) even if their claims were reviewable, have failed to state a claim because the ATF policies in issue are consistent with the Gun Control Act.  Dkt. 7, at 6-7.

### A.    Gun Control Act

The Gun Control Act of 1968, codified at 18 U.S.C. § 921 *et seq*. gives the Attorney General the authority to approve and revoke federal firearms licenses. It provides that "[n]o person shall engage in the business of importing, manufacturing, or dealing in firearms … until he has filed an application with and received a license

2

to do so from the Attorney General[,]" and that application "shall be in such form and contain only that information necessary to determine eligibility for licensing as the Attorney General shall by regulation prescribe[.]" 18 U.S.C. § 923(a).

Under the Act, the "Attorney General may, after notice and opportunity for hearing, revoke any license issued under this section if the holder of such license has willfully violated any provision of this chapter or any rule or regulation prescribed by the Attorney General under this chapter[.]" *Id.* § 923(e). Revocations must be accompanied by "a written notice from the Attorney General stating specifically the grounds ... upon which the license was revoked." *Id.* § 923(f)(1). If a license is revoked, the license holder may request "a hearing to review his ... revocation," as well as a stay of the effective date of the revocation. *Id.* § 923(f)(2). "If after a hearing," the Attorney General "decides not to reverse his decision to ... revoke a license, the Attorney General shall give notice of his decision to the aggrieved party." *Id.* § 923(f)(3). Then, within a 60-day period, the license holder may "file a petition with the United States district court for the district in which he resides or has his principal place of business for a de novo judicial review of such ... revocation." *Id.*

The Attorney General has delegated the authority to enforce the Gun Control Act to the ATF. 28 C.F.R. § 0.130(a). Pursuant to this delegation of authority, the ATF inspects federal firearms licensees for compliance with the Act's requirements, although it typically may not do so "more than once during any 12-month period," 18 U.S.C. § 923(g)(1)(B)(ii)(I), and, when authorized, the ATF revokes licenses.

B.      **Challenged Policies**

In June 2021, President Biden and Attorney General Garland announced the Comprehensive Strategy to Prevent and Respond to Gun Crime and Ensure Public Safety. Among other things, the Strategy states that it will "[e]stablish[] zero tolerance for rogue gun dealers that willfully violate the law." Dkt. 7-1, at 2. The Fact Sheet stated that the ATF will seek to revoke the licenses of dealers the first time that they violate federal law by willfully: (1) transferring a firearm to a prohibited person; (2) failing to run a required background check; (3) falsifying records, such as a firearms transaction form; (4) failing to respond to an ATF tracing request; or (5) refusing to permit the ATF to conduct an inspection in violation of the law. *Id.* at 3. Subsequently, the DOJ announced its Violent Crime Reduction Efforts, echoing the White House Fact Sheet, and stating that the DOJ would revoke federal firearms licenses of licensees who willfully break the law. Dkt. 1-3.

The next month, the ATF issued a memorandum to all special agents in charge and all directors of industry operations addressing the implementation of the Biden Administration's Strategy. Dkt. 1-2 (ATF Memorandum on the Implementation of the Administration's Comprehensive Strategy to Prevent and Respond to Gun Crime and Ensure Public Safety). The ATF Memo provided that absent extraordinary circumstances, an inspection that results in a finding that a federal firearms licensee has willfully committed any of the five violations stated above would result in a revocation recommendation. *Id.* at 2.

### C.      Plaintiffs' Complaint

Plaintiffs challenge the ATF's "unlawful enforcement of the Gun Control Act" by contending that Defendants changed the ATF's education/compliance enforcement practices when they announced a new "zero tolerance" enforcement policy for federal firearms license-holders who inadvertently fail to comply with the Policy. Dkt. 1, at ¶ 34. Plaintiffs contend that "the ATF has effectively written the word 'willful' out of the statute by instituting a policy of revoking FFL's for inadvertent paperwork errors," *id.* at 2-3, thereby imposing a "strict liability regime, where accidental typos and other minor paperwork errors could cost business owners their livelihoods[,]" *id.* ¶ 41. The Complaint asserts three claims: (1) that the agency action violates the Gun Control Act; (2) the agency action violates Plaintiffs' Second Amendment rights; and (3) that Plaintiffs are entitled to equitable relief for an ongoing violation of federal law. *Id.* at ¶¶ 59-87. Plaintiffs seeks declaratory judgment and an injunction. *See id.* at 14-15.

