UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| **MICHAEL CARGILL and CTC HGC, LLC,** | |
| Plaintiffs, | |
| v. | Case No. 1:22-cv-01063-DAE |
| **BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; ATF DIRECT STEVEN DETTELBACH, in his official capacity; ATTORNEY GENERAL MERRICK GARLAND, in his official capacity; UNITED STATES DEPARTMENT OF JUSTICE; and UNITED STATES OF AMERICA**, | |
| Defendants. | |

## DEFENDANTS' OBJECTIONS TO REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Defendants Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), ATF Director Steven Dettelbach, Attorney General Merrick Garland, United States Department of Justice ("DOJ"), and the United States of America (collectively, "Defendants"), by and through undersigned counsel, pursuant to Federal Rule of Civil Procedure 72(b)(2), hereby "file specific written objections to the proposed findings and recommendations" of the United States Magistrate Judge's Report and Recommendation issued on July 18, 2023, ECF No. 30.  The reasons in support of this filing are set forth below.

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................................1

BACKGROUND ...................................................................................................................2

    I.     Parties .......................................................................................................................2

    II.    Regulatory Scheme ..................................................................................................2

    III.   Current ATF Policies and Guidance .......................................................................3

    IV.   Plaintiffs' Inspection History ...................................................................................5

    V.    Plaintiffs' Complaint ................................................................................................6

    VI.   Motion to Dismiss Briefing and Report and Recommendation ...............................6

LEGAL STANDARDS..........................................................................................................7

    I.     Federal Rule of Civil Procedure 72(b).....................................................................7

    II.    Federal Rule of Civil Procedure 12(b)(1) ................................................................7

    III.   Federal Rule of Civil Procedure 12(b)(6) ................................................................8

ARGUMENT.........................................................................................................................9

    I.     Plaintiffs have not established that this Court has subject matter jurisdiction. .........9

         A.   Plaintiffs have not challenged a final agency action. ........................................9

         B.   Plaintiffs lack standing .....................................................................................13

         C.   Plaintiffs' claims are not ripe............................................................................15

    II.    Plaintiffs' Complaint fails to state a claim entitling them to relief. ........................17

CONCLUSION.......................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

C<span style="font-variant:small-caps">ASES</span>

*Abbott v. Cornwell*,
   No. 4:18-cv-170-DGK, 2018 WL 3520144, at *2 (W.D. Mo. July 20, 2018) .................................10

*Abbott Labs. v. Gardner*,
   387 U.S. 136 (1967) ........................................................................................................................8

*Al Otro Lado, Inc. v. Nielsen*,
   327 F. Supp. 1284 (S.D. Cal. 2018) .............................................................................................19

*Am. Airlines, Inc. v. Herman*,
   176 F.3d 283 (5th Cir. 1999) ...........................................................................................................8

*Anzio Ironworks, Corp. v. Gerber*,
   No. 8:20-cv-2132-KKM-AAS, 2022 WL 1500856 (M.D. Fla. May 12, 2022) ................................20

*Armalite, Inc. v. Lambert*,
   544 F.3d 644 (6th Cir. 2008) .........................................................................................................15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................................................8

*Babbitt v. United Farm Workers Nat. Union*,
   442 U.S. 289 (1979) ......................................................................................................................13

*Bark v. U.S. Forest Serv.*,
   37 F. Supp. 3d 41 (D.D.C. 2014) ............................................................................................10, 19

*Choice Inc. of Texas v. Greenstein*,
   691 F.3d 710 (5th Cir. 2012) ..........................................................................................8, 15, 16, 17

*City & Cnty. of San Francisco v. Garland*,
   42 F.4th 1078 (9th Cir. 2022) ........................................................................................................17

*Contender Farms, L.L.P. v. U.S. Dep't of Agric.*,
   779 F.3d 258 (5th Cir. 2015) .........................................................................................................15

*Del Monte Fresh Produce N.A., Inc. v. U.S.*,
   706 F. Supp. 2d 116 (D.D.C. 2010) ..............................................................................................19

*Fairmont Cash Mgmt., LLC v. James*,
   858 F.3d 356 (5th Cir. 2017) .........................................................................................................14

*Home Depot USA, Inc. v. Jackson*,
   139 S. Ct. 1743 (2019) ....................................................................................................................7

*Huskey v. Jones,*
   45 F.4th 827  (5th Cir. 2022) ................................................................................4

*Jaraba v. Blinkin,*
   568 F. Supp. 3d 720 (W.D. Tex. 2021) ..............................................................10

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
   511 U.S. 375 (1994) ............................................................................................7

*Louisiana Oil & Gas Interests, LLC v. Shell Trading U.S. Co.,*
   949 F.3d 915 (5th Cir. 2020) ..............................................................................8

*Louisiana v. U.S. Army Corp. of Eng'rs,*
   834 F.3d 574 (5th Cir. 2016) ..............................................................................7

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) ......................................................................................8, 13

*Lujan v. Nat'l Wildlife Fed'n,*
   497 U.S. 871 (1990) ............................................................................................7

*Miller v. City of Wickliffe,*
   852 F.3d 497 (6th Cir. 2017) ...............................................................17, 18, 19

*Morgan Distrib. Co. v. Unidynamic Corp.,*
   868 F.2d 992 (8th Cir. 1989) ............................................................................10

*New Orleans Pub. Serv., Inc. v. Council of New Orleans,*
   833 F.2d 583 (5th Cir. 1987) ..............................................................................8

*NextEra Energy Capital Holdings, Inc. v. Lake,*
   48 F.4th 306 (5th Cir. 2022) ............................................................................15

*Ramming v. United States,*
   281 F.3d 158 (5th Cir. 2001) ............................................................................14

*Renne v. Geary,*
   501 U.S. 312 (1991) ..........................................................................................16

*Roebuck v. Dothan Sec., Inc.,*
   515 Fed. App'x 275 (5th Cir. 2013) .................................................................10

*Simpson v. Attorney Gen. of the U.S.,*
   913 F.3d 110 (3d Cir. 2019) ..............................................................................14

*Speech First, Inc. v. Fenves,*
   979 F.3d 319 (5th Cir. 2020) ............................................................................13

