**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS**

MICHAEL CARGILL, *et al.*,

       *Plaintiffs*,

  v.

BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES, *et al.*,

       *Defendants*.

Case No. 1:22-cv-01063-DAE

## DEFENDANTS' REPLY IN SUPPORT OF OBJECTIONS TO REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

## INTRODUCTION

Plaintiffs' arguments are a moving target, but their claims are anchored to a single allegation: that ATF's enforcement policy violates the Gun Control Act ("GCA"), and therefore the Administrative Procedure Act ("APA") and the Second Amendment, because it eliminates the GCA's willfulness requirement.

The trouble for Plaintiffs is that ATF has not eliminated the willfulness requirement. Neither the public-facing policy documents on which Plaintiffs' Complaint relies, nor the document Plaintiffs submitted as ATF's previous enforcement order, nor ATF's current enforcement order support that ATF has eliminated the GCA's willfulness requirement. And Plaintiffs have not otherwise alleged facts to support that ATF has done so: Plaintiffs' own license has not been revoked for a violation that was not determined to be willful, and Plaintiffs have not pointed to any other license that has been revoked for a violation that was not willful. Nor do Plaintiffs assert any other basis by which the enforcement policy is unlawful. Accordingly, Plaintiffs fail to challenge a final agency action, and even if they did, their claim that ATF has acted unlawfully has no merit. Either way, the result is the same: there is no wrong for this Court to right.

Even setting this deficiency aside, Plaintiffs are not proper litigants. Plaintiffs' license has not been revoked, and as Plaintiffs' own inspection supports, Plaintiffs are not at any imminent risk of revocation for inadvertent violations—their core asserted potential injury for standing purposes. Plaintiffs have also failed to adequately allege increased compliance costs, or any other injury or hardship they have suffered as a result of ATF's enforcement policy. This is unsurprising, as Plaintiffs, like all federal firearms licensees, have always had an obligation to comply fully with the requirements of the GCA, and ATF has always had the statutory authority to revoke any license for a single willful violation. Indeed, even if Plaintiffs were granted the full relief they seek—a permanent injunction of ATF's enforcement policy—ATF would still have the statutory authority to revoke any license for any

willful violation.

The Magistrate Judge's Report and Recommendation ("R&R") errs in concluding to the contrary, and accordingly, the Court should decline to adopt the R&R. The Court instead should dismiss Plaintiffs' Complaint.

## DISCUSSION

I. **ATF's enforcement policy does not abrogate the GCA's willfulness requirement.**

Whether relevant to final agency action or to Plaintiffs' failure to state a claim, ATF has not "effectively written the word 'willful' out of the [GCA] by instituting a policy of revoking [licenses] for inadvertent paperwork errors." Compl. at 2, ECF No. 1. This is the core allegation of Plaintiffs' Complaint, and it is baseless.

No document before the Court supports that ATF has adopted a policy whereby it will revoke the licenses of federal firearms licensees ("FFLs") for violations not determined to be willful. As Plaintiffs acknowledge, the policy documents cited throughout their Complaint repeatedly reference the GCA's willfulness requirement, and these documents do not support that ATF has adopted a policy abrogating that requirement. *See* Pls.' Response to Defs.' Objs. at 12, ECF No. 35 ("Pls.' Response") (citing "references to 'willfulness' in [ATF's] public pronouncements"); *see also* Defs.' Objs. to R&R at 18–19, ECF No. 33 ("Defs.' Objs."); Defs.' Mot. to Dismiss at 3–5, 12, 18–19, ECF No. 7 (citing repeated references to the willfulness requirement in the White House, Fact Sheet: Biden-Harris Administration Announces Comprehensive Strategy to Prevent and Respond to Gun Violence and Ensure Public Safety; Department of Justice: Violent Crime Reduction Efforts; and ATF, Memorandum on the Implementation of the Administration's Comprehensive Strategy to Prevent and Respond to Gun Crime and Ensure Public Safety).

