IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MICHAEL CARGILL, and CTC HGC, LLC, | § § § | No. 1:22-CV-1063-DAE |
| Plaintiffs, | § § § | |
| vs. | § § | |
| BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, STEVEN DETTELBACH in his official capacity, MERRICK B. GARLAND in his official capacity, UNITED STATES DEPARTMENT OF JUSTICE, and UNITED STATES OF AMERICA, | § § § § § § § § § § § | |
| Defendants. | § § | |

_____

ORDER: (1) ADOPTING REPORT AND RECOMMENDATION OF THE
MAGISTRATE JUDGE; AND (2) DENYING MOTION TO DISMISS

Before the Court is a Report and Recommendation (the "Report")

(Dkt. # 30) submitted by United States Magistrate Judge Dustin Howell.  The

Court finds this matter suitable for disposition without a hearing.  After reviewing

the Report, the Court **ADOPTS** Judge Howell's recommendations, and **DENIES**

Defendants Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"),

Steven Dettelbach, in his official capacity, Merrick B. Garland, in his official

capacity, United States Department of Justice ("DOJ"), and United States of

America's ("United States" or "Government") (collectively, "Defendants") Motion
to Dismiss (Dkt. # 7).

BACKGROUND

The Court will recite the background facts as stated by Judge Howell
in his Report.[1]  This case addresses pre-enforcement of certain policies related to
the Gun Control Act of 1968, codified in 18 U.S.C. § 921 et seq. ("GCA" or "Gun
Control Act").  Plaintiff Michael Cargill ("Plaintiff" or "Cargill") owns and
operates Central Texas Gun Works in Austin, Texas.  (Dkt. # 1 at ¶ 4.)  Plaintiff
CTC HGC, LLC ("CTC") is a Texas limited liability company owned by Michael
Cargill that holds a federal firearms license.  (Id. ¶ 5.1.)

The ATF administers and regulates federal firearms licenses.  (Id.
¶ 5.1.)  Plaintiffs assert that a 2021 executive branch policy of enforcing the GCA,
along with official guidance on how to implement that policy, effectively negates
the "willful" requirement for the revocation of a gun license by the ATF.  Plaintiffs
claim the agency action violates the plain language of the GCA as well as Cargill's
rights under the Second Amendment to the U.S. Constitution.  They request
equitable relief for these ongoing violations of federal law.

---

[1] To the extent any objections are made to Judge Howell's recitation of the facts,
the Court will note it in Defendants' objections discussed below.

On October 19, 2022, Plaintiffs sued Defendants the United States and United States agencies, Bureau of Alcohol, Tobacco, Firearms and Explosives and Department of Justice.  (Id. ¶¶ 6, 7, 9.)  Defendant agencies are responsible for administering and enforcing the Gun Control Act.  Defendant Steven Dettelbach is the Director of the ATF, and Defendant Merrick Garland is the Attorney General of the United States.  (Id. ¶¶ 8, 10.)

A.     Gun Control Act

The Gun Control Act gives the Attorney General the authority to approve and revoke federal firearms licenses.  It provides that "[n]o person shall engage in the business of importing, manufacturing, or dealing in firearms . . . until he has filed an application with and received a license to do so from the Attorney General[,]" and that application "shall be in such form and contain only that information necessary to determine eligibility for licensing as the Attorney General shall by regulation prescribe[.]"  18 U.S.C. § 923(a).

Under the Act, the "Attorney General may, after notice and opportunity for hearing, revoke any license issued under this section if the holder of such license has willfully violated any provision of this chapter or any rule or regulation prescribed by the Attorney General under this chapter[.]"  Id. § 923(e).  Revocations must be accompanied by "a written notice from the Attorney General stating specifically the grounds . . . upon which the license was revoked."  Id.

§ 923(f)(1).  If a license is revoked, the license holder may request "a hearing to review his . . . revocation," as well as a stay of the effective date of the revocation. Id. § 923(f)(2).  "If after a hearing," the Attorney General "decides not to reverse his decision to . . . revoke a license, the Attorney General shall give notice of his decision to the aggrieved party."  Id. § 923(f)(3).  Then, within a 60-day period, the license holder may "file a petition with the United States district court for the district in which he resides or has his principal place of business for a de novo judicial review of such . . . revocation."  Id.

