**U.S. Department of Justice**

Bureau of Alcohol, Tobacco, Firearms and Explosives

**Order**

ATF O 5370.1F

SUBJECT: FEDERAL FIREARMS ADMINISTRATIVE ACTION POLICY AND PROCEDURES

DATE: 01/13/2023
RECERTIFICATION DATE: 01/13/2028

OPI: 700000

TO: All Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Industry Operations Offices

1. <u>PURPOSE</u>.  This order provides fair and consistent guidelines for administrative remedies for violations disclosed relative to inspections of Federal firearm licensees (FFLs).

2. <u>CANCELLATION</u>.  This order cancels ATF O 5370.1E, Federal Firearms Administrative Action Policy and Procedures, dated 1/28/2022.

3. <u>AUTHORITIES</u>.

    a.  Title 28 U.S.C. § 599A.

    b.  Title 28, CFR, Sections 0.130 and 0.131.

4. <u>DISCUSSION</u>.  This order identifies the minimum guidelines for administrative action but does not address every potential scenario or violation.  Each Field Division's Director of Industry Operations (DIO) should take the appropriate actions to ensure FFL compliance and the protection of the public through proper application of this order.  While it is desirable to have definitive guidelines in this area, every inspection is unique and requires individual analysis.

    a.  Administrative action is defined as a warning letter, warning conference, revocation, imposition of civil fine, and/or suspension of a federal firearms license, including a recommendation of denial of an original or renewal application, and alternate action to revocation.  The issuance of ATF F 5030.5, Report of Violations, is not an administrative action but rather a documentation of Gun Control Act violations disclosed during an inspection.

    b.  This policy is for internal guidance only and is law enforcement sensitive.  It is not intended—and should not be construed—to create any right or benefit, substantive or procedural, enforceable at law by a party against the United States and its agencies, officers, or employees.

5. <u>BACKGROUND</u>.  This order sets forth the general policy guidelines for administrative action recommendations for FFLs.

    a.  This is a national policy for determining administrative actions to promote consistent and equitable resolutions of violations of the Gun Control Act of 1968 (GCA), 18 U.S.C. Chapter 44.  The field should pursue all administrative actions in relation to the cited violations and their circumstances.  The nature of the violations, their impact on public safety, and ATF's ability to reduce violent crime are significant considerations in determining the appropriate administrative action.  ATF may also consider aggravating and mitigating factors.  This order will allow for the most efficient use of ATF resources while maintaining the goal of compliance throughout the industry.

ATF0522

ATF O 5370.1F
01/13/2023

    b.    ATF inspects FFLs to ensure compliance with Federal firearms laws, educate them on their responsibilities and verify they are complying with the provisions of the GCA and its implementing regulations. Compliance with the GCA by the firearms industry is an essential part of combatting crime gun violence and enhancing public safety as outlined in ATF's Strategic Plan.

    c.    Pursuant to 18 U.S.C. § 923(e), ATF may revoke a federal firearms license for willful violations of the GCA and its implementing regulations, including all of the violations discussed in this order and any other violation of the GCA. The term willful means a purposeful disregard of, or a plain indifference to, or reckless disregard of a known legal obligation. ATF may also revoke or suspend a license or impose a civil fine for certain knowing violations of the Brady Handgun Violence Prevention Act and the Child Safety Lock Act of 2005. See 18 U.S.C. §§ 922(t)(5) and 924(p).

6. **REFERENCES.**

    a.    ATF O 1100.168C, Delegation Order—Delegation of Authorities within the Bureau of Alcohol, Tobacco, Firearms and Explosives, dated 11/5/18.

    b.    ATF O 3200.1B, Monitored Case Program, dated 10/20/21.

    c.    ATF O 5000.19A, Industry Operations Manual, dated 4/4/18.

    d.    Title 27 CFR Part 478.

    e.    Title 18 U.S.C. § 922.

    f.    Title 18 U.S.C. § 923.

    g.    Title 18 U.S.C. § 924.

