# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| MICHAEL CARGILL and<br>CTC HGC, LLC,<br>　　*Plaintiffs*, | § § § § | |
| v. | § § | Civil Action No. 1:22-cv-01063 |
| BUREAU OF ALCOHOL, TOBACCO,<br>FIREARMS AND EXPLOSIVES; ATF<br>DIRECTOR STEVEN DETTELBACH,<br>in his official capacity; ATTORNEY<br>GENERAL MERRICK GARLAND,<br>in his official capacity; UNITED STATES<br>DEPARTMENT OF JUSTICE; and<br>UNITED STATES OF AMERICA,<br>　　*Defendants*. | § § § § § § § § § § | |

## PLAINTIFFS' NOTICE OF SUPERSEDING ENFORCEMENT ORDER AND *EXPEDITED* REQUEST FOR A STATUS CONFERENCE

TO THE HONORABLE DAVID ALAN EZRA:

During Plaintiffs' preparation for this case's January 7 hearing on the parties' cross-motions for summary judgment, Plaintiffs discovered a new enforcement order, ATF O 5370.1G, attached to this notice and linked here. This was the first time that Plaintiffs became aware of this order. Defendants then confirmed that "it is the current guidance." This order supersedes ATF O 5370.1F, which is the only order that is briefed in the parties' cross-motions for summary judgment, and is no longer operative.

As a result of the material differences between the two orders and the impending hearing date, Plaintiffs believe that an expedited status conference with the Court is appropriate and will assist the Court and the parties in determining the

1

best course of action. Among the topics Plaintiffs would like to discuss are whether to continue the hearing and whether additional briefing is needed to address the new order and its impact on the arguments made in the summary-judgment motions.

Plaintiffs therefore request an expedited status conference with the Court. Plaintiffs have conferred with Defendants, who "take no position on [the] request, and would defer to the Court's determination."

Plaintiffs are available anytime today, Friday, December 27; Monday, December 30, Tuesday, December 31; Wednesday, January 1; Thursday, January 2; Friday, January 3; and Monday, January 6.

Defendants have listed their availability as "January 2 or 3 any time after 12:30 PM CT, and on January 6." Defendants also noted that "[i]n the event the Court determines that the summary judgment hearing should be continued, [they] are also generally available on January 7, 8, and 10, and January 9 before 12:00 PM CT." Plaintiffs are available those times as well. The parties respectfully request that any status conference be conducted virtually.

Date: December 27, 2024

                                          Respectfully submitted,

                                          */s/Clayton Way Calvin*
                                          ROBERT HENNEKE
                                          Texas Bar No. 24046058
                                          rhenneke@texaspolicy.com
                                          CHANCE WELDON
                                          Texas Bar No. 24076767
                                          cweldon@texaspolicy.com
                                          MATTHEW MILLER
                                          Texas Bar No. 24046444
                                          mmiller@texaspolicy.com

<div style="margin-left:40%">

CLAYTON WAY CALVIN
Texas Bar No. 24132780
ccalvin@texaspolicy.com
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701
Telephone:   (512) 472-2700
Facsimile:    (512) 472-2728

*/s/Nicholas R. Barry*
Nicholas R. Barry*
TN Bar. No. 031963
nicholas.barry@AFLegal.org
AMERICA FIRST LEGAL
300 Independence Ave., SE
Washington, DC 20003
Telephone:   (202) 964-3721
**Admitted pro hac vice*

*Attorneys for Plaintiffs*

</div>

# CERTIFICATE OF SERVICE

I hereby certify that on December 27, 2024, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court for the Western District of Texas by using the CM/ECF system, which will serve a copy of same on all counsel of record.

<div style="margin-left:40%">

*Clayton Way Calvin*
CLAYTON WAY CALVIN

</div>

# Exhibit 1

| | |
|---|---|
| **U.S. Department of Justice** <br> Bureau of Alcohol, Tobacco, Firearms and Explosives | **Order** <br> ATF O 5370.1G |

SUBJECT:  FEDERAL FIREARMS ADMINISTRATIVE ACTION POLICY AND PROCEDURES

DATE: 08/29/2024
RECERTIFICATION DATE: 08/28/2029

OPI:700000

TO:   Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Industry Operations

1. <u>PURPOSE</u>. This order provides fair and consistent guidelines for administrative remedies for violations committed by Federal firearms licensees (FFLs).