## II.      LEGAL STANDARDS

### A.      12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject-matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City*

*of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id*. In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

### B.     12(b)(6)

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

## III.   DISCUSSION

### A.   Subject Matter Jurisdiction

#### 1.   Final Agency Action

Defendants' first argument is that Plaintiffs have failed to identify a final agency action giving rise to a cognizable claim. They argue that Plaintiffs' asserted concern—that the ATF will enforce a more stringent version of the Gun Control Act,

applying a "zero tolerance" policy to inadvertent mistakes by licensees, thereby negating the "willfulness" requirement—is purely hypothetical and thus not a challengeable final agency action. Dkt. 7, at 15. Defendants point out that Plaintiffs' license has not been revoked nor have Plaintiffs shown a likelihood of revocation.

Plaintiffs respond that the announcement of the new policy, followed by the enactment of a revised Enforcement Order, constitutes final agency action because it represents the end of the ATF's decision-making process as to how it enforces firearm regulations on licensees. Dkt. 12, at 10. Plaintiffs also point to the ATF's Enforcement Policy, ATF-O-5370.1E, Dkt. 28-1, to argue that the change in policy qualifies as "final agency action" sufficient to support review by this court. Dkt. 28, at 2.

Plaintiffs' claims arise under the APA, which permits judicial review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Courts consider two elements to determine whether there is a final agency action: (1) whether the act in question qualifies as an agency "action" under the APA, and (2) whether that action is final. *See Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 18 (D.C. Cir. 2006). In evaluating whether agency action is final, the Fifth Circuit treats the finality requirement as both "flexible" and "pragmatic." *Qureshi v. Holder*, 663 F.3d 778, 781 (5th Cir. 2011). Under a flexible, pragmatic reading, the undersigned finds the enforcement policy is a final agency action subject to judicial review.

The APA limits judicial review to the set of "circumscribed, discrete agency actions" delineated in 5 U.S.C. § 551(13). *Norton v. S. Utah Wilderness All.*, 542 U.S.

8

55, 62 (2004).  5 U.S.C. § 551(13) defines "[a]ction" as "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." *Id.* To be "final," (1) the action must "mark the consummation of the agency's decisionmaking process" and "it must not be of a merely tentative or interlocutory nature"; additionally, (2) it must "be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal quotation marks and citation omitted).

Defendants assert that Plaintiffs have failed to identify a final agency action as Plaintiffs have not been subject to a revocation order and have not alleged that a report from a 2018 inspection recommended revocation. Dkt. 7, at 16. Additionally, Defendants argue that Plaintiffs do not challenge the substance of the policies set forth in the White House Fact Sheet, DOJ Announcement, or ATF Memoranda. *Id.* Defendants argue that Plaintiffs instead are challenging a hypothetical "Enforcement Policy" of their own creation by speculating that the ATF will ignore the dictates of the Gun Control Act and its official policies and revoke federal firearms licenses based on inadvertent errors. *Id.* Defendants assert that policy set forth in the above-mentioned documents all echo the Gun Control Act's requirement that licenses may only be revoked for willful violations, a policy that has not changed. *Id.* at 17. Because there has been no policy change, Defendants argue, there is no "final agency action" upon which Plaintiffs can base their claim.  *Id.*

Plaintiffs respond that through their new Enforcement Order, Defendants have withdrawn any discretion on how the ATF handles violations of the Gun Control

Act and have bound the agency to a new "zero tolerance" policy for willful violations. Dkt. 12, at 10-12. Plaintiffs assert that this change in policy increases the regulatory burden on them. Dkt. 28, at 4.