*Spokeo, Inc. v. Robins,*
  578 U.S. 330 (2016) ........................................................................................8

*Suitum v. Tahoe Reg'l Plan. Agency,*
  520 U.S. 725 (1997) ......................................................................................16

*Susan B. Anthony List v. Driehaus,*
  573 U.S. 149 (2014) ......................................................................................13

*TransUnion LLC v. Ramirez,*
  141 S. Ct. 2190 (2021) ...................................................................................8

*Walker v. Beaumont Indep. Sch. Dist.,*
  938 F.3d 724 (5th Cir. 2019) ..........................................................................4

*Younger v. Harris,*
  401 U.S. 37 (1971) ........................................................................................13

**STATUTES**

5 U.S.C. § 704 ..............................................................................................7, 9

18 U.S.C. § 921 ................................................................................................2

18 U.S.C. § 923(a) ...........................................................................................2

18 U.S.C. § 923(e) .....................................................................................2, 11

18 U.S.C. § 923(f)(2) .......................................................................................3

18 U.S.C. § 923(f)(3) .......................................................................................3

18 U.S.C. § 923(g)(1)(B)(ii)(I) .......................................................................2

**RULES**

Federal Rule of Civil Procedure 12 ..............................................................7, 8

Federal Rule of Civil Procedure 72(b) ............................................................7

**REGULATIONS**

27 C.F.R. § 478.73(a) .......................................................................................3

27 C.F.R. § 478.73(b) .......................................................................................3

27 C.F.R. § 478.74 ............................................................................................3

27 C.F.R. § 478.76 ............................................................................................3

iv

28 C.F.R. § 0.130(a) .................................................................................................................2

**OTHER AUTHORITIES**

ATF, Firearms Compliance Inspections,
    https://perma.cc/AY7F-WUNG.........................................................................................2

ATF, Revocation of Firearms Licenses,
    https://perma.cc/9FTZ-JG48..............................................................................................3

## INTRODUCTION

This action is a solution in search of a problem.  Plaintiffs CTC HGC, LLC, a federal firearms licensee, and its owner, Michael Cargill allege that ATF will, based on recent policy guidance, enforce the Gun Control Act of 1968 ("the GCA") in a manner that "rewrites" the terms of the statute and imposes a "strict liability regime" for federal firearms licensees ("FFLs"), notwithstanding that the GCA contemplates license revocations for willful violations.  But Plaintiffs offer no factual support for their claims.  On the contrary, Plaintiffs point to a series of policy documents that are entirely faithful to the GCA's willfulness requirement, and then speculate that ATF will ignore both the statute and the terms of its own policies.  And since the filing of the original Complaint, Plaintiffs have pointed to a routine ATF compliance inspection to suggest that the policy guidance Plaintiffs wish to challenge is being wielded lawlessly, when in fact the inspection's results—themselves routine— entirely undermine such claims.

By Report and Recommendation ("R&R"), ECF No. 30, the Magistrate Judge recommends that Defendants' Motion to Dismiss, ECF No. 7, be denied.  Because the R&R fundamentally misapprehends numerous aspects of the dispute before the Court, Defendants hereby object.

Most centrally, the R&R errs in conflating Plaintiffs' speculation about how the policy guidance will be enforced with the finality requirements of the APA.  The finality of ATF's policies is not in question; it is the speculative nature of Plaintiffs' allegations about how those policies will be enforced that renders Plaintiffs' claims problematic.  Plaintiffs challenge an imagined future application of an existing policy, but not the actual policy itself.  The R&R further errs by crediting Plaintiffs' unsubstantiated arguments about increased regulatory burdens arising from ATF's guidance, where no facts about any such increases have been alleged, and where nothing in ATF's guidance changes FFLs' existing regulatory obligations.  Defendants likewise object to the R&R's reliance on an unauthenticated document as well as its conclusion that facial pre-enforcement challenges are ripe

1

the moment a challenged regulation is passed.  Plaintiffs' speculative, counterfactual lawsuit should

not proceed, and this Court should dismiss Plaintiffs' Complaint.

## BACKGROUND

### I.     Parties

Plaintiff Michael Cargill alleges that he owns and operates Central Texas Gun Works in Austin,

Texas, and Plaintiff CTC HGC, LLC is a Texas limited liability company which holds a federal firearms

license and is owned by Michael Cargill.  Compl. ¶¶ 4, 5, ECF No. 1.  Defendants are collectively

responsible for administering and enforcing the Gun Control Act.

### II.    Regulatory Scheme

The Gun Control Act of 1968, codified at 18 U.S.C. § 921 *et seq.* ("GCA") creates a

comprehensive scheme for regulating federal firearms licenses, and it gives the Attorney General the

authority to enforce the GCA, which includes approving and revoking such licenses.  18 U.S.C.

§ 923(a).  The Attorney General has, in turn, delegated that authority to ATF.  *See* 28 C.F.R. § 0.130(a).

Pursuant to that authority, ATF routinely inspects FFLs for compliance with the GCA's

requirements, but typically not "more than once during any 12-month period," 18 U.S.C.

§ 923(g)(1)(B)(ii)(I).  "ATF's industry operations investigators (IOIs) conduct inspections of FFLs to

ensure compliance with applicable federal, state and local laws and regulations."  ATF, *Firearms*

*Compliance Inspections*, https://perma.cc/AY7F-WUNG.  During an inspection, an IOI may uncover

violations of the GCA.  In many instances, an IOI may simply advise the FFL on how to remedy

violations, or alternatively, ATF may issue the licensee a warning letter or require the licensee to attend

a warning conference.

ATF also has the authority, however, "after notice and opportunity for hearing," to "revoke

any license issued under this section if the holder of such license has *willfully violated any provision of this*

*chapter or any rule or regulation* prescribed by the Attorney General under this chapter[.]"  18 U.S.C.