Likewise, neither the document Plaintiffs submitted as ATF-O-5370.1E, nor the authentic and current version of ATF's enforcement order that Defendants have now presented to the Court, ATF-

O-5370.1F,[1] supports that ATF has "remove[d] 'willfully' from the statute."  Pls.' Response at 12 (quoting Compl. ¶ 41, ECF No. 1).[2]  Both documents explicitly state that "ATF *must establish willfulness* to proceed with revocation under 18 U.S.C. § 923(e)."  *See* Ex. A to ECF 28 at 6; ECF No. 39-1 at 6 (emphasis added).  This alone refutes Plaintiffs' characterization of the policy.  But if more were needed, both also explain that "[p]ursuant to 18 U.S.C. § 923(e), ATF may revoke a federal firearms license for willful violations of the GCA and its implementing regulations," and that the "term willful means a purposeful disregard of, or a plain indifference to, or reckless disregard of a known legal obligation."  Ex. A to ECF No. 28 at 2; ECF No. 39-1 at 2.  This definition accords with how courts have long defined willfulness in the license revocation context.  *See Fairmont Cash Mgmt., LLC v. James*, 858 F.3d 356, 362 (5th Cir. 2017) ("A license holder commits a willful violation under § 923 if the licensee knew of his legal obligation and purposefully disregarded or was plainly indifferent to [that obligation.]"); Pls.' Response at 12 (quoting same).[3]

Plaintiffs also argue that Defendants' new enforcement policy "deletes" the requirement that ATF show that a licensee "knew its legal obligations under the GCA," and "adds new states of willfulness that don't necessarily show willfulness, such as 'substantial experience as an FFL.'"  Pls.' Response at 7 (emphasis omitted).  Plaintiffs are mistaken.  Although ATF-O-5370.1F includes additional types of evidence which "can establish the knowledge element of willfulness," *see* Ex. A to ECF No. 28 at 6; ECF No. 39-1 at 6–7, looking to these types of evidence is nothing new.  For

---

[1] The parties appear to agree that the Court may take judicial notice of ATF-O-5370.1F.  *See* Pls.' Response at 3 n.2; Defs.' Notice of Authority at 1, ECF No. 36.

[2] As previously noted, Plaintiffs' shift in focus to ATF's enforcement order as the relevant final agency action reflects an improper amendment of their Complaint, *see* Defs.' Objs. at 10 (citing *Jaraba v. Blinkin*, 568 F. Supp. 3d 720, 728 (W.D. Tex. 2021)).

[3] Contrary to Plaintiffs' assertions, Defendants' Objections "deal with the substance" of ATF-O-5370.1E in detail, *see* Pls.' Response at 13, and those arguments apply with equal force to ATF-O-5370.1F.  *See* Defs.' Objs. at 11–12, 19 (explaining why the language of ATF-O5370.1E does not support that ATF has adopted a strict liability regime).

3

instance, courts reviewing federal firearms license revocations *de novo* have long considered an FFL's experience as a licensee to be relevant to the FFL's knowledge of legal obligations. *See Borchardt Rifle Corp. v. Cook*, 727 F. Supp. 2d 1146, 1166 n.10, 1169 (D.N.M. 2010) (explaining a licensee's "experience" and "familiarity with the requirements of the [GCA] and regulations" bear on knowledge (quotations omitted); *see also Sturdy v. Bentsen*, 129 F.3d 122 (Table), 1997 WL 611765 at *1–*2 (8th Cir. 1997) (finding licensee's "extensive experience as a firearms dealer" helped demonstrate "he was well aware of record-keeping requirements under federal law"); *see also CEW Properties, Inc. v. DOJ*, 979 F.3d 1271, 1279 (10th Cir. 2020) (finding signed acknowledgment form supported willfulness); *Simpson v. Att'y Gen.*, 913 F.3d 110, 114–15 (3d Cir. 2019) (same).  In any event, although Plaintiffs suggest that these types of evidence, alone, establish willfulness, the enforcement order makes clear that ATF must also demonstrate a "purposeful disregard of, or a plain indifference to, or reckless disregard of" a known legal obligations, same as it always has. Ex. A to ECF No. 28 at 2; ECF No. 39-1 at 2.  Thus, there is no support for Plaintiffs' contention that ATF's enforcement policy has eliminated or otherwise "redefine[d]" willfulness contrary to the GCA. Pls.' Response at 7.

Finally, Plaintiffs' emphasis on ATF's withdrawal of agency discretion and shift to zero tolerance for certain willful violations, *see* Pls.' Response at 7 (citing Ex. A to ECF No. 28 at 3–4), avails Plaintiffs nothing: Whether ATF refers *willful* violations for revocation some, most, or all of the time is an enforcement discretion question, *Heckler v. Chaney*, 470 U.S. 821, 831–33 (1985), not a question of whether ATF's enforcement approach complies with the GCA's willfulness requirement, Defs.' Objs. at 12.  By definition, the referral of willful violations for revocation comports with the GCA. *Id.*; *see also* 18 U.S.C. § 923(e) (ATF "may, after notice and opportunity for hearing, revoke any license issued under this section if the holder of such license has willfully violated any provision of this chapter or any rule or regulation prescribed by the Attorney General[.]"). Thus, this argument provides no support for Plaintiffs' claims.