The Attorney General has delegated the authority to enforce the Gun Control Act to the ATF.  28 C.F.R. § 0.130(a).  Pursuant to this delegation of authority, the ATF inspects federal firearms licensees ("FFL") for compliance with the Act's requirements, although it typically may not do so "more than once during any 12-month period," 18 U.S.C. § 923(g)(1)(B)(ii)(I), and, when authorized, the ATF revokes licenses.

B.    Challenged Policies

In June 2021, President Biden and Attorney General Garland announced the Comprehensive Strategy to Prevent and Respond to Gun Crime and Ensure Public Safety ("Strategy").  Among other things, the Strategy's Fact Sheet states that the Strategy will "[e]stablish[] zero tolerance for rogue gun dealers that willfully violate the law."  (Dkt. # 7-1 at 2.)  The Fact Sheet further states that the

4

ATF will seek to revoke the licenses of dealers the first time that they violate

federal law by willfully: (1) transferring a firearm to a prohibited person;

(2) failing to run a required background check; (3) falsifying records, such as a

firearms transaction form; (4) failing to respond to an ATF tracing request; or

(5) refusing to permit the ATF to conduct an inspection in violation of the law.

(Id. at 3.)  Subsequently, the DOJ announced its Violent Crime Reduction Efforts,

echoing the White House Fact Sheet, and stating that the DOJ would revoke

federal firearms licenses of licensees who willfully break the law.  (Dkt. # 1–3.)

        The next month, the ATF issued a memorandum to all special agents

in charge and all directors of industry operations addressing the implementation of

the Biden Administration's Strategy.  (Dkt. # 1-2 (ATF Memorandum on the

Implementation of the Administration's Comprehensive Strategy to Prevent and

Respond to Gun Crime and Ensure Public Safety).)  The ATF Memo provided that

absent extraordinary circumstances, an inspection that results in a finding that a

federal firearms licensee has willfully committed any of the five violations stated

above would result in a revocation recommendation.  (Id. at 2.)

C.    Plaintiffs' Complaint

        Plaintiffs challenge the ATF's "unlawful enforcement of the Gun

Control Act" by contending that Defendants changed the ATF's

education/compliance enforcement practices when they announced a new "zero

tolerance" enforcement policy for federal firearms license-holders who inadvertently fail to comply with the Policy.  (Dkt. # 1 at ¶ 34.)  Plaintiffs argue that "the ATF has effectively written the word 'willful' out of the statute by instituting a policy of revoking FFL's for inadvertent paperwork errors," id. at 2–3, thereby imposing a "strict liability regime, where accidental typos and other minor paperwork errors could cost business owners their livelihoods[.]"  (Id. ¶ 41.)

Plaintiffs' Complaint alleges three claims: (1) the agency action violates the Gun Control Act; (2) the agency action violates Plaintiffs' Second Amendment rights; and (3) Plaintiffs are entitled to equitable relief for an ongoing violation of federal law.  (Id. ¶¶ 59–87.)  Plaintiffs seek declaratory judgment and an injunction.  (Id. at 14–15.)

On January 13, 2023, Defendants moved to dismiss Plaintiffs' Complaint for lack of subject matter and failure to state a claim arguing that Plaintiffs: (1) have failed to exhaust administrative prerequisites to administrative review; (2) lack standing to sue; (3) have brought claims that are not ripe; and (4) even if their claims were reviewable, have failed to state a claim because the ATF policies in issue are consistent with the Gun Control Act.  (Dkt. # 7 at 6–7.) The motion was fully briefed and referred to Magistrate Howell for his Report. (Dkt. # 13.)  On July 18, 2023, Judge Howell issued his Report.  (Dkt. # 30.)  On August 8, 2023, Defendants filed objections to the Report (Dkt. # 33); on

September 1, 2023, Plaintiffs filed their response to the objections (Dkt. # 35); and on September 15, 2023, Defendants filed their reply (Dkt. # 40).  The objections are addressed below.