7. **POLICY.**

    a.    <u>Unified Administrative Action Policy and Procedures</u>.

        (1)    This order establishes a unified plan of action for resolution of violations through administrative action. The plan groups types of violations into categories for which specific administrative actions are recommended.

        (2)    This national policy will assist Special Agents in Charge (SACs), DIOs, Area Supervisors (AS), and Industry Operations Investigators (IOIs) in making appropriate recommendations.

        (3)    Each inspection has unique and sometimes complex circumstances. Therefore, even in cases where violations appear willful, the field should consider the following questions when recommending administrative action:

            (a) [redacted]

            (b) [redacted]

            (c) [redacted]

            (d) [redacted]



ATF0523

ATF O 5370.1F
01/13/2023

(e) █████████████████████████████████

(4) ATF has zero tolerance for willful violations that can directly affect public safety and ATF's ability to trace firearms recovered in violent crimes. Therefore, revocation is the assumed action, unless extraordinary circumstances exist, when violations are cited that include:

   (a) Transfer of a firearm to a prohibited person knowing or having reasonable cause to believe that the transferee is a prohibited person.

   (b) Failure to: 1) contact the National Instant Criminal Background Check System (NICS) (or equivalent State Point of Contact (POC)) for a background check prior to transfer of a firearm; 2) obtain a qualifying alternative permit in lieu of a background check; or 3) wait 3 business days after contacting NICS or the appropriate POC where the system has not notified the FFL that the transfer may proceed, or in cases where the transferee/buyer is under 21, transferring a firearm prior to receiving a final NICS response where a delay of up to 10 business days has not elapsed when NICS notified the FFL that additional research was required. This includes:

   i   Return of consignment firearms,

   ii  Pawn redemption of firearms,

   iii Acceptance of an invalid alternate permit or nonqualifying alternative permit in lieu of NICS,

   iv  Transfer of a firearm more than 30 days after an initial NICS check without conducting a new NICS check, unless the purchaser is found not to be a prohibited person, such transactions occur on three (3) or more occasions, the FFL has a significant history of noncompliance with the GCA, there are independent objective indicia that the violation was willful, or the same violation has been cited in prior inspections within the previous 5 years.

   v   Transfer of a firearm prior to receiving a final NICS or applicable State POC response where three days have not elapsed since the FFL contacted the system, or in cases where the transferee/buyer is under 21, transferring a firearm prior to receiving a final NICS response where a delay of up to 10 business days has not elapsed when NICS notified the FFL that additional research was required to determine if the prospective transferee had a prohibiting record under 18 U.S.C. § 922 (d).

   (c) Failure to respond to a firearm trace request within 24 hours after receipt of request.

   (d) Falsification of records required under the GCA or making a false or fictitious written statement in the FFL's required records or in applying for a firearms license. Withholding or misrepresenting material information in applying for a license.

   (e) Refusing ATF right of entry and inspection during hours of operation at the licensed premises.

b.　<u>Report of Violations</u>.  The field will issue a Report of Violations to the FFL for all violations identified during the inspection.  This action does not require a determination of willfulness.

c.　<u>Warning Letter</u>.  The field may issue a warning letter (WL) when violations of 27 CFR Part 478 merit a formal documented action on the part of ATF beyond the Report of Violations.  The AS may decide that a WL is not necessary based on the nature and number of violations, improvement in compliance with firearms laws and regulations, FFL's compliance history, time elapsed since previous inspection and other relevant factors.  Sending a WL to an FFL does not require a determination of willfulness.  Violations that generally merit a WL as the minimum administrative action include, but are not limited to, the following:

　　(1)　Failure to timely and/or correctly maintain records of receipt, manufacture, importation, or other acquisition on 5 percent or more of the FFL's total acquisitions during the inspection period, with a minimum of 10 instances.

　　(2)　Failure to timely and/or correctly maintain records of sales or other dispositions on 5 percent or more of the FFL's total dispositions during the inspection period, with a minimum of 10 instances.