2. <u>CANCELLATION</u>. This order supersedes ATF O 5370.1F, Federal Firearms Administrative Action Policy and Procedures, dated 01/13/2023.

3. <u>AUTHORITIES</u>.

    a.   Title 28 U.S.C. § 599A.

    b.   Title 28 C.F.R. §§ 0.130-0.131

    c.   The Gun Control Act of 1968, as amended, Title 18 U.S.C. Chapter 44

4. <u>BACKGROUND</u>. This order identifies baseline policy guidelines for administrative action but does not address every potential scenario or violation. Each field division's Director, Industry Operations (DIO) should take the appropriate actions to ensure FFL compliance with all legal and regulatory requirements and protection of the public through proper application of this order. While this order establishes general guidelines, every inspection requires individual analysis based on all the facts and circumstances.

    a.   This is a national policy to promote consistent, effective, and equitable responses to violations of the Gun Control Act of 1968 (GCA), as amended, 18 U.S.C. Chapter 44. The nature of the violations, their impact on public safety, ATF's ability to reduce violent crime, and respecting the rule of law, are significant considerations in assessing its actions in any matter. ATF may also consider aggravating and mitigating factors in making such determinations. This order focuses on maximizing the efficient use of ATF resources while ensuring industry compliance.

    b.   ATF conducts regulatory inspections of FFLs to ensure compliance with Federal firearms laws by verifying they are complying with the provisions of the GCA and its implementing regulations and analyzing operations to detect possible diversion of firearms from legal commerce. Compliance with the GCA by the firearms industry is an essential part of disrupting violent crime and enhancing public safety efforts as outlined in ATF's Strategic Plan. These detailed inspections serve both to remind FFLs of their legal responsibilities and to promote greater compliance.

    c.   An ATF F 5030.5, Report of Violations (ROV) shall be issued to the FFL for any violations identified during an inspection. The issuance of an ROV is not an administrative action but rather a documentation of an inspection's findings.

    d.   Administrative action is defined as the revocation, imposition of civil fine, and/or suspension of a Federal firearms license, as well as the denial of an original or renewal application for a license. It does not include a warning conference or a warning letter, however, those resolutions are described below.

ATF O 5370.1G
08/29/2024

    e.    This policy is for internal guidance only and is law enforcement sensitive. It is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law by a party against the United States and its agencies, officers, or employees. Furthermore, it does not serve as a complete recitation of all applicable laws and policies; rather, it should be read in conjunction with the below referenced sources and other related authorities or documents.

5.    <u>REFERENCES</u>.

    a.    ATF O 1100.168C, Delegation Order—Delegation of Authorities within the Bureau of Alcohol, Tobacco, Firearms and Explosives, dated 11/5/2018.

    b.    ATF O 3200.1B, Monitored Case Program, dated 10/20/2021.

    c.    ATF O 5000.19A, Industry Operations Manual, dated 4/4/2018.

    d.    Title 27 C.F.R. Part 478.

    e.    Title 18 U.S.C. § 922.

    f.    Title 18 U.S.C. § 923.

    g.    Title 18 U.S.C. § 924.

6.    <u>POLICY</u>.

    a.    This order assists Special Agents in Charge (SACs), DIOs, Area Supervisors (ASs) and Industry Operations Investigators (IOIs) in making appropriate, effective, consistent and fair decisions as to administrative actions and related matters. Each decision requires a fact-specific analysis.

    b.    This order does not require violations be addressed by a series of increasingly severe actions. For example, administrative action may be sought after a first inspection if all elements of the violation, including the relevant *mens rea*, are established and it is appropriate under the circumstances. Similarly, the mere fact that a prior inspection resulted in a warning conference does not by itself require the field to seek revocation upon discovery of additional violations.

    c.    Each inspection has unique and sometimes complex circumstances. The field should consider each of the following questions when analyzing violations:



Page 2

ATF O 5370.1G
08/29/2024



7. ADMINISTRATIVE ACTIONS (REVOCATION, DENIAL, FINE AND SUSPENSION).

    a. Revocation under 18 U.S.C. § 923(e).

        (1) Willful Violations. Willfulness is a legal determination that must be established to revoke a license under 18 U.S.C. § 923(e) and there must be evidence of willfulness to issue a Notice to Revoke or Suspend License and/or Impose a Civil Fine, ATF F 4500 (5300.4) (Notice to Revoke) under 27 C.F.R. § 478.73. For purposes of the regulatory provisions of the GCA, the terms "willful" and "willfulness" mean a purposeful disregard of, a plain indifference to, or a reckless disregard of a known legal obligation. Willfulness requires fact-specific application of law; Field Counsel can provide assistance and clarification.