Plaintiffs rely on the ATF's Enforcement Policy, ATF-O-5370.1E, Dkt. 28-1, arguing that Defendants have moved from an education/compliance approach to a zero-tolerance approach in handling certain willful violations of the Gun Control Act. The prior policy, ATF-O-5370.1D, Dkt. 28-2, with an effective date of October 2, 2019, states that "revocation is an appropriate licensing action under section 923(e) and is *strongly recommended* in response to the discovery of the following willful violations which directly impact the public: [listing violations]." *Id.* (emphasis added).

In contrast, ATF-O-5370.1E, Dkt. 28-1, effective January 28, 2022, states: "ATF has *zero tolerance* for willful violations that greatly affect public safety and ATF's ability to trace firearms recovered in violent crimes. Therefore, revocation is the assumed action, unless extraordinary circumstances, when violations are cited that include …." *Id.* (emphasis added).  The listed violations are transfer of a firearm to a prohibited person; failure to run a background check; failure to respond to an ATF trace request within 24 hours; falsifying records; and refusing ATF entry and inspection during hours of operation. *Id.* Plaintiffs argue that licensees can violate these listed requirements inadvertently and not willfully. ATF-O-5370.1E states, "ATF does not have to establish a history of prior violations to demonstrate willfulness. Accordingly, ATF will revoke a federal firearms license, absent extraordinary circumstances on initial violations, if those violations inherently

demonstrate willfulness, such as transferring a firearm to a prohibited person; failing to run a background check prior to transferring a firearm to a non-licensee; falsifying records or making false statements; failure to respond to an ATF tracing request; refusing to permit ATF to conduct an inspection; or allowing a straw sale of a firearm to occur. ATF may also revoke for any other willful first-time violation as it deems appropriate." Dkt. 28-1. The prior version provided that the ATF "*may* revoke a Federal firearms license under appropriate circumstances based on an initial set of violation, if it meets the elements of willfulness ...." Dkt. 28-2, at 6 (ATF-O-5370.1D). Plaintiffs assert that the new policy writes "wilfullness" out of the statute as it strictly delineates "willful" actions and deprives the ATF of discretion.

The undersigned agrees with Plaintiffs that ATF-O-5370.1E marks the consummation of the agency's decision-making process, and that it "is not … of a merely tentative or interlocutory nature." *Bennett*, 520 U.S. at 178. The White House announced the policy, and the ATF followed up with a revised Enforcement Order. Dkt. 28-1 (stating "this order cancels ATF-O-5370.1D, Federal Firearms Administrative Action Policy and procedure, dated 10/02/2019").

Agency action satisfies the second requirement of *Bennett* "if it either appears on its face to be binding or is applied by the agency in a way that indicates it is binding." *Texas v. EEOC*, 933 F.3d 433, 441 (5th Cir. 2019). It is well-established that "where agency action withdraws an entity's previously held discretion, that action alters the legal regime, binds the entity, and thus qualifies as final agency action." *Id.* at 442 (quotation omitted*); see also Texas v. United States*, 40 F.4th 205, 220 (5th

Cir. 2022), *overruled on other grounds*, *United States v. Texas*, 143 S. Ct. 1964 (2023) (finding Department of Homeland Security's new immigration "guidance for the apprehension and removal of noncitizens" in a series of memoranda constituted final agency action as it removed discretion element from enforcement). In this case, the language regarding enforcement changed from "may" to "shall," negating any discretion as to certain willful violations. This is an action by which "rights or obligations have been determined, or from which legal consequences will flow." *Bennett*, 520 U.S. at 177-78.

As to the argument that Plaintiffs are not subject to a revocation order, parties need not await enforcement proceedings before challenging final agency action where such proceedings carry the risk of "serious criminal and civil penalties.*" U.S. Army Corps of Engineers v. Hawkes Co., Inc.*, 578 U.S. 590, 600 (2016). As for Defendants' contention that the enforcement policy does not subject Plaintiffs to further compliance obligations because the actions deemed "willful" remain the same, this argument is without merit as the array of consequences of "willful" conduct has narrowed with the implementation of the ATF's enforcement guidelines. *See Her Majesty the Queen in Right of Ont. v. Env't Prot. Agency*, 912 F.2d 1525, 1532 (D.C. Cir. 1990) (holding that the EPA's guidance letters were final agency action).