§ 923(e) (emphasis added).  Therefore, "[w]henever the Director has reason to believe that a licensee has willfully violated any provision of the Act . . . a notice of revocation of the license, ATF Form 4500, may be issued."  27 C.F.R. § 478.73(a).  But this is only the first step of the revocation process, and ATF "shall afford the licensee 15 days from the date of receipt of the notice in which to request a hearing prior to suspension or revocation of the license" with the Director of Industry Operations ("DIO") in their ATF field division.  27 C.F.R. § 478.73(b); *see also* 18 U.S.C. § 923(f)(2).  "During the hearing the licensee will have the opportunity to submit facts and argument for review and consideration[.]"   27   C.F.R.   § 478.74;   *see also*   ATF, *Revocation of Firearms Licenses*, https://perma.cc/9FTZ-JG48 ("At the hearing, the licensee can be represented by an attorney and may bring employees and documentation to address the violations cited in the notice."); 27 C.F.R. § 478.76.  "If the DIO decides that the violations were *willful* and revocation is justified, . . . ATF sends a final notice of revocation (ATF Form 5300.13) to the licensee with a summary of the findings and legal conclusions that warrant revocation."  *Revocation of Firearms Licenses* (emphasis added); 27 C.F.R. § 478.74; 18 U.S.C. § 923(f)(3).

Even after ATF sends a final notice of revocation, the license holder may "file a petition with the United States district court for the district in which he resides or has his principal place of business for a de novo judicial review of such . . . revocation."  18 U.S.C. § 923(f)(3).  "If the court decides that [ATF] was not authorized to . . . revoke the license, the court shall order [ATF] to take such action as may be necessary to comply with the judgment of the court."  *Id.*

## III.   Current ATF Policies and Guidance

On June 23, 2021, President Biden and Attorney General Garland announced the Administration's Comprehensive Strategy to Prevent and Respond to Gun Crime and Ensure Public Safety.  Among other things, the Strategy states that it will "[e]stablish[] zero tolerance for rogue gun dealers that willfully violate the law."  *See* The White House, *Fact Sheet: Biden-Harris Administration*

*Announces Comprehensive Strategy to Prevent and Respond to Gun Violence and Ensure Public Safety*, at 2 ("White

House Fact Sheet"), Ex. A to Defs.' Mot. to Dismiss, ECF No. 7-1.[1]  Indeed, the Fact Sheet reiterates

the GCA's willfulness requirement three times.  *See, e.g., id.* ("Today, the Justice Department is

announcing a new policy to underscore zero tolerance for willful violations of the law by federally

licensed firearms dealers that put public safety at risk.").  Thus, entirely consistent with the GCA,

"[a]bsent extraordinary circumstances," ATF will seek

> to revoke the licenses of dealers the first time that they violate federal law by willfully
> 1) transferring a firearm to a prohibited person, 2) failing to run a required background
> check, 3) falsifying records, such as a firearms transaction form, 4) failing to respond
> to an ATF tracing request, or 5) refusing to permit ATF to conduct an inspection in
> violation of the law.

*Id.* at 3.

    Following the publication of the White House Fact Sheet, the Justice Department announced

that it would be making Violent Crime Reduction Efforts.  *See* Department of Justice: Violent Crime

Reduction Efforts ("DOJ Announcement"), Ex. C to Compl., ECF No. 1-3.  The DOJ

Announcement echoed the White House Fact Sheet: for firearms "dealers who willfully break the law

and put public safety at risk by violating certain ATF requirements, ATF will seek to revoke their

licenses pursuant to its zero-tolerance approach, absent exceptional circumstances."  *Id.* at 4.

    On July 14, 2021, ATF issued a memorandum to all special agents in charge and all directors

of industry operations addressing the implementation of the Biden Administration's Strategy.  *See* ATF

Memorandum on the Implementation of the Administration's Comprehensive Strategy to Prevent

and Respond to Gun Crime and Ensure Public Safety (herein "ATF Memo"), Ex. B to Compl., ECF

---

[1] Because the Complaint references and cites the White House Fact Sheet, Compl. ¶ 4, the Court may take judicial notice of the document. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (federal court may consider documents attached to motion to dismiss and referred to in complaint and central to plaintiff's claims); *see also Huskey v. Jones*, 45 F.4th 827 n.3 (5th Cir. 2022) (district courts may take judicial notice of government website).

No. 1-2.  The ATF Memo likewise reiterates the willfulness requirement:

> Absent extraordinary circumstances, an inspection that results in a finding that an FFL has *willfully committed* any of the following violations shall result in a revocation recommendation:
>     a.  The transfer of a firearm to a prohibited person;
>     b.  Failing to conduct a required background check;
>     c.  Falsification of records, such as a firearms transaction form;
>     d.  Failing to respond to an ATF tracing request;
>     e.  Refusing to permit ATF to conduct an inspection in violation of the law.

*Id.* at 2 (emphasis added).

ATF has also issued an internal guidance document to assist ATF personnel as they conduct compliance inspections and take appropriate administrative actions.  The version of this document currently in effect is ATF-O-5370.1F.  Defendants maintain that this document is protected by the law enforcement privilege, *see* Defs.' Reply ISO Mot. to Dismiss at 8, ECF No. 16; Defs.' Opp. to Sur Reply at 2, ECF No. 20.  That said, the document is available for *ex parte* and *in camera* review, should the Court wish to review it.  In their motion to dismiss briefing, Plaintiffs have submitted an unauthenticated document that purports to be a prior version of ATF-O-5371.1F.  There is no basis to consider this document in the context of a motion to dismiss, yet the R&R does so.

## IV.   Plaintiffs' Inspection History

Plaintiffs operate Central Texas Gun Works.  Compl. ¶ 42.  At the time Plaintiffs filed their Complaint (and when Defendants filed their Motion to Dismiss), ATF had last inspected Central Texas Gun Works in August 2018.  *Id.* ¶ 45.  The Complaint alleges that, following that inspection, ATF issued a report of violations but did not recommend revocation.  *Id.* ¶ 49; Pls.' Decl. ¶ 10, ECF No. 1-4.  Instead, Plaintiffs simply "instituted remedial measures in order to comply with the law, including purchasing a software system that better tracks transactions and required background checks."  Pls.' Decl. ¶ 12.