For all these reasons, Plaintiffs' contention that ATF has adopted a policy eliminating the GCA's willfulness requirement is directly refuted by the text of ATF's written policy. Because Plaintiffs only purport to challenge a policy that eliminates willfulness, they have failed to challenge final agency action. As a corollary, because Plaintiffs' characterization of ATF's policy is refuted by the text of ATF's written policies, Plaintiffs have also failed to allege sufficient factual matter to plausibly claim that ATF has eliminated the willfulness requirement. Plaintiffs therefore also fail to state a claim upon which relief can be granted.

To the extent that Plaintiffs suggest that ATF is somehow applying an enforcement policy that diverges from its own written policy documents, Plaintiffs' challenge also lacks a reviewable final agency action. *See, e.g.*, Pls.' Response at 12 ("Plaintiffs alleged that the effect of the new Enforcement Policy is to remove 'willfully' from the statute. . . . But this is a factual argument that should be settled, at the earliest, on summary judgment. . . . The facts must be resolved through discovery." (citations omitted)). A plaintiff's "amorphous description" of agency practices does not amount to a reviewable challenge to final agency action. *Bark v. U.S. Forrest Serv.*, 37 F. Supp. 3d 41, 50 (D.D.C. 2014). And indeed, Plaintiffs' own ripeness arguments belie such assertions. *See* Pls.' Response at 11 ("Whether the Enforcement Policy violates the Gun Control Act or the Constitution are purely legal questions."). But in any event, Plaintiffs have failed to allege facts to support such a divergence, as Plaintiffs' own license was not revoked for a violation that was not willful, and Plaintiffs have not pointed to any other FFL whose license was revoked for a violation that was not determined to be willful.

Accordingly, the R&R errs in recommending both that Plaintiffs have challenging actual final agency action and have plausibly stated a claim for relief.

## II.        Plaintiffs are not proper litigants.

Even aside from the substance of Plaintiffs' claims, Plaintiffs' claims are not justiciable because Plaintiffs lack standing to sue and their claims are not ripe.

To begin, the statistics cited in Plaintiffs' Response not only undermine the allegations of their Complaint,[4] but underscore the speculative nature of any claimed injury or hardship. Plaintiffs characterize the enforcement policy as "an unprecedented change" in ATF's enforcement of the GCA, claiming that revocations have "skyrocketed." Pls.' Response at 1. But as Plaintiffs also explain, *less than 2% of inspections conducted this year have resulted in license revocations. Id.* at 1 n.1. Such a low percentage of revocations undermines the unsupported notion that ATF is revoking licenses for inadvertent paperwork violations—a strict liability standard that Plaintiffs allege would be "virtually impossible" for FFLs to meet. Compl. ¶ 52. Additionally, when the total number of FFLs is considered, the annual percentage of revocations is significantly lower than 2% because ATF inspects only a fraction of FFLs each year. For instance, in 2022, there were 136,563 active FFLs, but the agency conducted only 6,979 inspections, and only 90 of those inspections resulted in license revocations—meaning that only .066% of all FFLs had their licenses revoked following a compliance inspection. ATF, Fact Sheet – Facts and Figures for Fiscal Year 2022, https://perma.cc/MC5R-EEQY. Such a minute likelihood of future revocation—an action which, if it occurred, Plaintiffs could challenge in district court—is a far cry from "actual or imminent" or "certainly impending" injury, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 564 n.2 (1992) (citations omitted), or even "circumstances that render [] threatened enforcement sufficiently imminent," *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014).

Plaintiffs attempt to show that their fears of enforcement are not speculative, but they fail to do so. Pls.' Response at 9–10. While Plaintiffs need not "confess that [they] will in fact violate" the law they challenge, they must at least "allege[] an intention to engage in a course of conduct" that is "arguably proscribed" by it. *Susan B. Anthony List*, 573 U.S. at 161–63 (cleaned up and citations

---

[4] *Compare* Compl. at 2 (arguing that since adoption of the enforcement policy, "revocations have increased over 500%"), *with* Pls.' Response at 1 ("The likelihood Defendants [sic] revoking an FFL licensee after an inspection has increased by 185.5%.").

omitted).  Plaintiffs, however, have not alleged that they intend to commit willful violations of the GCA, which is all the GCA and enforcement policy proscribe.  *See supra* pp. 2–4.  And although Plaintiffs claim that ATF "could change [its] mind at any moment" with respect to the revocation of Plaintiffs' license, Pls.' Response at 10, ATF has made clear that the violations identified during its recent inspection of Plaintiffs' business do not "require further administrative action" or "implicate the zero-tolerance policy," Defs.' Further Response to Notice of Change of Material Fact at 2, ECF No. 32 ("Defs.' Further Response").  ATF also stated that it "does not intend to take any other administrative action or take any steps to revoke Plaintiffs' license based on the findings of [that] inspection." *Id.*