## APPLICABLE LAW

The Court must conduct a de novo review of any of the Magistrate Judge's conclusions to which a party has specifically objected.  See 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").  The objections must specifically identify those findings or recommendations that the party wishes to have the district court consider. Thomas v. Arn, 474 U.S. 140, 151 (1985).  A district court need not consider "[f]rivolous, conclusive, or general objections."  Battle v. U.S. Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).  "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).

Findings to which no specific objections are made do not require de novo review; the Court need only determine whether the Recommendation is clearly erroneous or contrary to law.  United States v. Wilson, 864 F.2d 1219, 1221 (5th Cir. 1989).

DISCUSSION

In his Report, Judge Howell made the following findings: (1) the announcement of the new policy, followed by the enactment of a revised enforcement order is a final agency action subject to judicial review; (2) Plaintiffs have adequately pleaded that they are the object of an increased regulatory burden sufficient to establish standing, relying on the Fifth's Circuit's opinion in Contender Farms, L.L.P v. U.S. Dep't of Agric., 779 F.3d 258 (5th Cir. 2015); (3) Plaintiffs' requested relief of a declaratory judgment and permanent injunction of the enforcement policy would redress Plaintiffs' injuries and satisfy the causation and redressability requirements of standing; (4) Plaintiffs' facial pre-enforcement challenge to the enforcement policy, as well as their allegations that they have suffered hardship in the form of increased regulatory burden are ripe for adjudication; and (5) Plaintiffs have adequately pleaded their claims to survive dismissal for failure to state a claim.  (Dkt. # 30.)  Given these findings, Judge Howell ultimately recommended that the Court deny Defendants' motion to dismiss.  (Id. at 20.)

Defendants have filed objections to the Report.  (Dkt. # 33.) Defendants argue that: (1) the Report errs by conflating Plaintiffs' speculation about how the policy guidance will be enforced with the finality requirements of the APA; (2) the R&R relied on an unauthenticated document to conclude that

facial pre-enforcement challenges are ripe the moment a challenged regulation is passed; (3) the Report errs in concluding that Plaintiffs have standing and their claims are ripe; and (4) the Report errs in concluding that Plaintiffs have stated a claim upon which relief can be granted.  (Id.)  The Court addresses each objection in turn.

      A.    <u>Final Agency Action</u>

      Defendants argue that the Report errs by considering whether the ATF's guidance documents are final, instead of considering what it is Plaintiffs are actually challenging.  (Dkt. # 33 at 15.)  Defendants maintain that contrary to Plaintiffs' contention, the ATF's enforcement policy does not displace the Gun Control Act's willfulness requirement, but only provides for license revocation when, after a hearing if requested, any of five serious violations are determined to have been committed willfully.  (Id.)  Defendants assert that Plaintiffs are challenging a hypothetical enforcement policy by which the ATF will enforce the Gun Control Act by ignoring both the Act itself and the ATF's official policies. (Id.)  Defendants argue that Plaintiffs are therefore not actually challenging any official ATF policy because the policy documents themselves "repeatedly echo the GCA's willfulness requirement and do not suggest ATF is implementing a new policy to revoke licenses based on 'inadvertent paperwork errors' or creating a 'strict liability regime.'"  (Id.)  Additionally, Defendants argue that Plaintiffs fail to

actually cite any text of the actual policy documents in support of their allegations. (Id. at 15–16.)