　　(3)　Failure by the FFL to obtain complete and accurate information for any item(s) on Form 4473, question 21, or failure to ensure the buyer signs and dates the Form 4473 (to include failing to have the buyer recertify their answers if the transfer takes place on a different date than the original signature) on 5 percent or more of Forms 4473 examined, except when any purchaser is prohibited.

　　(4)　Failure to record valid and complete transferee identification on 10 percent or more of the Forms 4473 examined.

　　(5)　Failure to record any transferee identification on 10 percent or more of the Forms 4473 examined.

　　(6)　Failure to file ATF F 3310.4, Report of Multiple Sale or Other Disposition of Pistols and Revolvers or ATF F 3310.12, Report of Multiple Sale or Other Disposition of Certain Rifles, (Southwest Border states only) when legally required and with a minimum of five instances.

　　(7)　Missing firearms after inventory reconciliation (e.g., no records of disposition, required or otherwise).

　　(8)　Failure to retain required GCA records for transferred firearms for period of time specified by regulation.

　　(9)　Transfer of a rifle/shotgun to a resident of another State that violates State law.

　　(10)　Failure to obtain a completed Form 4473 and failure to conduct a NICS check or obtain alternative permit for:

　　　　(a)　The transfer of a firearm to a law enforcement officer for personal use, if the transferee is not prohibited; or

　　　　(b)　The transfer of a firearm out of business inventory to an FFL responsible person (other than a sole proprietor) if the transferee is not prohibited.

　　(11)　FFL fails to notify ATF about a change of control.

　　(12)　FFL is engaged in an activity not authorized by the Federal firearms license (e.g., engaging in manufacturing firearms without a manufacturer's license).

    (13)    Failure to timely report upon discovery of the theft or loss of a firearm to either ATF or local law enforcement.

    (14)    Failure to record NICS or State POC background check information on 10 percent or more of Forms 4473 examined, with a minimum of 10 instances.

    (15)    ATF has previously cited the FFL in a Report of Violations within the previous 5 years and the current inspection reveals repeated similar violation(s) with no significant improvement.

d.    <u>Warning Conference</u>.  A warning conference (WC) lets a DIO or AS assess the FFL's potential to achieve compliance and determine any potential risks to public safety and firearm traceability. It does not require a determination of willfulness.

    (1)    A WC is generally appropriate when the FFL has previously been the subject of a WL or WC, and the current inspection indicates similar repeat violations.  It may also be appropriate to hold a WC for an FFL without a history of previous violations or a WL in certain circumstances.  The DIO may decide that a WL or no administrative action is appropriate based on the nature and number of violations, improvement in compliance with firearms laws and regulations, compliance history, time elapsed since any previous administrative action, and other relevant factors.

    (2)    If the violations involve a corporation, ATF must invite a corporate responsible person to the WC.

    (3)    During the WC, ATF should provide the FFL with specific instructions to achieve GCA compliance and emphasize the mutual goal of ATF and the industry to safeguard the public.

    (4)    Examples of violations that generally merit a WC as the minimum administrative action, include but are not limited to the following:

        (a)    Transfer of a firearm other than a rifle or shotgun (including a frame or receiver) to an out-of-state resident.

        (b)    Failure to mark imported or manufactured firearms appropriately.

        (c)    Failure to report theft or loss to both ATF and local law enforcement.

        (d)    Conducting business at locations not authorized as an extension of the licensed business premises.

        (e)    Failure to obtain a completed Form 4473 and failure to conduct a NICS check or obtain alternative permit for:

            <u>i</u>    The transfer of a firearm to a law enforcement officer for personal use, if the transferee is not prohibited, and is a repeat violation;

            <u>ii</u>    The transfer of a firearm out of business inventory to an FFL responsible person (other than a sole proprietor), if the transferee is not prohibited, and is a repeat violation; or

            <u>iii</u>    The transfer of a firearm after an initial NICS check 30-day expiration, without conducting a new NICS check, provided the purchaser is found not to be a prohibited person, such

ATF O 5370.1F
01/13/2023

                transactions occur on no more than two (2) occasions, and the same violation has not been cited in prior inspections withing the previous 5 years.