            (a) ATF does not have to establish a history of prior violations to demonstrate willfulness. ATF may revoke a Federal firearms license on an initial set of violations if willfulness is otherwise established. ATF can establish the knowledge element of willfulness in several ways:

                1 Statements or admissions communicated by the FFL or its employee(s), as well as actions by the FFL or its employee(s) during an inspection that hindered or obstructed the inspection, or other similar evidence.

                2 The FFL's history of similar, repeat violations with documentation that ATF personnel discussed with the FFL. The FFL's compliance history can include other efforts by ATF including, but not limited to signed acknowledgment(s) of Federal firearms regulations from prior qualification or compliance inspections, ROV(s), warning letter(s), and warning conference(s) to inform the FFL about its legal responsibilities.

                3 Publications, training, and information provided or easily accessible to the FFL which explain the FFL's legal responsibilities.

                4 Periodic compliance with similar ATF regulations.

                5 Experience in the firearms industry.

                6 An FFL's own internal records or lack of such records.

ATF O 5370.1G
08/29/2024

    (b)    Not every repeat violation is *per se* willful. A single, or even a few, inadvertent errors in failing to complete forms may not amount to "willful" failures even where the legal requirement to complete the forms was known. However, when such errors continue or increase after warning, strong evidence may exist that the FFL is plainly indifferent to its legal obligations. This is a fact-specific inquiry for which Field Counsel can assist in applying the district's governing law to the facts.

(2)    <u>Enhanced Regulatory Enforcement Policy (EREP)</u>. Consistent with the President's directive on enhanced regulatory enforcement, ATF has zero tolerance for willful violations that put public safety at risk and will take appropriate administrative action. Therefore, a Notice to Revoke, absent extraordinary circumstances, will be issued in response to the discovery of evidence of the following willful EREP violations:

    (a)    Transferring a firearm to a person knowing or having reasonable cause to believe that the transferee is subject to the Federal firearms disabilities contained in 18 U.S.C. §§ 922(g) or 922(n).

    (b)    Failing to: (1) contact the National Instant Criminal Background Check System (NICS) or equivalent State Point of Contact (POC) for a background check prior to the transfer of a firearm to an unlicensed person; (2) obtain a qualifying alternative permit in lieu of a background check; (3) wait three (3) business days after contacting NICS or the appropriate POC when the system has not notified the FFL that the transfer may proceed; or (4) in cases in which the transferee/buyer is under 21, transferring a firearm prior to receiving a final NICS response when a delay of up to 10 business days has not elapsed if NICS notified the FFL that additional research was required. This includes:

        <u>1</u>    Returning a consignment firearm,

        <u>2</u>    Returning a firearm pursuant to a pawn redemption,

        <u>3</u>    Transferring a firearm after accepting an invalid or nonqualifying alternate permit in lieu of a NICS check,

        <u>4</u>    Transferring a firearm more than 30 calendar days after an initial NICS check without conducting a new NICS check if: (1) the transfer is to a prohibited person; (2) the transfer is to a non-prohibited person if such transactions occur on three or more occasions; (3) the FFL has a significant history of noncompliance with the GCA; (4) independent objective indicia exist showing the violation was willful; and/or (5) the same violation has been cited in prior inspections within the previous five years.

    (c)    Failing to respond to a firearms trace request within 24 hours after receipt of request.

    (d)    Falsifying records required under the GCA or making a false or fictitious written statement in the FFL's required records or in applying for a firearms license. Withholding or misrepresenting material information in applying for a license.

    (e)    Refusing ATF right of entry and inspection during listed hours of operation at the licensed premises.

ATF O 5370.1G
08/29/2024

(3) Issuing a Notice to Revoke is also generally recommended in response to the discovery of evidence of the below willful violations.

 (a) Allowing an employee who is a prohibited person to have actual or constructive possession of a firearm while knowing or having reasonable cause to believe that the employee is a prohibited person under the GCA.

 (b) Transferring a firearm knowing or having reasonable cause to believe that the transferee of record is not the actual buyer (i.e., a straw purchase).