2.    Standing

Defendants also challenge Plaintiffs' standing to challenge the new enforcement policy. "The federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of [the

jurisdictional] doctrines." *United States v. Hays*, 515 U.S. 737, 742 (1995) (quoting *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 230-31 (1990)) (internal quotation marks omitted). "[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal." *Warth v. Seldin*, 422 U.S. 490, 500 (1975). "[I]t often turns on the nature and source of the claim asserted." *Id.* Subject matter jurisdiction "extends only to 'Cases' and 'Controversies.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (quoting U.S. Const. art. III, § 2). Constitutional "[s]tanding to sue is a doctrine rooted in the traditional understanding of a case or controversy" and is an "essential component[ ] of federal subject matter jurisdiction." *Id.* at 338; *McCall v. Dretke*, 390 F.3d 358, 361 (5th Cir. 2004).

The party invoking subject matter jurisdiction has the burden to prove standing. *Spokeo, Inc.*, 578 U.S. at 338. The elements of constitutional standing are that the plaintiff: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* To establish an injury in fact, the plaintiff must have suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). A particularized injury is one that affects the plaintiff "in a personal and individual way." *Id.*

Defendants argue that the Complaint does not allege that Plaintiffs have already suffered an injury-in-fact, or that any such injury is certainly impending. The ATF has not revoked Plaintiffs' license, nor has the ATF threatened to initiate

revocation proceedings. Defendants assert that Plaintiffs effectively seeks pre-enforcement review of the ATF's application of its policies to them.

Pre-enforcement review may be warranted where threatened enforcement is sufficiently imminent, such as when a plaintiff intends to engage in conduct arguably affected with a constitutional interest but proscribed by a policy, and there is a credible threat of enforcement under that policy. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-59 (2014). Defendants argue that Plaintiffs here fail to allege they intend to willfully violate the provisions of the Gun Control Act and fail to allege a credible threat that their license might be revoked under the actual policies or their application to Plaintiffs.

Prior to Plaintiffs' filing their Complaint,[1] the ATF had last inspected Central Texas Gun Works in August 2018. Dkt. 1, at ¶ 45. Following that inspection, the Complaint alleges that the ATF cited Central Texas Gun Works for four types of violations in a total of 35 transactions. *Id.* at ¶ 47. According to Cargill's declaration, Dkt. 1-4, these four types of violations included: (1) failing to ensure that the information called for on ATF Form 4473 was accurately and completely furnished; (2) failing to obtain a complete or accurately executed ATF Form 4473 from the non-

---

[1] While the present motion was pending before the Court, Plaintiffs filed a "Notice of Change of Material Facts" stating that "an ATF Inspector arrived at Plaintiffs' property on Monday June 26, 2023, to begin conducting a Federal Firearms Licensee compliance inspection pursuant to 18 U.S.C. § 923(g)(1)(B)(ii)(I)." Dkt. 27, at 1. Plaintiffs argued in the notice that this surprise inspection further underscores the non-speculative nature of their asserted harm. *Id.* at 1-2. Defendants challenge the materiality of this inspection in their response, noting that the inspection was routine and that no notices of violation have arisen from it. Dkt. 29. The undersigned concludes that Plaintiffs have standing irrespective of this most recent inspection and thus does not rely on it for the analysis here.

licensee completing the form, prior to making an over-the-counter transfer of a firearm; (3) failing to attach supporting documentation in Question 18c; and (4) failing to accurately or completely record on ATF Form 4473 the date on which the licensee contacted NICS. Dkt. 1-4, at ¶ 8. Cargill avers that "[n]one of these violations were willful, and none resulted in a prohibited possessor obtaining a firearm." *Id.* at ¶ 9. The Complaint also alleges that, following the 2018 inspection, the ATF issued a report of violations but did not recommend revocation. *Id.* at ¶¶ 10, 49. The ATF instead instructed Plaintiffs to "ensure that all information on the ATF 4473 was filled out accurately and supporting documentation is attached when necessary." *Id.* at ¶ 10. Since his 2018 inspection, Cargill has "instituted remedial measures in order to comply with the law, including purchasing a software system that better tracks transactions and required background checks." *Id.* at ¶ 12.