As noted in various filings, ATF conducted another routine compliance inspection of Central Texas Gun Works in June 2023.  *See* Defs.' Further Response, ECF No. 32.  That inspection has

concluded, and Plaintiffs were issued a report of violations. *See id.* As Defendants have made clear, ATF is not contemplating further enforcement action based on that inspection. *Id.*

## V.       Plaintiffs' Complaint

Plaintiffs challenge ATF's "unlawful enforcement of the Gun Control Act" by inaccurately contending that in summer of 2021, the "Biden Administration announced a new policy to enforce the Act against licensees who inadvertently fail to comply [with the Act's requirements]." Compl. at 1–2 (mis-citing White House Fact Sheet). Plaintiffs further allege—but provide no factual allegations to support—that since the ATF Memo was issued, "revocations have increased over 500%." *Id.* at 2; *see also id.* ¶ 39 ("Since announcing this new policy, the ATF has initiated at least 273 revocation proceedings, and likely many more."). From this singular fact, and notwithstanding binding policies to the contrary, Plaintiffs contend that "the ATF has effectively written the word 'willful' out of the statute by instituting a policy of revoking FFLs for inadvertent paperwork errors," *id.* at 2–3, thereby imposing a "strict liability regime, where accidental typos and other minor paperwork errors could cost business owners their livelihoods," *id.* ¶ 41. Plaintiffs cite no evidence that any FFL has had a license revoked or threatened for inadvertent violations of the GCA and its implementing regulations.

With respect to Central Texas Gun Works, Plaintiffs contend that, notwithstanding the five years that have passed since the 2018 inspection report, the shop is "still subject to revocation" based on that report, and "fear[s] such based on Defendants' new enforcement policies." *Id.* ¶ 57. In support of this claim, the Complaint alleges, without factual elaboration of the circumstances, that "Plaintiffs are aware of at least one FFL licensee who received a recommendation of revocation based on an inspection that occurred over 15 months prior to the recommendation." *Id.* ¶ 58.

## VI.      Motion to Dismiss Briefing and Report and Recommendation

Defendants moved to dismiss the Complaint on the grounds that Plaintiffs lacked subject matter jurisdiction because Plaintiffs had not challenged actual final agency action and lacked standing,

their claims were not ripe, and they had not pleaded sufficient facts to state a claim.  *See* Mot. to Dismiss.  Plaintiffs opposed, Pls.' Opp. to Mot. to Dismiss, ECF No. 12, and Defendants replied, Defs.' Reply.  Plaintiffs subsequently moved for leave to file a sur reply, primarily, to supply the Court with an allegedly leaked former version of ATF's internal guidance document, ATF-O-5370.1E.  *See* Mot. for Leave to File Sur Reply to Defs.' Reply Br., ECF No. 17.  Defendants opposed, Defs.' Opp. to Sur Reply, ECF No. 20, and Plaintiffs replied, Pls.' Reply ISO Mot. for Leave to File Sur Reply, ECF. No. 22.  The Motion for Leave was granted by text order on June 23, 2023, and the Sur Reply was deemed filed, ECF No. 28.  The Motion to Dismiss was referred to the Magistrate Judge.  Referral Order, ECF No. 21.  The Magistrate Judge issued a report and recommendation to deny Defendants' Motion to Dismiss in full.  *See* R&R.

## LEGAL STANDARDS

### I.       Federal Rule of Civil Procedure 72(b)

Federal Rule of Civil Procedure 72(b) provides that the "district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  Further, the "district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  *Id.*

### II.      Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)); *see also Home Depot USA, Inc. v. Jackson*, 139 S. Ct. 1743, 1764 (2019) (same).  The Administrative Procedure Act ("APA") provides for judicial review of "final agency actions for which there is no other adequate remedy in a court."  5 U.S.C. § 704; *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990) ("When . . . review is sought not pursuant to a specific authorization in the substantive statute, but only under the general review provisions of the APA, the agency action in question must be final agency action." (citation omitted)).  The Fifth Circuit considers final agency

action a "jurisdictional prerequisite of judicial review." *Louisiana v. U.S. Army Corp. of Eng'rs*, 834 F.3d 574, 584 (5th Cir. 2016) (citing *Am. Airlines, Inc. v. Herman*, 176 F.3d 283, 287 (5th Cir. 1999)).

Additionally, "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (quotations omitted). "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (quotations omitted). Among other things, to establish standing, a plaintiff must have suffered an injury in fact—that is, the "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted).

The case or controversy requirement also serves as a basis for the ripeness doctrine. *See Choice Inc. of Texas v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012). "The ripeness doctrine's 'basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *Id.* (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)). "[W]hen the case is abstract or hypothetical," the ripeness doctrine favors dismissal. *Id.* (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987)).

## III.        Federal Rule of Civil Procedure 12(b)(6)

"To survive a motion to dismiss under Rule 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *La. Oil & Gas Interests, LLC v. Shell Trading U.S. Co.*, 949 F.3d 915, 918 (5th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

## ARGUMENT

**I.    Plaintiffs have not established that this Court has subject matter jurisdiction.**

**A.    Plaintiffs have not challenged a final agency action.**

As Defendants' Motion to Dismiss sets forth fully, Plaintiffs have not challenged final agency action that could give rise to a viable claim under the APA.  *See* Mot. to Dismiss at 10–13; 5 U.S.C. § 704.   The question presented by that motion is not whether ATF's guidance documents (authenticated or otherwise) are final or not, as the R&R mistakenly determined.  The question is what Plaintiffs are challenging.  And as much as Plaintiffs attempt to characterize ATF as having established a new regime that "rewrites" the GCA, no document to which they point does so.