Additionally, Plaintiffs' likelihood of future inspection is of little relevance.  Pls.' Response at 10.  Plaintiffs have not challenged ATF's right to conduct routine inspections under the GCA, and as Plaintiffs' own statistics indicate, inspection is no portent of revocation.  *Id.* at 1 n.1.  In any event, there is no indication that Plaintiffs will be inspected again imminently, as the GCA provides for routine inspections "not more than once during any 12-month period." 18 U.S.C. § 923(g)(1)(B)(ii)(I). Further, as Plaintiffs' inspection history supports, licensees are often inspected only once every few years.  And again, *if* Plaintiffs were inspected in the future, and *if* that inspection led to revocation proceedings, and *if* Plaintiffs' license was revoked, and *if* that revocation was for violations of the GCA that Plaintiffs believed were not willful, Plaintiffs could seek *de novo* review of that determination.  *See* 18 U.S.C. § 923(f)(3).  But as they stand, Plaintiffs can only speculate as to the theoretical possibility of such a chain of contingent events.  Such speculation flies in the face of the imminence requirements for standing.

Plaintiffs' reliance on *Contender Farms* is also misplaced.  *See* Pls.' Response at 8 (citing *Contender Farms, LLP v. U.S. Dep't of Agriculture*, 779 F.3d 258 (5th Cir. 2015)).  In *Contender Farms*, the court held that plaintiffs had standing to challenge a USDA regulation based on their increased regulatory burden.

779 F.3d at 266.   Under the regulation, USDA sought to intervene in a largely privately-run enforcement scheme to impose harsher mandatory penalties and potential prosecutions for soring violations in the Tennessee walking horse industry.   *See id.* at 262; *id.* at 269–70 ("Previously, [private Horse Industry Organizations ("HIOs")] developed and enforced their own penalties according to their rulebooks. . . . the USDA was not formally involved in writing or imposing penalty assessments."); *id.* at 271 ("[T]he Regulation is an indisputably significant effort by the USDA to become involved in HIO enforcement procedures. . . . the USDA has now taken intrusive steps into the private scheme to strengthen the penalties that HIOs must levy against those found to sore horses." (emphasis omitted)).   The court found that because under the regulation's new regime plaintiffs had to "take additional measures to avoid even the appearance of soring" and agree to new procedures, they satisfied the injury-in-fact requirement for purposes of standing.   *Id.* at 266.

In contrast to the regulation at issue in *Contender Farms*, here, ATF has long been charged with the GCA's enforcement, and the GCA has always made federal firearms licenses subject to revocation for a single willful violation.   *See Fairmont Cash Mgmt.*, 858 F.3d at 362 ("A single willful violation authorizes ATF to revoke the violator's FFL, regardless how severe[.]").   Therefore, ATF's enforcement policy does not subject Plaintiffs to any new, increased regulatory burden, as Plaintiffs have always been required to comply fully with the GCA.   Moreover, ATF's enforcement order does not impose new procedures on Plaintiffs, and instead, merely sets forth how ATF will "prioritize its enforcement efforts."   *United States v. Texas*, 143 S. Ct. 1964, 1972 (2023) (discussing reluctance of courts to review Executive Branch decisions regarding when to enforce); *Heckler*, 470 U.S. 831–33. And further, as Defendants' Objections explain, Plaintiffs are not actually subject to an enforcement policy of the kind they challenge, in obvious contrast to *Contender Farms*, and accordingly, this simply is not the "ordinary" case to which *Contender Farms* refers.   779 F.3d at 266.

That Plaintiffs have not and apparently cannot point to any increased compliance costs only

reinforces that there is no increased regulatory burden here.  Plaintiffs' Response first cites to "remedial measures" mentioned in the Complaint.  Pls.' Response at 9.  Read in proper context, however, it is apparent that Plaintiffs instituted those measures in response to ATF's 2018 inspection results, not ATF's 2021 enforcement policy.  *See, e.g.*, Compl. ¶¶ 45–51; Decl. of Michael Cargill ¶¶ 10–12, ECF No. 1-4.[5]  Additionally, for the first time in this litigation, Plaintiffs' Response mentions the "self-explanatory" compliance costs of training employees and scrutinizing transaction forms.  Pls.' Response at 9.  Not only do these costs appear nowhere in Plaintiffs' Complaint or prior briefing, but they are also ordinary costs always associated with operating an FFL in compliance with the GCA.