Defendants' objection mostly re-urges arguments already made in their motion to dismiss.  (See Dkt. # 7 at 15–18.)  And, upon de novo review, the Court finds that the agency action challenged in this case marks the consummation of the agency's decision-making process, and that legal consequences flow from the action, thus meeting the two-part test from Bennett v. Spear, 520 U.S. 154, 177–78 (1997).  Regarding the first prong, the Biden Administration announced a new zero-tolerance approach, formalized in a new enforcement order, and which cancels the previous order.  As recognized in Bennett, cancelling one enforcement order and replacing it with another is a clear indication that the decision-making process has ended given that the challenged agency action here is not "merely tentative or interlocutory [in] nature." Id. at 178.  Additionally, as recognized by the Magistrate Judge in the Report, the language in the new policy regarding enforcement changed from "may" to "shall," thus disaffirming any choice regarding certain willful violations.  Certainly, legal consequences will flow from this wording change, meeting the second prong of Bennett.  Given this, the Court will overrule Defendants' first objection because the Court finds that Plaintiffs are not challenging a hypothetical policy but a final agency action.

B.     Internal ATF Guidance Document

Defendants also contend that the Report errs by considering an unauthenticated and outdated document that purports to be an internal ATF guidance document: ATF-O-5370.1E.  (Dkt. # 33 at 16.)  According to Defendants, the internal ATF guidance document is actually set forth in ATF-O-5370.1F, which Defendants provided a copy for the Court's review.  (Id.; Dkt. # 36.)  Defendants argue that the Complaint fails to mention this document nor address the language in the enforcement order being challenged.  (Id.)  In any case, Defendants assert that the willfulness requirement is repeatedly mentioned throughout and is a "statutory cornerstone of all license revocation proceedings."  (Id. at 17.)  Defendants thus contend that there is simply no final agency action of the nature Plaintiffs challenge because the ATF has not adopted any policy that provides for the revocation of firearms absent a demonstration of willfulness.  (Id. at 18.)

The Magistrate Judge considered ATF-O-5370-1E in concluding that the ATF's enforcement policy constituted a final agency action.  (Dkt. # 30 at 11; Dkt. # 28 at 15.)  After their objections were filed, Defendants submitted a redacted,[2] but authenticated and current version of the enforcement policy at ATF-O-5370-1F.  (Dkt. # 36-1.)  Upon the Court's review of both documents, the Court finds that any differences in the versions are not meaningful to change the Court's

_____

[2] The redactions are not pertinent to the Court's consideration in the instant matter.

determination that the ATF's enforcement policy challenged in this case is a final agency action.  Although the Court notes subtle wording differences between the two versions, the Court still finds that ATF-O-5370.1F is a final agency action because it withdraws the agency's previously held discretion as discussed in the section above.  To the extent Defendants ask the Court to consider the merits of their argument regarding the willfulness requirement in the enforcement policy, the Court will not do so at this stage of the proceedings.  The Court will therefore overrule Defendants' objection on this basis.

C.    <u>Standing</u>

Defendants contend again that Plaintiffs' fears of enforcement are imaginary and speculative because they have not alleged that they intend to willfully violate any of the five serious GCA violations set forth in the zero-tolerance policy, nor is there any credible threat that the ATF would revoke Plaintiffs' license under this policy.  (Dkt. # 33 at 20.)  Defendants argue that because there is no such enforcement policy that exists as Plaintiffs imagine, Plaintiffs' lack standing to challenge this hypothetical policy.  (<u>Id.</u> at 21.)

Upon careful de novo review, the Court finds Plaintiffs have standing. If a plaintiff can establish that it is an "object" of the agency regulation at issue, "there is ordinarily little question that the action or inaction has caused [the plaintiff] injury, and that a judgment preventing or requiring the action will redress

it." <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561–62 (1992).  "[W]hether someone is in fact an object of a regulation is a flexible inquiry rooted in common sense."  <u>Contender Farms, L.L.P. v. U.S. Dep't of Agric.</u>, 779 F.3d 258, 265 (5th Cir. 2015).  In this case, Plaintiffs have pled that they are FFL licensees subject to the challenged enforcement policy and that they have been inspected in the past, and are subject to inspection in the future.[3]  As Plaintiffs contend, there is no statute of limitations regarding inspections and point out that the ATF has changed their mind on other licensees who were initially issued a "Report of Violations" and then initiated revocation proceedings two months later.  (Dkt. # 35 at 14 (citing district court case from North Dakota, 3-23-CV-129-ARS (Complaint at Dkt. # 1, July 11, 2023).)  Additionally, Plaintiffs are subject to future inspections under the new policy.  Given this, Plaintiffs have adequately pleaded that they are the "object" of a regulation sufficient to establish standing in this case.  This objection is therefore overruled.