        (f)      FFL has previously been the subject of a WL or WC within the previous 5 years and the current inspection reveals repeated similarviolation(s) with no significant improvement.

(5)      If the FFL does not respond to the WC notification letter and there is evidence the violations are willful, the DIO should proceed with revoking (or denying a renewal application for) the Federal firearms license.

(6)      Additionally, the DIO may decide after meeting with the FFL, or after offering an opportunity for compliance, to proceed with revocation (denial) if the DIO believes the public interest is best served by revoking or denying renewal of the Federal firearms license.  In any situation in which the DIO seeks revocation or denial of renewal, notification of the proposed course of action must be made through Field Management Staff, FISB█████@atf.gov).

(7)      In instances in which it is determined that the violations were not willful and/or the FFL is likely to come into compliance, the WC shall be the final administrative action.

(8)      The WC may include ATF Counsel and will discuss means to achieve compliance.  The AS or DIO may request the FFL submit written proposals designed to achieve GCA compliance.

e.    <u>Revocation Under 18 U.S.C. § 923(e)</u>.

(1)      ATF must establish willfulness to proceed with revocation under 18 U.S.C. § 923(e).  This section is intended to supplement section 7(a)(4) of this policy and does not replace or countermand that section.

(2)      ATF does not have to establish a history of prior violations to demonstrate willfulness.  Accordingly, consistent with section 7(a)(4), ATF will revoke a federal firearms license, absent extraordinary circumstances on initial violations, if those violations inherently demonstrate willfulness, such as transferring a firearm to a prohibited person; failing to run a background check prior to transferring a firearm to a non-licensee; falsifying records, or making false statements; failing to respond to an ATF tracing request; refusing to permit ATF to conduct an inspection; or allowing a straw sale of a firearm to occur.  ATF may also revoke for any other willful first-time violation as it deems appropriate.

(3)      ATF should also consider revocation when an FFL has willful violation(s) of the GCA and when factors are present that have a direct impact on public safety such as:



        (a)      ████████████████████████████████████████
        (b)      █████████████████
        (c)      ██████████████████████
        (d)      ███████████

(4)      ATF can establish the knowledge element of willfulness in several ways:

        (a)      Establish the FFL has a history of similar, repeat violations, and documentation that an IOI discussed them with the FFL.  The FFL's

ATF0527

ATF O 5370.1F
01/13/2023

        compliance history can include other efforts by ATF (including qualification inspections) to inform the FFL about its legal responsibilities.

    (b)    Use inspection reports to establish willfulness even if the inspection found no violations (i.e., acknowledgment of Federal firearms regulations).

    (c)    Statements or admissions communicated by the FFL or its employee(s), as well as actions by the FFL or its employee(s) during an inspection that demonstrate knowledge of regulations and concurrence with the IOI's findings.

    (d)    Publications and information provided to the FFL which explain the FFL's legal responsibilities.

    (e)    Demonstrate that the FFL has complied with the specific regulation on other occasions.

    (f)    Demonstrate that the FFL has substantial experience as an FFL.

(5)    ATF Field Counsel must evaluate the facts and circumstances surrounding an FFL's alleged violation(s). During Counsel's review, a copy of the Industry Operations Monitored Case Briefing Paper will be submitted to FISB. It can be later removed from the Monitored Case Program (MCP) if the Field Division decides not to pursue MCP actions or if Counsel determines that the case does not satisfy the elements of the violations. (See 10.d.(3) for Regional Associate Chief Counsel (ACC) concurrence).