 (c) Transferring a firearm to an underage person in violation of 18 U.S.C. § 922(b)(1).

 (d) Failing to create a required GCA record or discontinued use of required GCA records.

 (e) Failing to execute or use a Form 4473 for the transfer of a firearm to a non-licensee.

 (f) Possessing a firearm with an obliterated serial number.

 (g) Failing to account for firearms when records indicate they were in inventory within the previous five years and for which disposition could not be accounted in required GCA records after reconciliation (e.g., acquisition and disposition record, Form 4473) when such failure is a repeat violation of continuing or increased frequency.

 (h) Possessing an unlawful machinegun in inventory.

 (i) Failing to appropriately mark imported or manufactured firearms.

 (j) Conducting business at a location not authorized as an extension of the licensed business premises.

(4) All other willful violations may serve as grounds for revocation (or denial of a renewal application in appropriate circumstances depending on the totality of the facts). For example, there may be grounds for revocation when the FFL has been the subject of a warning conference within the previous five years and the current inspection reveals repeated similar willful violations such that it calls into question the FFLs willingness and ability to comply with the law.

(5) Criminal violations of the GCA are not only grounds for revocation, but also upon discovery must be immediately referred to ATF criminal enforcement. Simultaneous regulatory and criminal proceedings are encouraged with the concurrence of the United States Attorney's Office and/or local prosecutor. It is possible for a licensing action to proceed at pace without interfering in the criminal investigation, but ATF must ensure its actions appropriately consider the status of the criminal proceedings. If a licensee indicates that it is interested in resolving these parallel proceedings through a global plea agreement, the U.S. Attorney could include a term in the agreement by which the FFL would admit its willful violation(s) of the GCA or other disqualifying factor(s) and agree to the revocation or surrender of the license as a term of the agreement. If ATF pursues revocation in conjunction with a criminal investigation, it will follow procedures required by ATF O 3200.1B, Monitored Case Program.

ATF O 5370.1G
08/29/2024

    b.    <u>Denial under 18 U.S.C. § 923(d)</u>.

        (1)    Pursuant to 18 U.S.C. § 923(d), ATF will issue a Notice to Deny Application for License, ATF F 5300.43 (4498) (Notice to Deny), for an application in which an applicant: willfully failed to provide material information required by the application; is less than 21 years old; is a prohibited person; made a material false statement on the application; or is a prior willful violator of the G███ (b) (7)(E) ███████████████████

        (2)    If an FFL's timely renewal application is denied, it should be processed as a revocation of the current license (including those under a Letter of Authorization) with a footnote that the Notice also serves as a denial of the renewal application. Also, in accordance with 27 C.F.R. § 478.71-.72, the renewal application should be marked "disapproved" and returned.

        (3)    If the applicant is a prior willful violator of the GCA, specifically as to any violation enumerated in section 7.a. above, application denial is the presumptive action.

    c.    <u>Fine/Suspension/Revocation under 18 U.S.C. §§ 922(t); and 922(z) via 924(p)</u>.

        (1)    ATF may revoke, suspend, and/or impose a civil fine for certain knowing violations of the Brady Handgun Violence Prevention Act and the Child Safety Lock Act of 2005. In these situations, the proposed sanction must be detailed in the Notice to Revoke.

        (2)    When qualifying violations of 18 U.S.C. §§ 922(t) or 922(z) are cited, all three options (revocation, suspension and fine) will be selected on the Notice to Revoke and the maximum fine and suspension will be proposed in order to preserve all options, except in situations approved by the Deputy Assistant Director (Industry Operations) (DAD (IO)).

        (3)    Notification of the imposition of a Civil Fine must be made to the Federal Firearms Licensing Center and Financial Management Division via memorandum.

        (4)    <u>Knowing Violations</u>. For purposes of the regulatory provisions of the GCA, the term "knowingly" means a person has consciously performed the act regulated by the GCA. Establishing a knowing violation does not require showing the purposeful disregard or plain indifference to a known legal obligation needed to establish a willful violation of the GCA.

    d.    <u>Settlements/Resolutions After Issuance of Administrative Action Notice</u>.

        (1)    Pursuant to 27 C.F.R. §§ 478.72-74, the FFL may submit facts and arguments for review and consideration and make offers of settlement before the issuance of a Final Notice of Denial of Application, Revocation, Suspension and/or Fine of Firearms License, ATF F 5300.13 (Final Notice). Submission of such settlement/resolution offers are required to occur outside of an administrative hearing and settlement/resolutions require DAD (IO) approval. A common example of a resolution is a withdrawal of a request for a hearing in exchange for a postponed effective date of the Final Notice to allow for a brief liquidation period.