Plaintiffs contend that, they are "still subject to revocation" based on the 2018 report, and "fear such based on Defendants' new enforcement policies." *Id.* ¶ 57. In support of this claim, the Complaint alleges, that "Plaintiffs are aware of at least one FFL licensee who received a recommendation of revocation based on an inspection that occurred over 15 months prior to the recommendation." *Id.* at ¶ 58. Additionally, Plaintiffs assert that, applying the new standards to the prior 2018 inspection, "all four of the types of violations listed in the inspection report would fall under the ATF's new policy regarding falsification of records and would result in a revocation recommendation, despite the fact that none of the violations were actually willful." *Id.* at ¶ 53.

A would-be pre-enforcement plaintiff must allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979) ("A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement."); *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020). But "persons having no fears of [enforcement] except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs." *Babbitt*, 442 U.S. at 298 (quoting *Younger v. Harris*, 401 U.S. 37, 42 (1971)).

Plaintiffs plead that even though they "seek to abide by the Act and have instituted remedial measures in order to comply with the law," the "new standard applied by the ATF would be virtually impossible to meet when accounting for the volume of transactions that Plaintiffs complete." Dkt. 1, at ¶¶ 51-52, 56.

Defendants argue that Plaintiffs do not allege that the ATF has indicated it seeks to revoke their license, or that the ATF has revoked the licenses of other similarly situated FFLs but have pleaded that the number of overall license revocations has increased under the new enforcement policy. Defendants note that the one revocation anecdote cited by Plaintiffs—allegedly recommended as to an unnamed licensee for unspecified violations based on an inspection that occurred 15-months prior—is not sufficiently similar to Plaintiffs' present situation to warrant a reasonable fear of revocation.

Plaintiffs point to the observation in *Contender Farms* that "[i]f a plaintiff is an object of a regulation 'there is ordinarily little question that the action or inaction has caused him injury.'" *Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258, 264 (5th Cir. 2015) (quoting *Lujan*, 504 U.S. at 561-62). "Whether someone is in fact an object of a regulation is a flexible inquiry rooted in common sense." *Id.* at 266. In this case, there is no question that, as federal firearms licensees, Plaintiffs are the object of the enforcement policy.

In *Contender Farms*, the court reasoned that an increased regulatory burden satisfies the injury-in-fact requirement. *Id.* (citing *Ass'n of Am. R.R.s v. Dep't of Transp.*, 38 F.3d 582 (D.C. Cir. 1994)). Defendants maintain that Plaintiffs cannot show an injury in fact because the ATF has not increased Plaintiffs' regulatory burden—the policy still provides that only willful conduct subjects Plaintiffs to license revocation, and the costs of complying with new enforcement policy are the same as complying with the prior enforcement policy.

Plaintiffs have pleaded that, while the requirements of the regulations have not materially changed, they now face mandatory penalties for violations which in the past were not necessarily deemed "willful." Plaintiffs argue that they are subject to regular inspections and that the enforcement policy's identification of violations that are "inherently willful" subject them to potential license revocation for such mistakes as accidentally or negligently mistyping a name, misreading a date, missing an email, call or fax, or not realize a customer was making a straw purchase, without any showing of intent. Dkt. 28, at 10. Plaintiffs assert that under the changed

17

enforcement policy, intent may now be inferred from proof that FFL's have knowledge of the requirements of the Gun Control Act and failed to follow them. Thus, they argue that the new zero-tolerance policy has not only increased their compliance efforts and costs, but has also rendered an inadvertent mistake—which would have been forgivable under the former policy—a revocable offense.

In light of the reasoning in *Contender Farms*, the undersigned finds that Plaintiffs have adequately pleaded that they are the object of an increased regulatory burden sufficient to establish standing. *See Lujan*, 504 U.S. at 561-62. Regarding causation and redressability, a judicial remedy redresses an injury when the "risk [of the alleged harm] would be reduced to some extent if [the plaintiffs] received the relief they seek." *Massachusetts v. U.S. Env't Prot. Agency*, 549 U.S. 497, 526 (2007). In this case, Plaintiffs seek a declaratory judgment and permanent injunction of the enforcement policy. The undersigned finds that this relief would redress any alleged increased regulatory burden and increased threat of revocation, and thus, the causation and redressability requirements of standing are met.