To begin, ATF's enforcement policy does not displace the GCA's willfulness requirement; instead, the policy provides for license revocation when, after a hearing (if requested), any of five serious violations of the GCA are determined to have been committed willfully.  *See, e.g.,* White House Fact Sheet; DOJ Announcement; ATF Memo.   By contrast, Plaintiffs challenge a hypothetical "Enforcement Policy" by which ATF will enforce the GCA *by ignoring both the Act and ATF's official policies*.   That Plaintiffs do not challenge official ATF policy is readily apparent from the policy documents themselves, which repeatedly echo the GCA's willfulness requirement and do not suggest ATF is implementing a new policy to revoke licenses based on "inadvertent paperwork errors" or creating a "strict liability regime."  *Compare* ATF Memo at 2; White House Fact Sheet at 2 *with* Compl. at 2, ¶ 41.  Plaintiffs assert without basis that ATF has begun revoking licenses based on "inadvertent paperwork errors," *see, e.g.,* Compl. at 2; ¶¶ 38–41, but apart from an alleged uptick in enforcement actions, they cite no facts to substantiate that hypothetical policy, nor any evidence to support any divergence between the agency's written policy and its enforcement in practice.   Tellingly, the Complaint avoids citing the actual text of the policy documents, and it cites no policy document language requiring revocation for inadvertent violations.   Where the Complaint does cite the text of

the policy documents, it conveniently omits key references to the willfulness requirement that provide

critical context. *Compare* Compl. ¶ 37 (quoting ATF Memo but omitting its reference to "willfully

committed" violations) *with* ATF Memo at 2. Because the Complaint cannot challenge ATF's actual

policies, it "appear[s] to have attached a 'policy' label to [its] own amorphous description of the

[ATF's] practices. But a final agency action requires more." *Bark v. U.S. Forest Serv.*, 37 F. Supp. 3d

41, 50 (D.D.C. 2014).

The R&R errs in its consideration of final agency action by looking to an unauthenticated

document that purports to be an internal ATF guidance document: ATF-O-5370.1E. As noted, ATF's

internal guidance is set forth in ATF-O-5370.1F, which is nonpublic but available for the Court's *ex*

*parte* and *in camera* review. The Complaint hardly mentions such a document and alleges merely that

"there will be a new enforcement order—a new ATF O 5370.1D—that will set forth revised

procedures for processing FFL inspections that result in findings of the violations listed above or

other violations that merits revocations." Compl. ¶ 36 (quotations omitted). The Complaint does not

address the language of any ATF-O-5370.1 enforcement order, nor does it allege that such an order,

specifically, is the final agency action Plaintiffs purport to challenge. Only in Plaintiffs' Opposition is

the enforcement order recast as the supposed final agency action, but "[i]t is axiomatic that a complaint

may not be amended by the briefs in opposition to a motion to dismiss." *Jaraba v. Blinkin*, 568 F.

Supp. 3d 720, 728 (W.D. Tex. 2021) (quoting *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995

(8th Cir. 1989)); *see also Roebuck v. Dothan Sec., Inc.*, 515 Fed. App'x 275, 280 (5th Cir. 2013); *Abbott v.*

*Cornwell*, No. 4:18-cv-170-DGK, 2018 WL 3520144, at *2 (W.D. Mo. July 20, 2018). And Plaintiffs

raise the text of ATF-O-5370.1E for the first time in their Sur Reply. *See* Pls.' Sur Reply.

The R&R's reliance on ATF-O-5370.1E is even more perplexing given that Plaintiffs made

no attempt to authenticate the version of the document they submitted, which, supposedly was leaked

and posted on the internet. *See* Ex. A to Sur Reply, ECF No. 28. Moreover, the document Plaintiffs

submitted does not even purport to be the operative version of the enforcement order: ATF-O-53701.F.  *See* Defs.' Opp. to Sur Reply at 2.

But even the text of the unauthenticated enforcement order that Plaintiffs submitted does not support the inference that Plaintiffs are challenging a policy ATF has in fact adopted.  Again, Plaintiffs' allegations are that ATF is diverting from the GCA by imposing a "strict liability" regime.  As a general matter, the willfulness requirement is acknowledged and addressed repeatedly throughout the document, and it is obvious that ATF has not written the requirement out of the statute in the manner Plaintiffs propose.  *See* Ex. A to Sur Reply.[2]  The document is replete with references echoing the willfulness inquiry as a statutory cornerstone of all license revocation proceedings.

Moreover, even the portion of the order on which Plaintiffs and the R&R rely—the section titled "Revocation under 18 U.S.C. § 923(e)," Ex. A to Sur Reply at 6–8—illustrates that ATF pursues license revocation only for willful violations.  That section *begins* with the acknowledgment that "ATF must establish willfulness to proceed with revocation under 18 U.S.C. § 923(e)."  *Id.* at 6.  There is no qualification on this language: ATF acknowledges that it must establish willfulness to proceed with

---

[2] *See id.* at 2 ("Pursuant to 18 U.S.C. § 923(e), ATF may revoke a federal firearms license for willful violations of the GCA and its implementing regulations . . . . The term willful means a purposeful disregard of, or a plain indifference to, or a reckless disregard of a known legal obligation."); *id.* ("Therefore, even in cases where violations appear willful, the field should consider the following questions when recommending administrative action: [listing mitigating factors]."); *id.* at 3 ("ATF has zero tolerance for willful violations that greatly affect public safety and ATF's ability to trace firearms recovered in violent crimes."); *id.* at 3–4 (noting that sending warning letters and warning conferences do not require willfulness determinations); *id.* at 5 ("In instances in which it is determined that the violations were not willful and/or the FFL is likely to come into compliance, the [warning conference] shall be the final administrative action."); *id.* at 6 ("ATF must establish willfulness to proceed with revocation under 18 U.S.C. § 923(e)."); *id.* ("ATF may also revoke for any other willful first-time violation as it deems appropriate."); *id.* ("ATF should also consider revocation when an FFL has willful violation(s) of the GCA and when factors are present that have a direct impact on public safety[.]"); *id.* (outlining the ways "ATF can establish the knowledge element of willfulness"); *id.* at 7 ("Revocation is an appropriate licensing action under section 923(e) and is appropriate in response to the discovery of the following willful violations which directly impact the public. The below five items (a)-(e) merit revocation if committed willfully unless extraordinary circumstances exist.").

revocation for any reason.  The section further explains that "[r]evocation is an appropriate licensing action under section 923(e) and is appropriate in response to the discovery of the following willful violations which directly impact the public," and that the five violations identified by the zero-tolerance policy "merit revocation of the license *if committed willfully* unless extraordinary circumstances exist."  *Id.* at 7 (emphasis added).  And although this section references violations that "inherently demonstrate willfulness," read in context, it is evident that this language is explaining that even single violations demonstrating willfulness may provide a basis for revocation, even without "a history of prior violations" by the FFL.  *Id.* at 6.  The rest of the section makes clear that ATF has not merely declared certain violations "inherently willful," such that ATF need not find willfulness, as Plaintiffs suggest.  *Id.*  Thus, the order demonstrates that ATF will revoke licenses based on the five violations identified in the zero-tolerance policy, but only if those violations are determined to be willful.

Additionally, the R&R makes much of the notion that ATF-O-5370.1E withdraws previously held discretion.  *See* R&R at 11–12.  But the Complaint hardly raises this issue, and to the extent it does, it's just one piece of the purported "final agency action" at issue here: Plaintiffs' challenge isn't that the withdrawal of ATF's enforcement discretion, on its own, violates the GCA and Second Amendment—it's that ATF has withdrawn enforcement discretion in a way that contradicts the terms of ATF's statutory enforcement authority.  But as previously explained, the language of the unauthenticated enforcement order does not support the existence of that contradiction.

Simply put, there is no final agency action here of the nature that Plaintiffs challenge: ATF has not adopted any policy that provides for the revocation of federal firearms licenses absent a demonstration of willfulness.  And Plaintiffs identify none.  Instead, Plaintiffs challenge how they imagine ATF will apply its guidance in divergence from its stated policies—even though Plaintiffs' own history with ATF undermines, rather than supports, their theory.  And that imagined, speculative, divergent application of policy is not final agency action amenable to judicial review.  In

recommending otherwise, the R&R plainly erred.

**B.      Plaintiffs lack standing.**

Plaintiffs' claims are equally flawed when viewed through the lens of standing.  To establish Article III standing, a plaintiff "must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal citations omitted).  To determine whether a plaintiff's injury is concrete, courts consider whether the injury "actually exist[s]," and whether it is "real, and not abstract." *Spokeo*, 504 U.S. 555 (citation omitted).  Such injury must be "actual or imminent, not conjectural or hypothetical," or at least, "certainly impending." *Lujan*, at 504 U.S. at 560, 564 n.2.  "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes." *Id.* at 564 n.2 (quotations omitted).

The Complaint does not allege that Plaintiffs have already suffered an injury-in-fact, or that any such injury is certainly impending.  ATF has not revoked Plaintiffs' license, nor has ATF threatened to initiate revocation proceedings; instead, Plaintiffs seek pre-enforcement review of ATF's hypothetical application of policies that do not say what Plaintiffs contend they mean.  But pre-enforcement review is warranted only "under circumstances that render the threatened enforcement sufficiently imminent," and plaintiffs must allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–59 (2014) (quoting *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979)); *see also Babbitt*, 442 U.S. at 298 ("A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement."); *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020).  "[P]ersons having no fears of [enforcement] except those that are imaginary or

13

speculative, are not to be accepted as appropriate plaintiffs." *Babbitt*, 442 U.S. at 298 (quoting *Younger v. Harris*, 401 U.S. 37, 42 (1971)).

Plaintiffs' fears of enforcement are imaginary and speculative.  They have not alleged that they intend to willfully violate any of the five serious GCA violations set forth in the zero-tolerance policy, nor is there any credible threat that ATF would revoke Plaintiffs' license under its policies, real or imagined.  *See, e.g.,* Compl. § 51 ("Plaintiffs seek to abide by the Act[.]").  And, as demonstrated by ATF's most-recent inspections, Plaintiffs are at no actual risk of revocation.  Following both the 2018 and the 2023 inspection, ATF merely issued Plaintiffs reports of violations and indicated that it did not detect willful violations requiring further administrative action.

The R&R relies on Plaintiffs' supposed contention that "the new zero-tolerance policy has . . . increased [Plaintiffs'] compliance efforts and costs," R&R at 18, but neither the Complaint itself nor any of Plaintiffs' other filings contain factual allegations to support that Plaintiffs have or must undertake additional compliance efforts in light of ATF's enforcement policy.  *See generally* Compl.; *see also* Pls.' Opp. to Mot. to Dismiss; Pls.' Sur Reply.  "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction," and "[a]ccordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist."  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  Plaintiffs have failed to carry that burden on this theory of standing.

Further, although the R&R concludes "Plaintiffs have adequately pleaded that they are the object of an increased regulatory burden sufficient to establish standing," R&R at 18, Plaintiffs' obligation not to willfully violate the GCA has not changed, nor would any relief in this action change that obligation.  Courts have consistently held that ATF has the authority to revoke a federal firearms license for any single willful violation of the Act.  *See Fairmont Cash Mgmt., LLC v. James*, 858 F.3d 356, 362 (5th Cir. 2017) ("A single willful violation [of the GCA] authorizes the ATF to revoke the violator's FFL, regardless [of] how severe[.]"); *see also Simpson v. Attorney Gen. of the U.S.*, 913 F.3d 110,

113–14 (3d Cir. 2019) ("Under the GCA, the ATF may revoke an FFL if the license holder willfully violated any provision of the GCA or any rule or regulation prescribed under the GCA."); *Armalite, Inc. v. Lambert*, 544 F.3d 644, 647 (6th Cir. 2008) ("Because the government may revoke a license if the licensee willfully violates 'any' provision of the GCA, a single willful violation of the GCA, or of its rules and regulations, suffices to revoke a firearms license." (internal citations omitted)).  Thus, ATF has long had the statutory authority it is exercising now, and Plaintiffs have always had the same burden to comply fully with the GCA, or at the very least, not to willfully violate the Act.  Simply put, there are no burdens plausibly alleged that arise from the policies to which Plaintiffs' point.

Lastly, the R&R's determination that "as federal firearms licensees, Plaintiffs are the object of the enforcement policy," R&R at 17, and therefore, have standing to challenge the policy pursuant to *Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258, 264 (5th Cir. 2015), rests on the faulty premise that the enforcement approach Plaintiffs challenge actually exists.  But as previously explained, Plaintiffs aren't subject to the enforcement policy they challenge because they are not subject to revocation for inadvertent violations.  By contrast, there was no dispute regarding the substance of the policy at issue in *Contender Farms*, and thus, this case is readily distinguishable.  Thus, Plaintiffs lack standing.

## C.  Plaintiffs' claims are not ripe.

The ripeness doctrine also demonstrates that Plaintiffs' claims are not justiciable.  Article III provides that "federal courts have the power to decide only actual cases or controversies," and to that end, the "ripeness doctrine's basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Choice Inc.*, 691 F.3d 714–15 (5th (citation omitted); *see also NextEra Energy Capital Holdings, Inc. v. Lake*, 48 F.4th 306, 315–16 (5th Cir. 2022), *pet. for cert. filed*, No. 22-601 (U.S. Dec. 30, 2022).  In determining whether a case is ripe, the "key considerations" are: (1) "the fitness of the issues for judicial decision," and (2) "the hardship to

the parties of withholding court consideration." *Choice Inc.*, 691 F.3d at 715 (quotations omitted).

These considerations fit neatly with Defendants' final agency action arguments. First, because there is no actual final agency action for the Court to review, there is no clean, purely legal question presented. "A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." *Id.* As explained previously, the Complaint does not challenge ATF's actual written policy. Because Plaintiffs' allegations are conjectural as to how ATF may enforce its policies, a "factual record of an actual or imminent application" of the alleged policy that is "sufficient to present the constitutional issues in clean-cut and concrete form" is lacking. *Renne v. Geary*, 501 U.S. 312, 321–22 (1991) (citation omitted). Plaintiffs' claims are thus not fit for judicial determination.

Second, "the plaintiff must show some hardship in order to establish ripeness." *Choice Inc.*, 691 F.3d at 715 (citation omitted). But Plaintiffs will suffer no hardship if the Court declines to decide this matter now. The Complaint does not allege that the operation of Plaintiffs' business has been affected, and as previously explained, ATF has not imposed any "new, affirmative obligation[s]." *Id.* Instead, Plaintiffs are merely "required to comply with existing and applicable . . . federal statutes or regulations regardless of" any shift in ATF's enforcement policy. *Id.* at 716. Plaintiffs already "seek to abide by the Act and [have] instituted remedial measures to comply with the law," and therefore, Plaintiffs need not modify their behavior. *See* Compl. ¶ 51. And in the event ATF recommended revocation of Plaintiffs' license in the future, as explained previously, Plaintiffs are entitled to de novo review of that determination in district court.

The R&R relies on a takings clause case stating that facial challenges to enactments effecting regulatory takings are ripe when the enactment is adopted. *See* R&R at 19 (citing *Suitum v. Tahoe Reg'l Plan. Agency*, 520 U.S. 725, 736 n.10 (1997) ("Such facial challenges to regulation are generally ripe the moment the challenged regulation or ordinance is passed, but face an uphill battle, since it is difficult

to demonstrate that mere enactment of a piece of legislation deprived [the owner] of economically

viable use of [his] property." (internal citations and quotations omitted)).  Not only has ATF never

adopted the policy Plaintiffs challenge, but the Fifth Circuit has continued to subject facial challenges

outside the takings context to ripeness requirements.  *See, e.g., Choice Inc.*, 691 F.3d at 718 (affirming

on ripeness grounds dismissal of facial challenge to "Zero Tolerance Policy" whereby the Louisiana

Department of Health and Hospitals was suspending or revoking facilities' licenses without providing

notice of alleged violations or the opportunity to correct); *see also Choice Inc. v. Greenstein*, Br. of Pls.-

Appellants, 2011 WL 2000084, at *3 (May 16, 2011).  Other circuits have too.  *See City & Cnty. of San*

*Francisco v. Garland*, 42 F.4th 1078, 1087 (9th Cir. 2022) ("Plaintiffs' facial challenges are no longer ripe

because 'any future injury [i]s purely conjectural' at 'the time the [] case reached this Court[.]'"); *Miller*

*v. City of Wickliffe*, 852 F.3d 497, 506 (6th Cir. 2017) ("Facial challenges, like as-applied ones, require

ripeness as well as standing.").  Thus, Plaintiffs' claims are not ripe for review.

## II.     Plaintiffs' Complaint fails to state a claim entitling them to relief.

The R&R also errs in recommending that the Court reject Defendants' argument that the

Complaint fails to state a claim upon which relief can be granted.  Plaintiffs' claims fail on the merits

because ATF's actual enforcement policies comply with the requirements of the GCA.  And to the

extent that Plaintiffs contend that ATF's pattern or practice of enforcement diverges from its written

policies, Plaintiffs have failed to allege facts that plausibly support that any such policy exists.

Plaintiffs' core allegation is that ATF will act contrary to law and violate Plaintiffs' and others'

Second Amendment rights by eliminating the GCA's willfulness requirement.[3]  *See* Compl. ¶¶ 64–65

("The Act requires violations to be 'willful[]' in order to result in revocation of an FFL.   The

---

[3] The Complaint does not allege that the GCA is unlawful or violates the Second Amendment.
Instead, Plaintiffs' Second Amendment claim is conditioned upon the risk that his "FFL is revoked
under [ ATF's] unlawful enforcement policy." Compl. ¶ 70. Thus, this Rule 12(b)(6) Motion addresses
only whether ATF's enforcement policy is in fact unlawful.

Enforcement Policy is inconsistent with the Act because it sweeps in inadvertent violations and does not require violations to be intentional, reckless, or licensees were indifferent to the Act's requirements.  As a result, Plaintiffs are subject to a regulation that is contrary to law[.]").  But the documents Plaintiffs reference throughout the Complaint repeatedly emphasize that only willful violations may serve as a basis for revocation.

For instance, the White House Fact Sheet makes clear that the zero-tolerance policy applies only to willful violations, and only certain willful violations.  The header of the applicable section states that it is "[e]stablishing zero tolerance for rogue gun dealers that willfully violate the law."  White House Fact Sheet at 2.  It continues, clarifying that "[t]oday, the Justice Department is announcing a new policy to underscore zero tolerance for willful violations of the law by federally licensed firearms dealers that puts public safety at risk."  *Id.* at 2–3.  And it specifies that "ATF will seek to revoke the licenses of dealers the first time that they violate federal law by willfully" committing one of five violations.  *Id.* at 3.

The DOJ Announcement does not diverge from this language.  It reiterates that ATF will seek to revoke licenses pursuant to the zero-tolerance approach only "for those dealers who willfully break the law and put public safety at risk by violating certain ATF requirements."  DOJ Announcement at 5.  Further, the Announcement highlights that DOJ prefers to partner with licensed firearms dealers, rather than punish them.  *See id.* ("Licensed firearms dealers are often our first line of defense against gun crime and a source of critical enforcement information."); *id.* ("The Department issue a new policy explaining how responsible conduct by federally licensed firearms dealers may play a role in its related enforcement decisions—rewarding self-reporting of noncompliance and other proactive behavior that helps to prevent tragedy.").  Such language would be entirely inconsistent with a policy of revoking FFLs for inadvertent paperwork errors.

The ATF Memo also echoes the willfulness requirement.  It writes that "[a]bsent extraordinary

18

circumstances, an inspection that results in a finding that an FFL has willfully committed any of the [five listed] violations shall result in a revocation recommendation." ATF Memo at 2. Additionally, the serious nature of the five violations themselves supports that the policy is not to revoke FFLs for inadvertent violations of law. For example, the five revocable violations include transferring a firearm to a prohibited person, failing to conduct a required background check, falsifying records, failing to respond to an ATF trace request, and failing to permit ATF to conduct a lawful inspection. *See id.* Although a showing of willfulness is separately required, the gravity of these violations underscores that ATF's policy is not to revoke licenses based on inadvertent mistakes or paperwork errors.

And, as set forth above, even the version of ATF-O-5370.1E that Plaintiffs have submitted acknowledges, as it must, that "ATF must establish willfulness to proceed with revocation under 18 U.S.C. § 923(e)," including with respect to revocations pursuant to the zero-tolerance policy. Ex. A to Sur Reply at 6; *see also supra* pp. 11–12. Nor does the document support Plaintiffs' charge that ATF has "radically chang[ed] how the ATF conducts FFL investigations." R&R at 20 (quoting Pls.' Opp. to Mot. to Dismiss at 16–18). The R&R errs in taking this unsupported assertion at face value.

Separate from the text of the policy documents, Plaintiffs have not alleged facts to support that ATF has adopted a pattern or practice of recommending revocations based on violations that are not willful. Courts frequently decline to permit plaintiffs to assert pattern or practice claims under the APA, as such claims conflict with principles of APA review. *See Del Monte Fresh Produce N.A., Inc. v. U.S.*, 706 F. Supp. 2d 116, 119–20 (D.D.C. 2010) (pattern or practice claim in tension with requirement that final agency action be discrete). Where courts do permit such claims, they first "assess whether [a] Complaint shows an unwritten policy," by considering a "Complaint's pattern allegations." *Al Otro Lado, Inc. v. Nielsen*, 327 F. Supp. 1284, 1320 (S.D. Cal. 2018). But Plaintiffs fail to allege facts to support the existence of any pattern indicating the existence of an unwritten policy. Instead, Plaintiffs merely "attach[] a 'policy' label to [their] own amorphous description of [ATF's] practices." *Bark*, 37

F. Supp. 3d at 50.  Plaintiffs do not allege their license has been revoked or ATF has initiated revocation proceedings against them for inadvertent violations.  Nor do they allege facts to support that ATF has a pattern of revoking other licenses for inadvertent violations.  Instead, Plaintiffs offer sweeping speculation that ATF's unwritten policy is what they say it is by citing a general increase in the number of revocation proceedings.  Plaintiffs cites no evidence to verify the accuracy of these statistics and allege no facts linking that increase to revocations based on inadvertent violations.  Indeed, the Complaint does not include even a single anecdote whereby ATF allegedly revoked a license for an inadvertent violation.  Plaintiffs has not plausibly pleaded a pattern or practice claim.

The R&R addresses the gap between fact and allegation by inexplicably crediting Plaintiffs' contention that ATF has "newly announced" an "intent to rigidly define some violations as 'willful,' regardless of the licensee's intent."  R&R at 20.  But nowhere does this announcement appear, outside of Plaintiffs' speculative pleadings and arguments.  *See, e.g., Anzio Ironworks, Corp. v. Gerber*, No. 8:20-cv-2132-KKM-AAS, 2022 WL 1500856 at *3 (M.D. Fla. May 12, 2022) (administrative hearing and de novo review focusing on willfulness inquiry).  There is no redefinition of willfulness; only a commitment to recommend certain willful violations for revocation, even absent a history of prior violations.  *See supra* pp. 11–12.

Thus, the Complaint has failed to state a claim because it has not alleged facts that plausibly support that ATF's current policy is contrary to law as set forth in the GCA.  The R&R errs in recommending otherwise.

## CONCLUSION

For the reasons set forth above, the report and recommendation should not be adopted, and Plaintiffs' Complaint should be dismissed.

Dated: August 8, 2023                                        Respectfully submitted,


                                                             BRIAN M. BOYNTON

Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

*/s/ Taylor Pitz*
Taylor Pitz (CA Bar No. 332080)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Phone: (202) 305-5200
Email: taylor.n.pitz@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2023, I electronically filed the foregoing with the Clerk of

Court using the CM/ECF system which will send notification of such filing to the following:

Chance D. Weldon
Texas Public Policy Foundation
901 Congress Avenue
Austin, TX 78701

Nicholas R. Barry
America First Legal Foundation
611 Pennsylvania Ave SE #231
Washington, DC 20003

Robert E. Henneke
Texas Public Policy Foundation
901 Congress Avenue
Austin, TX 78701

Nate Curtisi
Texas Public Policy Foundation
901 Congress Avenue
Austin, TX 78701

Matthew Robert Miller
Texas Public Policy Foundation
901 Congress Avenue
Austin, TX 78701

*/s/ Taylor Pitz*
TAYLOR PITZ
Trial Attorney
U.S. Department of Justice