Nor are Plaintiffs' claims ripe.  To attempt to satisfy the ripeness inquiry's hardship requirement, Plaintiffs cite "threatened legal proceedings," unspecified modifications to their business practices, and unidentified hardships to their customers.  Pls.' Response at 10–11.  But as noted, there are no threatened legal or administrative proceedings against Plaintiffs, and Plaintiffs have not specified injury much less hardship as relates to their business practices.  *See id.*  Moreover, it's not at all clear what hardships might befall Plaintiffs' customers, particularly when Plaintiffs' license is at no present risk of revocation.  *See also* Defs.' Further Response at 2 ("ATF does not intend to take any other administrative action or take any steps to revoke Plaintiffs' license based on the findings of this inspection.").  "[B]ecause Plaintiffs can establish no imminent injury or present hardship, the Court lacks subject matter jurisdiction over these claims."  *Buisson Creative Strats., LLC v. Roberts*, No. 15-6272, 2017 WL 2671598 at *3 (E.D. La. June 21, 2017).  And to the extent Plaintiffs suggest that they are challenging ATF's enforcement of the GCA insofar as it diverges from ATF's written policies,

[5] The R&R did not address Plaintiffs' ability to assert third-party standing on behalf of their customers. *See generally* R&R.  Therefore, Defendants did not specifically object to such determination.  But as Defendants have previously asserted, because Plaintiffs have not alleged Article III standing, Plaintiffs cannot bring claims on behalf of their customers.  *See Powers v. Ohio*, 499 U.S. 400, 411 (1991); Defs.' Reply ISO Mot. to Dismiss at 6, ECF No. 16.

their allegations are conjectural and lack "a factual record of an actual or imminent application" of the alleged policy that is "sufficient to present the constitutional issues in clean-cut and concrete form." *Renne v. Geary*, 501 U.S. 312, 321–22 (1991) (citation omitted).

Accordingly, the R&R errs in finding this Court has jurisdiction to consider Plaintiffs' claims.

## III.    Plaintiffs' remaining arguments are inconsequential.

Plaintiffs' other arguments are mere attempts at distraction.  As noted, Plaintiffs argue that ATF's policy is unlawful only because it eliminates the willfulness requirement.  This premise underpins Plaintiffs' APA claim as well as their Second Amendment and equitable claims, and Plaintiffs do not allege that the requirements of the GCA or ATF's enforcement policy are otherwise unlawful.  *See, e.g.*, Compl. ¶¶ 67–76 (alleging that "[i]f Plaintiffs' FFL is revoked under this unlawful enforcement policy," it will violate the Second Amendment, particularly because the enforcement policy's "burden is not justified by a handful of paperwork errors"); *id.* ¶¶ 77–87 (alleging that "Defendants Dettelbach and Garland instituted a new Enforcement Policy that contradicts the [GCA]" and that the "*de facto* strict liability policy violates the gun control act and the Second Amendment").  These claims are thus not standalone claims requiring separate argument, and Defendants' Objections regarding the substance of ATF's enforcement policy are sufficient grounds to dispose of Plaintiffs' Complaint in its entirety.  *See also* Defs.' Objs. at 17 n.3.  By the same token, Defendants' arguments that Plaintiffs lack standing and their claims are not ripe similarly bar Plaintiffs' Second Amendment and equitable claims.  Without jurisdiction, this Court has no more power to decide those claims than it does Plaintiffs' APA claim.

## CONCLUSION

For the reasons set forth above, and for the reasons included in Defendants' Objections, the report and recommendation should not be adopted, and Plaintiffs' Complaint should be dismissed.

Dated: September 15, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

*/s/ Taylor Pitz*
Taylor Pitz (CA Bar No. 332080)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Phone: (202) 305-5200
Email: taylor.n.pitz@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2023, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system which will send notification of such filing to the

following:

Chance D. Weldon
Texas Public Policy Foundation
901 Congress Avenue
Austin, TX 78701

Nicholas R. Barry
America First Legal Foundation
611 Pennsylvania Ave SE #231
Washington, DC 20003

Robert E. Henneke
Texas Public Policy Foundation
901 Congress Avenue
Austin, TX 78701

Nate Curtisi
Texas Public Policy Foundation
901 Congress Avenue
Austin, TX 78701

Matthew Robert Miller
Texas Public Policy Foundation
901 Congress Avenue
Austin, TX 78701

*/s/ Taylor Pitz*
TAYLOR PITZ
Trial Attorney
U.S. Department of Justice