---

[3] In fact, subsequent to filing their complaint and Defendants' filing of their motion to dismiss, Plaintiffs' property was inspected on June 26, 2023.  (Dkt. # 27.) Plaintiffs "survived" the inspection with only a "Report of Violations," none of which required further administrative action.  (Dkt. # 32.)  Regardless of the outcome of the inspection, the Court still finds that Plaintiffs have standing for the reasons stated.

D.    <u>Ripeness</u>

Defendants further argue that the Report erroneously relies on a takings clause case stating that facial challenges to enactments effecting regulatory takings are ripe when the enactment is adopted.  (Dkt. # 33 at 22.)  According to Defendants, the ATF has never adopted the policy Plaintiffs' challenge, but the Fifth Circuit has continued to subject facial challenges outside the takings context to ripeness requirements.  (<u>Id.</u> at 22–23.)  Defendants therefore argue that Plaintiffs' claims are not ripe for review.  (<u>Id.</u> at 23.)

To determine whether a case is ripe for adjudication, courts must consider: "(1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration."  <u>Texas v. United States</u>, 497 F.3d 491, 498 (5th Cir. 2007).  "The fitness and hardship prongs must be balanced."  <u>Id.</u>  Upon de novo review of the issues, the Court finds, as did the Magistrate Judge, Plaintiffs' claims in this case are ripe for adjudication because they have made a facial pre-enforcement challenge to the new enforcement policy.  Such facial challenges are considered ripe the moment the challenged regulation is passed.  <u>See</u> <u>Suitum v. Tahoe Reg'l Plan. Agency</u>, 520 U.S. 725, 736 n.10 (1997).  Plaintiffs have further pleaded that they are subject to an increased regulatory burden which satisfies the requirement that they suffer hardship without the

14

Court's consideration of their challenge to the policy.  This objection is also

overruled.

     E.    <u>Claim for Relief</u>

         Defendants also contend that the Report erred in recommending that

the Court reject their argument that the Complaint fails to state a claim for relief.

(Dkt. # 33 at 23.)  Defendants maintain that Plaintiffs' claims fail on the merits

because the ATF's actual enforcement policies comply with the requirements of

the Gun Control Act, and to the extent Plaintiffs contend that the ATF's pattern or

practice of enforcement diverges from its written policies, Defendants assert that

Plaintiffs have failed to allege that any such policy exists.  (<u>Id.</u>)

         The Court will also reject this objection upon de novo review.  To the

extent Defendants' arguments are based on something other than review of the

merits—which the Court will not do at this stage of the litigation—the Court finds

Plaintiffs have adequately pleaded claims for relief to survive dismissal at the Rule

12(b)(6) stage.  Plaintiffs have pled that Defendants' new enforcement policy

increases chances for the likelihood of license revocations for simple paperwork

errors, among others, rather than for actual willful violations.  (Dkt. # 12 at 16–18.)

The use of the word "willful" in the new enforcement policy, according to

Plaintiffs, broadly includes non-willful actions and thus violates the Gun Control

Act and the Second Amendment.  (<u>Id.</u>)  Without the chance for the parties' further

discovery on these issues, the Court will not yet rule on the merits but finds that—taking the allegations true at this stage of the case—Plaintiffs have adequately pleaded their claims to survive dismissal.  This objection is likewise overruled.

CONCLUSION

Based on the foregoing, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation and **DENIES** Defendants' Motion to Dismiss (Dkt. # 7).  The case is **REFERRED** to the Magistrate Judge for the limited purpose of setting an expedited discovery schedule, and a schedule for summary judgment motions to be filed within 180 days of the date of this Order.

**IT IS SO ORDERED.**

**DATE:** Austin, Texas, September 20, 2023.

_____
David Alan Ezra
Senior United States District Judge