(6)    Revocation is an appropriate licensing action under section 923(e) and is appropriate in response to the discovery of the following willful violations which can directly impact public safety. Consistent with section 7(a)(4), the below five items merit revocation of the license if committed willfully unless extraordinary circumstances exist. In extraordinary circumstances, an alternative recommendation may be made. All inspections with instances of (a)-(e) violations below, must come to the Deputy Assistant Director (DAD) (IO) for approval through the MCP. NOTE: The fact that there is only a single violation of subsections (a)-(e) below does not, unless explicitly stated above, constitute extraordinary circumstances and will not be an acceptable reason for an alternate recommendation.

    (a)    Transfer of a firearm to a prohibited person while knowing or having reasonable cause to believe that the transferee is a prohibited person.

    (b)    Failure to conduct a NICS check or obtain alternative permit or fail to retrieve a NICS (or equivalent State POC background check system) response prior to the transfer of a firearm. This includes:

        i    Return of consignment firearms,

        ii    Pawn redemption of firearms,

        iii    Acceptance of an invalid alternate permit or nonqualifying alternative permit in lieu of NICS,

        iv    Transfer of a firearm after an initial NICS check 30-day expiration, without conducting a new NICS check, unless (a) the purchaser is found not to be a prohibited person, (b) such transactions occurred on three (3) or more occasions, (c) the FFL has a significant history of noncompliance with the GCA,

ATF0528

    (d) there are independent, objective indicia that the violation was willful or (e) the same violation has not been cited in prior inspections within the previous 5 years.

   <u>v</u>  Transfer of a firearm prior to receiving a final NICS response or applicable State POC background response where three (3) days have not elapsed since the FFL contacted the system, or in cases where the transferee/buyer is under 21, transferring a firearm prior to receiving a final NICS response where a delay of up to 10 business days has not elapsed when NICS notified the FFL that additional research was required to determine if the prospective transferee had a prohibiting record under 18 U.S.C. § 922(d).

(c)  Failure to respond to a firearm trace request within 24 hours after receipt of the request. (Contact National Tracing Center to obtain necessary information to fully evaluate potential failure of FFL to respond to a trace request).

(d)  Falsification of records required under the GCA or making a false or fictitious written statement in the FFL's required records or in applying for a firearms license. Withholding or misrepresenting material information in applying for a license.

(e)  Refuse ATF right of entry and inspection during hours of operation at the licensed premises.

Revocation is also an appropriate licensing action in response to the discovery of the below willful violations:

(f)  Allow an employee who is a prohibited person to have actual or constructive possession of a firearm while knowing or having reasonable cause to believe that the employee is a prohibited person.

(g)  The FFL transfers a firearm knowing or having reasonable cause to believe that the transferee of record is not the actual buyer (i.e. a straw purchase).

(h)  Failure by the FFL to create a required GCA record, or discontinued use of required GCA records.

(i)  Failure to execute an ATF Form 4473.

(j)  Failure to account for acquired firearms which records indicate were in inventory within the previous 5 years after reconciliation for which disposition could not be accounted for in required GCA records (e.g. acquisition and disposition record, Form 4473) and is a repeat violation of increased frequency.

(k)  Discovery of a firearm with an obliterated serial number in FFL's inventory.

(l)  Transfer of a firearm to an underage person.

(m)  The FFL has been the subject of a WC in lieu of Revocation within the previous 5 years and the current inspection reveals repeated similar violations(s) with no significant improvement.

  (n) Any other GCA violation not specifically addressed in this order where revocation may be appropriate.

f. <u>Fines/Suspensions/Revocation under 18 U.S.C. §§ 922(t) or 922(z)</u>.

 (1) ATF may revoke, suspend, and/or impose a civil fine for certain knowing violations of the Brady Handgun Violence Prevention Act and the Child Safety Lock Act of 2005. See 18 U.S.C. §§§ 922(t), 922(z) and 924(p). In each situation, the proposed sanction (revocation, suspension, and/or fine) must be specifically spelled out in the Notice to Revoke or Suspend License and/or Impose a Civil Fine. The FFL has the same rights to review as in other GCA administrative hearings.

 (2) ATF can revoke, suspend, and/or fine an FFL pursuant to 18 U.S.C. § 922(t)(5). This allows for revocation, suspension for not more than 6 months, and/or a civil fine for the transfer of a firearm and failure to conduct a NICS check required by 18 U.S.C. § 922(t)(1), where NICS was operating, and the person would have been denied had a NICS check been conducted. The transfer of the firearm and the failure to conduct the NICS check must be done knowingly.

 (3) ATF can revoke, or suspend, and/or fine an FFL pursuant to 18 U.S.C. § 924(p) for failure to comply with 18 U.S.C. § 922(z)(1) (providing a secure gun storage or safety device with each transfer of a handgun). With certain exceptions, 18 U.S.C. § 924(p) allows for the revocation, suspension for not more than 6 months, and/or a civil fine for the knowing transfer of a handgun to a non-licensee without a secure gun storage or safety device.

 (4) A Notice to Revoke or Suspend License and/or Impose a Civil Fine will be issued when violations of 18 U.S.C. §§§ 922(t)(1), 922(z) and/or 924(p) are cited. Except in situations approved by the DAD (IO), all three options on the form will be selected and the maximum fine and suspension will be proposed. All settlements prior to or after a hearing, must be approved by the DAD (IO) and Deputy Chief Counsel prior to finalizing any agreement.

 (5) Notification of Civil Fine imposed must be made to Federal Firearms Licensing Center and Financial Management Division via memo.

 (6) ATF Field Counsel must evaluate the facts and circumstances surrounding an FFL's alleged violation(s). During Counsel's review, a copy of the Industry Operations Monitored Case Risk Assessment Briefing Paper will be submitted to FISB. It can be later removed from the MCP if the Field Division decides not to pursue revocation, denial, suspension, and/or fine, or if Counsel determines the case does not satisfy the elements of the violations. (See paragraph 10.d.(3) for ACC concurrence.)

g. <u>Denials under 18 U.S.C. § 923(d)</u>.

 (1) An application for a Federal firearms license may only be denied if the applicant does not meet one or more of the licensing criteria set forth in 18 U.S.C. § 923(d). Generally, ATF will deny an application for renewal of a Federal firearms license based on willful violations of the GCA and the same criteria and procedures outlined for revocation under section 923(e) in section 7 above.

 (2) ATF will deny applications in which an applicant: failed to provide material information required on the application or the applicant is less than 21 years old, a prohibited person, made a material false statement on the application, or is a prior willful violator of the GCA. [redacted]



    (3)  ATF Field Counsel must evaluate the facts and circumstances surrounding an applicant's alleged violation(s). During Counsel's review, a copy of the Industry Operations Monitored Case Risk Assessment Briefing Paper will be submitted to FISB. It can be later removed from the MCP if the Field Division decides not to pursue denial. (See 10.d.(3) for Regional ACC concurrence.)

h. <u>Alternate Actions</u>.

    (1)  For inspections that merit consideration of revocation for violations outlined in paragraph 7.e.(6)(a)-(e), extraordinary circumstances must exist before the DIO proposes an alternate recommendation, and those extraordinary circumstances must be thoroughly explained in the DIO's recommendation. NOTE: One instance of a violation outlined in paragraph 7.e.(6)(a)-(e) above does not constitute extraordinary circumstances and will not be an acceptable reason for an alternate recommendation.

    (2)  Appropriate alternate recommendations to revocation include an AS led WC or a DIO led WC. Who conducts the warning conference will depend on the totality of the circumstances surrounding the inspection results. A warning letter is rarely an acceptable alternate recommendation to revocation.

    (3)  For inspections that merit consideration of revocation in which the DIO proposes an alternate recommendation, the inspection is required to be submitted to the MCP for DAD (IO) approval. (ATF O 3200.1B, Monitored Case Program.)

i. <u>Other Administrative Resolutions</u>.

    (1)  Pursuant to 27 CFR 478.72-74, the DIO may afford the FFL/applicant the opportunity to submit facts and arguments for review and consideration and make offers of settlement or offers of a final resolution involving an agreed upon revocation before or after the issuance of a Notice to Revoke/Deny. Such submissions of settlements/offers are required to occur outside of an administrative hearing and require DAD (IO) approval. An example of settlement could include a request for a temporary closure period when the FFL institutes remedial measures.

    (2)  Following the issuance of the Notice to Revoke/Deny, a DIO may consider alternatives to issuing a Final Notice of Denial of Application, Revocation, Suspension, and/or Fine of a Federal firearms license with the concurrence of the DAD (IO). The DIO should consult and work closely with Field Counsel on the negotiation of terms and conditions to which ATF may appropriately agree to settle or resolve. The DAD (IO) must approve the final written settlement document and if the revocation is based on the violations outlined in paragraph 7.e.(6)(a)-(e), get approval from the Director prior to the field proceeding.



ATF O 5370.1F
01/13/2023

8. <u>GENERAL GUIDANCE</u>.  The Division management team may consider the appropriate administrative actions.  The DIO will seek advice of Field Counsel and the ACC (East/Central/West), when seeking Administrative Actions for DAD (IO) approval and the Assistant Director, Field Operations when considering the appropriate administrative action.

   a. This order does not mandate doing any administrative action in a sequential or consecutive order.  For example, a WC may be held or revocation sought after the first inspection if violations impact public safety or obstruct firearms traceability.  Conversely, a WL may be issued even if the prior inspection resulted in a WC.

   b. The DIO or AS will conduct WCs.

   c. The DIO will ensure the timely initiation of administrative action.  For inspections that are alternates to revocation for items specified in paragraph 7.e.(6)(a)-(e) above, the actions need to occur within 30 days of the notice from the DAD (IO) that the Director has been briefed and concurs with the action.  The post-conference letter for cases requiring a WC should be issued no later than 90 days after final DIO review unless there are mitigating circumstances.  The AS should issue a WL within 15 days of his or her review.

   d. The area office should submit cases involving potential denials/revocations to the DIO within 30 days of the inspection submission date.  The DIO has 120 days, inclusive of Counsel review, upon receipt of the inspection to issue the Notice to Revoke/Deny.  Field Counsel will have a maximum of 60 days to review and prepare the Notice in final form for submission to the DIO for review and issuance.  The DAD (IO) will be notified by the DIO via FISB if these periods are not met.

   e. 

   f. If the DIO issues a Notice to Revoke/Deny and the FFL requests a hearing and then withdraws the request, or if the FFL does not request a hearing, the DIO will issue a Final Notice of Revocation.

9. <u>HEADQUARTERS POLICY REVIEW AND ALTERNATE RECOMMENDATIONS</u>.

   a. ATF must handle inspections and investigations with recommendations for administrative actions that meet the criteria of the MCP (e.g., revocations, denials, imposition of civil fine, suspension and/or alternate to revocation/denial etc.) per ATF O 3200.1B, Monitored Case Program.

   b. Alternate recommendations to revocation (see section 7.h) require concurrence of the DAD (IO) before proceeding.  Alternate recommendations to revocation for items specified in 7.e.(6)(a)-(e) above, will be briefed to the Director, or their designee, by the DAD (IO) on a monthly basis.  NOTE:  One instance of a violation of 7.e.(6)(a)-(e) above does not constitute extraordinary circumstances and will not be an acceptable reason for an alternate recommendation.

ATF0532

ATF O 5370.1F
01/13/2023

10. <u>FIELD RESPONSIBILITIES</u>. Responsibilities for field personnel and management are as follows:

    a. <u>Industry Operations Investigator</u>. The IOI:

        (1) Will conduct the inspection per established ATF guidelines, including use of the ATF approved case management system. If an IOI uncovers violations, the IOI will obtain and preserve all available evidence and document the violations to show if the violations were willful, including copies of Forms 4473 and Acquisition and Disposition records since only documented violations will be cited in the Notice. The IOI will then make the appropriate recommendation based on the guidelines contained herein and forward the inspection to the AS.

        (2) Must communicate with and notify the AS of violations, findings, and other circumstances impacting public safety upon discovery.

    b. <u>Area Supervisor</u>. The AS:

        (1) Will review all firearms inspection reports and associated exhibits maintained within the ATF approved case management system to ensure the IOI's recommendation meets established guidelines and evidentiary requirements, they adequately performed all relevant inspection work steps, and they correctly entered all necessary data.

        (2) Must communicate with the DIO and notify the DIO of violations, findings, and other circumstances impacting public safety upon discovery.

        (3) Independently evaluate the IOIs recommendation and insert their recommendation in the ATF approved case management system. If they disagree with the IOI recommendation, the AS will document the reason(s) within the recommendation section of the ATF approved case management system. The AS must submit cases meriting WC, revocation, denial, fine, or suspension to the DIO within 30 days of the IOI submission date.

    c. <u>Director of Industry Operations</u>. The DIO shall:

        (1) Review all inspections that recommend a WC and/or alternate thereof. The DIO shall complete a recommendation in the ATF approved case management system and return to the AS within 15 calendar days.

        (2) Review all inspections resulting in a recommendation of denial, revocation, suspension, fine, or alternate to revocation and complete a recommendation in the ATF approved case management system. Additionally, the DIO must provide justification through the Industry Operations Monitored Cased Risk Assessment Briefing Paper and submit to FISB.

        (3) Request legal advice from Field Counsel in all potential alternate recommendations to revocation. Request Field Counsel and ACC legal advice for all denials, revocations, suspensions, and fines.

        (4) Advise the SAC of any administrative actions that deal with potential denials, revocations, suspensions, fines, alternates to revocations, and other administrative resolutions.

        (5) Following a hearing requested pursuant to either 27 C.F.R. §§ 478.72 or 478.74, the DIO must conclude whether the Government has met its burden of proof by a preponderance of the evidence that the elements required to issue a Final Notice of Denial of Application, Revocation, Suspension and/or Fine of Firearms License, ATF Form 5300.1. If the DIO believes such elements have not been

ATF O 5370.1F
01/13/2023

        proven, including the willfulness required to sustain a denial under 18 U.S.C. § 923(d)(1)(C) or revocation under 18 U.S.C. § 923(e), the DIO must fully brief the DAD (IO) as to the basis for this determination.

      (6)  Works with Field Counsel, monitors all settlements as set forth above.

  d.  <u>Counsel</u>.

      (1)  At the request of the DIO, Field Counsel will review all inspection reports and exhibits in the ATF approved case management system and provide legal advice in all administrative actions.

      (2)  [REDACTED] As noted above, ATF may also revoke or suspend a license or impose a civil fine for certain violations of 18 U.S.C. §§ 922(t)(5) and 924(p). [REDACTED]

      (3)  The ACC for the applicable Field Division will review and approve all proposed Notices and administrative resolutions for legal soundness, and compliance with this policy prior to final submission to MCP and implementation of these actions.

      (4)  Works with the DIO, monitors all settlements as set forth above.

  e.  <u>Special Agent in Charge</u>.  The SAC has ultimate division responsibility to ensure that this national policy is properly enforced.  To this end, they may establish additional controls in their division.

11.  <u>AVAILABILITY</u>.  The forms outlined in this order are available at ATFConnect>Forms and Policy>Forms.  The manual outlined in this order is available atATFConnect>Directorates>Field Operations>Industry Operations>IOI Manual.

12.  <u>RECORDS RETENTION REQUIREMENTS</u>.  Documents outlined in this order must beretained in accordance with ATF O 1340.5A, Records Management Program and ATF O 1340.7A, ATF Records Control Schedule.

13.  <u>QUESTIONS</u>.  If you have any questions regarding this order, please contact FieldManagement Staff, [REDACTED].

KRISTEN DETINEO
Digitally signed by KRISTEN DETINEO
Date: 2023.01.13 18:55:33 -05'00'

Assistant Director
(Office of Field Operations)