        (2)    The DIO should consult and work closely with Field Counsel on the negotiation of terms and conditions to which ATF may appropriately agree to settle or resolve the administrative action.

ATF O 5370.1G
08/29/2024

- (3) The DAD (IO) must approve the final written settlement document and therefore early coordination regarding settlement/resolution is desirable.

- (4) If the administrative action is based on an EREP violation, the proposed settlement must get approval from the Director or their delegate prior to engaging in negotiations with the FFL. (b)(5) DPP

- (5) In any administrative action matter in which a settlement is reached, the DIO will take all appropriate steps to ensure that compliance with the settlement is closely monitored and documented. All such matters will be part of the Monitored Case Program (MCP) pursuant to ATF O 3200.1B, until the terms of the settlement are completed and closed with proper supervisory approval.

e. <u>Alternates and Other Responses to Violations (Warning Conference and Warning Letter)</u>. The appropriateness of an alternate action and other responses to violations should be determined after consideration of the nature and number of violations, improvement in compliance with firearms laws and regulations, compliance history, time elapsed since previous inspection and other relevant factors. Warning conferences and warning letters do not require a determination of willfulness.

- (1) To allow ATF to further focus its resources on the successful implementation of the Comprehensive Strategy to Prevent and Respond to Gun Crime and Ensure Public Safety, issued on June 23, 2021, on enhanced regulatory enforcement and ATF's public safety mission, a DIO, after consultation with the DAD (IO) and the Associate Assistant Director (AAD) (IO), may request additional information regarding the willful nature of any violation or the presence of extraordinary circumstances prior to issuing a Notice of Revocation. If a DIO desires such further information to assess the evidence establishing willfulness and/or the presence of extraordinary circumstances for an EREP violation, they should analyze the relevant issues via the *Proposed Alternate Worksheet*. This additional assessment is purely discretionary, is not required in any matter, and if used must be completed prior to the issuance of the initial Notice and properly documented.

- (2) In any such analysis, the DIO may request evidence related to the willfulness determination such as polices or procedural safeguards, evidence of how those policies and safeguards were implemented at the time of the violation, and/or extraordinary circumstances from the FFL. This request should be made via the FFL Explanation of Violation. Upon receipt, the DIO shall determine if the explanation fully resolves relevant issues including, but not limited to: how the violation occurred; description of policies and procedures in place, and actions taken, at the time of the violation to prevent it; and the existence of any extraordinary circumstances. This supplemental information should be included in the *Proposed Alternate Worksheet* analysis and reviewed with the AAD (IO), who will consult with the Office of Chief (b)(7)(E)

- (3) For violations, either for which the presumptive action is revocation (or denial of renewal of application) or for which the DIO proposes an alternate recommendation, the inspection is required to be submitted to the MCP for DAD (IO) approval. See ATF O 3200.1B, for more information including required procedures.

ATF O 5370.1G
08/29/2024

8. <u>WARNING CONFERENCE</u>. If a warning conference is determined to be an appropriate alternative to a revocation action or is otherwise recommended in accordance with paragraph 8.b.(5), either the DIO or AS may conduct the warning conference depending on the circumstances. If, however, an EREP violation occurred and where no revocation or denial is being pursued, the DIO must conduct the warning conference.

    a. <u>Timing of Warning Conference</u>.

        (1) All warning conferences held as an alternate to a revocation, must occur within 30 calendar days of when the DAD (IO) notifies the field that the Director has been briefed and concurs with the action for inspections that found an EREP violation or 30 calendar days of the approval of the alternate, whichever comes first. The DIO will notify the DAD (IO) via the Frontline Investigative Support Branch (FISB) if this time period cannot be met.

        (2) The DIO shall ensure that a post-warning conference letter to the FFL is finalized and sent to the FFL no later than 90 calendar days after it occurs. The DIO will notify the DAD (IO) via FISB if this time period cannot be met.

    b. <u>Invitation to Warning Conference</u>.

        (1) All responsible persons and owners must be invited to a warning conference. The DIO will ensure that a copy of the warning conference notification letter is sent to the FFL's mailing address, business address and corporate office as appropriate.

        (2) The warning conference notification letter should request that the FFL submit a written proposal ("compliance plan") designed to achieve GCA compliance with the expectation that this document, and suggestions as to how to improve its content, will be a topic of conversation at the warning conference. The compliance plan should be submitted prior to the warning conference so that both parties are prepared to discuss.

        (3) If the FFL does not respond to the warning conference notification letter and sufficient evidence of willfulness exists, the DIO should initiate administrative action.

    c. <u>During the Warning Conference</u>.

        (1) The warning conference may include ATF Field Counsel and other relevant ATF employees and will discuss means to achieve compliance.

        (2) ATF should provide the FFL with specific instructions to achieve GCA compliance and emphasize the mutual goal of ATF and the industry in safeguarding the public. A successful warning conference allows the DIO or AS to assess the FFL's potential to achieve compliance and determine any potential risks to public safety and firearms traceability. Warning conferences should clearly document the information discussed and include an acknowledgement from the FFL of its understanding of the law and any key representations made.

    d. <u>After the Warning Conference</u>.

        (1) The DIO may decide after meeting with the FFL to proceed with revocation (or denial of a renewal application) if sufficient evidence of willfulness exists and public safety is best served by revoking or denying renewal of the Federal firearms license.

        (2) In instances in which it is determined that the violations were not willful and/or the FFL has demonstrated willingness and ability to achieve compliance, the warning conference shall be the final action taken for that inspection.

ATF O 5370.1G
08/29/2024

    e.    Examples of violations that generally merit a warning conference include but are not limited to the following:

        (1)    Failing to obtain a completed Form 4473 and failure to conduct a NICS check or obtain alternative permit for:

            (a)    Transferring a firearm to a law enforcement officer for personal use, if the transferee is not prohibited, and this is a repeat violation.

            (b)    Transferring a firearm from out of business inventory to an FFL responsible person (other than a sole proprietor), if the transferee is not prohibited, and this is a repeat violation.

            (c)    Transferring a firearm after an initial NICS check 30-calendar day expiration, without conducting a new NICS check, provided the purchaser is found not to be a prohibited person, such transactions occur on no more than two occasions, and the same violation has not been cited in prior inspection within the previous five years.

        (2)    Failing to timely report theft or loss of firearm(s) to ATF and local law enforcement.

        (3)    Failing to obtain complete and accurate information for any item(s) on Form 4473's prohibited person questions, or failure to ensure the transferee signs and dates the Form 4473 (to include failing to have the transferee recertify their answers if the transfer takes place on a different date than the original signature) on [(b)(7)(E)] percent or more of Forms 4473 examined, except when any purchaser is prohibited.

        (4)    Failing to file ATF F 3310.4, Report or Multiple Sale or Other Disposition of Pistols and Revolvers; or ATF F 3310.12, Report of Multiple Sale or Other Disposition of Certain Rifles, (Southwest Border states only) when legally required in [(b) (7)(E)] instances.

        (5)    Missing firearms after inventory reconciliation (e.g., no records of disposition, required or otherwise).

        (6)    Transferring a firearm other than a rifle or shotgun to an out-of-state resident in violation of 18 U.S.C. § 922(b)(3).

        (7)    Engaging in activity not authorized by the Federal firearms license (e.g. manufacturing firearms without a manufacturer's license).

        (8)    FFL has previously attended a warning conference or received a warning letter within the previous five years and the current inspection reveals repeated similar violation(s) with no significant improvement.

9.    <u>WARNING LETTER</u>. The field division may issue a warning letter when violations merit a formal documented action by ATF beyond the issuance of an ROV but do not rise to the level of an administrative action or warning conference. The AS may decide a warning letter is necessary based on the nature and number of the FFL's violations, compliance history, improving or worsening compliance, time elapsed since previous inspection and other relevant factors.

    a.    A warning letter is not an appropriate alternate to an EREP violation and is rarely appropriate for any violation for which administrative action is presumptive.

    b.    The AS should issue a warning letter within 15 calendar days of his or her review. The DIO will notify the DAD (IO) via FISB if this time period cannot be met.

    c.    Examples of violations that generally merit a warning letter include but are not limited to the following:

        (1)    Failing to timely and/or correctly maintain records of receipt, manufacture, importation, or other acquisition (b) (7)(E) percent or more of the FFL's total acquisitions during the inspection period, (b) (7)(E).

        (2)    Failing to timely and/or correctly maintain records of sales or other dispositions of (b) percent or more of the FFL's total dispositions during the inspection period, (b) (7)(E).

        (3)    Failing to record valid and complete transferee identification on (b) percent or more of the Forms 4473 examined.

        (4)    Failing to record any transferee identification on (b) percent or more of the Forms 4473 examined.

        (5)    Failing to file ATF F 3310.4, Report or Multiple Sale or Other Disposition of Pistols and Revolvers; or ATF F 3310.12, Report of Multiple Sale or Other Disposition of Certain Rifles, (Southwest Border states only) when legally required in (b) (7)(E) occasions.

        (6)    Failing to retain required GCA records for transferred firearms for period of time specified by regulation.

        (7)    Transferring a rifle/shotgun to a resident of another State that violates State law.

        (8)    Failing to timely notify ATF about a change of control.

        (9)    Failing to timely report theft or loss of firearm(s) to either ATF or local law enforcement.

        (10)    Failing to record NICS or State POC background check information on (b)(7) percent or more of Forms 4473 examined, (b) (7)(E).

10.    <u>TECHNICAL GUIDANCE AND TIMELINES</u>.

    a.    All inspections and investigations which recommend an administrative action or an alternate to administrative action must be tracked and reported in accordance with ATF O 3200.1B, Monitored Case Program

    b.    The Area Office should submit cases involving potential administrative action to the DIO within 30 calendar days of the inspection submission date. The DIO has 90 calendar days, inclusive of Field Counsel review, upon receipt of the inspection to issue a Notice to Revoke or Notice to Deny. If the DIO requests additional information pursuant to subsection 7e of this Order, they will have 120 calendar days (an extra 30 calendar days) to issue such a notice, if appropriate. Field Counsel will have a maximum of 60 calendar days to review and prepare the Notice for submission to the DIO for review and issuance. The DIO will notify the DAD (IO) via FISB if these time periods cannot be met.

  c. When an administrative action hearing is requested, it should be scheduled to occur within 30 calendar days of receipt of the request but no less than 10 calendar days after notice of when the hearing will be held. The DIO will notify the DAD (IO) via FISB if this time period cannot be met.

    (1) If the DIO issues a Notice to Revoke and the FFL does not request a hearing or requests a hearing and then withdraws the hearing request, the DIO will issue a Final Notice.

    (2) If the DIO issues a Notice to Deny and the applicant/FFL does not request a hearing or requests a hearing and then withdraws the hearing request:

      (a) If the matter is as to a denial under 7.b.(3), a Final Notice should be issued; however,

      (b) If, as to any other applicant (*i.e.* a person or corporation unconnected to a current or former licensee) a hearing is not requested, no Final Notice is required per 27 C.F.R. § 478.71.

  d. After an administrative action hearing occurs, the DIO shall make a final decision within 15 calendar days after receipt of the initial transcript and reported to DAD (IO), SAC, and Field Counsel. A Final Notice, if appropriate, should be issued within 45 calendar days after receipt of the initial transcript. The DIO will notify the DAD (IO) via FISB if these time periods cannot be met.

  e. Recommendations for alternates or other resolutions for EREP violations will be briefed to the Director or their designee by the AAD (IO) and DAD (IO) on a monthly basis.

11. <u>ADDITIONAL FIELD RESPONSIBILITIES</u>. Responsibilities for field personnel and management are as follows:

  a. <u>Industry Operations Investigator</u>. The IOI will:

    (1) Conduct the inspection per established ATF guidelines, including use of the ATF approved case management system. If an IOI uncovers a violation, they will obtain and preserve all available evidence and document the violations to show if the violations were willful, including copies of Forms 4473 and Acquisition and Disposition records, and statements by the FFL and its employees as only documented violations will be cited in the Notice to Deny or Notice to Revoke. The IOI will then make the appropriate recommendation based on the guidelines contained herein and forward the inspection to the AS.

    (2) Communicate with and notify the AS of violations, findings, and other circumstances impacting public safety upon discovery.

    (3) For purposes of Field Counsel preparing a Notice to Deny or Notice to Revoke, list the specifics of all violations cited in the Notice in the format requested by Field Counsel.

    (4) For purposes of hearing preparation and after consultation with Field Counsel, identify, group, label and store all documents relative to the hearing in a (b) (7)(E) folder that is shared with Field Counsel.

    (5) Ensure that the terms of any settlement are monitored regularly in any matter assigned to the IOI, and properly document and report on any such matters to the AS.

ATF O 5370.1G
08/29/2024

b. <u>Area Supervisor</u>.  The AS will:

(1) Review all firearms inspection reports and associated exhibits maintained within the ATF approved case management system to ensure the IOI's recommendation meets established guidelines and evidentiary requirements, they adequately performed all relevant inspection work steps, and they correctly entered all necessary data.

(2) Communicate with and notify the DIO of violations, findings, and other circumstances impacting public safety upon discovery.

(3) Independently evaluate the IOI's recommendation and insert their recommendation in the ATF approved case management system.  If they disagree with the IOI's recommendation, the AS will document the reason(s) within the recommendation section of the ATF approved case management system. The AS must submit cases meriting administrative action to the DIO within 30 calendar days of the IOI submission date.  The DIO will notify the DAD (IO) via FISB if this time period cannot be met.

(4) Review and monitor compliance with the terms of any settlement in any matter assigned to an IOI under their supervisor and report the same to the DIO.

c. <u>Director of Industry Operations</u>.  The DIO will:

(1) Review all inspections for which administrative action or warning conference is recommended. The DIO shall complete their recommendation in the ATF approved case management system and return it to the AS within 15 calendar days. The DIO will ensure the timely initiation of administrative action occurs within 30 calendar days of the IOI's report submission date. The DIO will notify the DAD (IO) via FISB if these time periods cannot be met.  Additionally, the DIO must provide justification for their recommendation through the Industry Operations Monitored Case Briefing Paper and submit to FISB.

(2) Request Field Counsel legal advice for all administrative actions including analysis of willfulness and litigation hazards.

(3) Complete the *Proposed Alternate Worksheet* for all cases which involve EREP violations in which an alternate action or settlement is under consideration.

(4) Issue the Notice to Deny or the Notice to Revoke within 120 calendar days of the inspection report, inclusive of Field Counsel review. The DAD (IO) will be notified by the DIO via FISB if this time period cannot be met.

(5) Advise the SAC of any administrative actions and other administrative resolutions.

(6) Following a hearing requested pursuant to 27 C.F.R. §§ 478.72 or 478.74, determine whether the Government has met its burden of proof by a preponderance of evidence as to the elements required to issue a Final Notice. If the DIO believes such elements have not been proven, including the relevant *mens rea,* the DIO must fully brief the DAD (IO) as to the basis for this determination. If the DIO believes that all elements have been established, review the decision, evidence, and reasoning with Field Counsel for purposes of drafting a Final Notice.

(7) Monitor all administrative actions, alternates, settlements, and related litigation in the DIO's Area of Responsibility.

    d.    <u>Field Counsel</u>.  Field Counsel will:

        (1)    At the request of the DIO, review all inspection reports and exhibits in the ATF approved case management system and provide legal advice in all administrative actions.

        (2)    Draft the Notice to Deny or Notice to Revoke and Final Notice of Revocation/Denial after consultation with the DIO and provide a preliminary assessment of willfulness and potential litigation issues. (b) (7)(E) [redacted]

        (3)    Request review and approval from the Associate Chief Counsel or their delegate for all proposed Notices and administrative resolutions for legal soundness, and compliance with this policy prior to final submission to MCP and implementation of these actions.

        (4)    Advise on all administrative actions, settlements, and related litigation in the Field Counsel's Area of Responsibility.

    e.    <u>Special Agent in Charge</u>.  The SAC has ultimate division responsibility to ensure that this national policy is properly enforced.  To this end, they may establish additional controls in their division.

12.    <u>AVAILABILITY</u>.  The forms outlined in this order are available at ATFConnect>Forms and Policy>Forms.  The manual outlined in this order is available at ATFConnect>Directorates>Field Operations>Industry Operations>IOI Manual.

13.    <u>RECORDS RETENTION REQUIREMENTS</u>.  Documents outlined in this order must be retained in accordance with ATF O 1340.5A, Records Management Program and ATF 0 1340.7A, ATF Records Control Schedule.

14.    <u>QUESTIONS</u>.  If you have any questions regarding this order, please contact Field Management Staff, (b) (7)(E).

MATTHEW VARISCO
Digitally signed by MATTHEW VARISCO
Date: 2024.08.29 12:25:14 -04'00'

Assistant Director
(Office of Field Operations)