        3.    Ripeness

"The ripeness inquiry reflects 'Article III limitations on judicial power' as well as 'prudential reasons for refusing to exercise jurisdiction.'" *DM Arbor Ct., Ltd. v. City of Houston*, 988 F.3d 215, 218 (5th Cir. 2021) (quoting *Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*, 559 U.S. 662, 670 n.2 (2010)). Ripeness ensures that federal courts do not decide disputes that are "premature or speculative.'" *Id.*

To determine whether a case is ripe for adjudication, a court should consider "(1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration." *Texas v. United States*, 497 F.3d 491, 498 (5th Cir. 2007). "The fitness and hardship prongs must be balanced." *Id.* "A case is generally ripe if any remaining questions are purely legal ones." *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 833 F.2d 583, 587 (5th Cir. 1987). But "even where an issue presents purely legal questions, the plaintiff must show some hardship in order to establish ripeness." *Central & S. W. Servs. v. U.S. Env't Prot. Agency*, 220 F.3d 683, 690 (5th Cir. 2000).

In this case, Plaintiffs make a facial pre-enforcement challenge to ATF-O-5370.1E. Facial challenges are generally ripe the moment the challenged regulation is passed. *Suitum v. Tahoe Reg'l Plan. Agency*, 520 U.S. 725, 736 n.10 (1997). Additionally, Plaintiffs have pleaded that they have suffered hardship in the form of an increased regulatory burden. The undersigned finds Plaintiffs claims are ripe.

### B.   Statement of a Claim

Defendants also argue that Plaintiffs' claims should be dismissed for failure to state a claim. Defendants argue that:

> ATF's enforcement policy is perfectly in step with the requirements of the Gun Control Act. And to the extent that Plaintiff contends that ATF's pattern or practice of enforcement diverges from its written policies, Plaintiff has failed to allege facts that plausibly support that any such policy exists.

Dkt. 7, at 23.  Defendants maintain that Plaintiffs' allegation that the ATF is acting contrary to law and violating their Second Amendment rights by effectively eliminating the Gun Control Act's willfulness requirement is without merit because

the policy documents Plaintiffs reference in their Complaint state that only willful violations may serve as a basis for a revocation recommendation.

Plaintiffs respond that they have pleaded that Defendants have implemented a new enforcement policy of the Gun Control Act, "radically changing how the ATF conducts FFL investigations, and increasing the likelihood of license revocation for paperwork errors, rather than actual willful actions." Dkt. 12, at 16-18. Defendants' argument that the new policy still limits license revocation to "willful" actions does not address Plaintiffs' pleaded position—that Defendants' newly announced intent to rigidly define some violations as "willful," regardless of the licensee's intent, limits agency discretion in a manner that violates the Second Amendment and is inconsistent with the plain language of the Gun Control Act. *See* Dkt. 1, at 10 ("[T]he ATF would recommend revocation despite the fact that there is no evidence Plaintiffs intended to falsify the records or were indifferent to their duty to fill out the form accurately.").

The undersigned finds that, in light of their contentions regarding the changed language in the revised Enforcement Policy, Plaintiffs have adequately pleaded their claims sufficient to survive Rule 12(b)(6) dismissal.[2]

## IV.   RECOMMENDATION

In   accordance   with   the   foregoing   discussion,   the   undersigned **RECOMMENDS** that the District Court **DENY** Defendants' Motion to Dismiss, Dkt.

---

[2] Because the undersigned recommends that the Motion to Dismiss be denied, the Court does not address Plaintiffs' *Larson* arguments. Dkt. 12, at 18.

7. This referral to the undersigned is hereby **CANCELED** and this case is **RETURNED** to the docket of the Honorable David A. Ezra.

## V.    WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The district court need not consider frivolous, conclusive, or general objections.  *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).  A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from *de novo* review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court.   *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED July 18, 2023.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE